Sean Reis (SBN 184044)
sreis@edelson.com
Edelson McGuire, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: 949.459.2124
Fax: 949.459.2123

Attorney for Plaintiff
JESSICA LEE
[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESSICA LEE, individually and on behalf of a class of similarly situated individuals,<br><br>                Plaintiff,<br><br>     v.<br><br>STONEBRIDGE LIFE INSURANCE COMPANY, a Vermont corporation, and TRIFECTA MARKETING GROUP, LLC, a Florida limited liability company,<br><br>                Defendants. | Case No. CV 11-0043-RS<br><br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:  Hon. Richard Seeborg<br>Magistrate: Hon. Joseph C. Spero |

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

**PLEASE TAKE NOTICE** that on November 1, 2012 at 3:30 p.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Jessica Lee will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 23 to certify a class in this matter.

The basis for Plaintiff's Motion for Class Certification is that all of the standards for class certification set forth in Fed. R. Civ. P. 23(a) and (b) have been satisfied. The requirement of numerosity has been met because Plaintiff has alleged and demonstrated a Class consisting of thousands of consumers. The requirement of commonality is met because relief turns on questions of law and fact common to the Class, including whether Defendants can be held liable under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), whether Defendants transmitted text messages to Plaintiff and the Class using an automatic telephone dialing system, whether Defendants can prove that Plaintiff and the Class provided "express consent" to receive these text messages, and whether Plaintiff and the Class members suffered common injury. The third prerequisite for class certification, typicality, has been satisfied because Plaintiff's interests are aligned with the interests of the Class, and Plaintiff's claim brought under the TCPA is typical of the claims of the putative Class members. Plaintiff and her counsel, Edelson McGuire, LLC, will fairly and adequately protect the interests of the Class, as Plaintiff's counsel has extensive experience litigating similar consumer class action lawsuits involving the TCPA. Finally, the questions of law and fact that are common to the Class predominate over any questions that may affect Class members on an individual basis, and the class action mechanism is superior to any other available method to reach a fair and efficient adjudication of the controversy at issue.

The Plaintiff's Motion is based on this Notice of Motion and Motion for Class Certification, a Memorandum of Points and Authorities set forth below, the pleadings and other papers on file in this matter, discovery produced to date, including the expert disclosures of Plaintiff's expert witness, and upon evidence or argument that may be presented at or before the hearing on this Motion.

Dated:  August 29, 2012

Respectfully Submitted,

JESSICA LEE, individually and on behalf of a class of similarly situated individuals

BY: /s/  John C. Ochoa
One of Her Attorneys

Sean Reis (SBN 184044)
Edelson McGuire, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: 949.459.2124
Fax: 949.459.2123
sreis@edelson.com

Ryan Andrews (*Pro Hac Vice*)
John C. Ochoa (*Pro Hac Vice*)
Evan M. Meyers (*Pro Hac Vice*)
Bradley Baglien (*Pro Hac Vice*)
Edelson McGuire, LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
randrews@edelson.com
jochoa@edelson.com
emeyers@edelson.com
bbaglien@edelson.com

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.     THE TCPA ........................................................................................................ 3

III.     BACKGROUND ................................................................................................ 4

      A.     **Defendants Caused Text Messages to Be Transmitted as Part of a Marketing Effort to Sell Stonebridge Life Insurance Products** ................... 4

      B.     **Nearly 60,000 Identical Text Messages Were Sent from the Same Source Using the Same Technology** ...................................................................... 5

      C.     **Facts Particular to Plaintiff Jessica Lee** ..................................................... 7

IV.     ARGUMENT ...................................................................................................... 8

      A.     **The Standards for Class Certification Are Satisfied** ................................... 8

           1.     *The Numerosity Requirement is Satisfied* ........................................ 9

           2.     *The Commonality Requirement is Satisfied* ................................... 10

                i.     *Whether Defendants Are Liable to the Class for the Text Messages Transmitted Here Is a Common Question* ................. 11

                ii.     *Whether Defendants Used an ATDS to Transmit Text Messages to the Class Is a Common Question* ........................... 13

                iii.     *Whether Defendants Can Demonstrate that Class Members Provided "Prior Express Consent" Is a Common Question* ...... 14

                iv.     *Whether the Class Suffered the Same Injury and Are Entitled to Damages Is a Common Question* ............................. 15

           3.     *The Typicality Requirement is Satisfied* ........................................ 16

           4.     *The Requirement of Adequate Representation is Satisfied* ................. 17

           5.     *The Proposed Class Satisfies Rule 23(b)(3)'s Requirements* ............. 18

                i.     *Common Questions of Law and Fact Predominate* ................... 19

                ii.     *The Class Action is a Superior Method for the Adjudication of this Controversy* ................................................................. 21

      B.     **The Court Should Appoint Plaintiff's Counsel as Class Counsel** ............... 22

iii

**V.**      **CONCLUSION**.................................................................................................23

## __TABLE OF AUTHORITIES__

__United States Supreme Court Cases:__

*Erica P. John Fund, Inc. v. Halliburton*, 131 S.Ct. 2179 (2011) ............................................. 8, 19

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982) ........................................................ 17

*Mims v. Arrow Fin. Servs. LLC*, 132 S.Ct. 740 (2012) ............................................... 3, 15

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010) ............................... 8

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) .................................................... 8, 10, 15

__United States Circuit Court of Appeals Cases:__

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................ 16

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ................................... 8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ......................................... 8

*Grant v. Capital Mgmt. Services, L.P.*, 449 F. App'x 598 (9th Cir. 2011) ..................................... 4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................ 16, 19

*Lerwill v. Inflight Motion Pictures*, 582 F.2d 507 (9th Cir. 1978) ................................... 17

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ............................................ 19

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ..................................... 21

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ................................................. 10

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) .....................................18-19

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ..................................... 3, 4, 13

*United Steel v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) .................................... 19

*United Steel, Paper & Forestry, Rubber, Mfg. Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) ................ 8

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ........................... 19, 21

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ................................... 18

v

**United States District Court Cases:**

*Ashmus v. Calderon*, 935 F. Supp. 1048 (N.D. Cal. 1996) ........................................................... 17

*CE Design v. Beaty Const., Inc.*,
    No. 07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ............................................. 17

*CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) ....................... 2, 10

*Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ..................................................... 9

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004) ............................................. 19

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ........................... 10

*Cole v. Asurion Corp.*, 267 F.R.D. 322 (C.D. Cal. 2010) ........................................................... 16

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ......................................... 10

*Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) .................................. 9

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) ................................. 15

*Holloway v. Full Spectrum Lending*,
    CV 06-5975 DOC RNBX, 2007 WL 7698843 (C.D. Cal. June 26, 2007) ...................... 21

*In re Ferrero Litigation*, 278 F.R.D. 552 (S.D. Cal. 2011) ......................................................... 19

*In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005) ........................................ 9

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) ................................. 9, 17, 19

*Kramer v. Autobytel, Inc,* 759 F. Supp. 2d. 1165 (N.D. Cal. Dec. 29, 2010) ................................ 3

*Moeller v. Taco Bell Corp.*, C 02-5849 MJJ, 2004 WL 5669683 (N.D. Cal. Dec. 7, 2004) ......... 2

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
    08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010) ............................................... 19

*Sengenberger v. Credit Control Services, Inc.*,
    No. 09-C-2796, 2010 WL 1791270 (N.D. Ill. May 5, 2010) ............................................. 4

*Silbaugh v. Viking Magazine Services, Inc.*, 278 F.R.D. 389 (N.D. Ohio 2012) ................. *passim*

*Smith v. Microsoft Corp.*,
    No. 11-cv-1958 JLS (BGS), 2012 WL 2975712 (S.D. Cal. July 20, 2012) ................. 4, 16

*Whitten v. ARS Nat. Services, Inc.*, 00 C 6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001)..... 18

*Wyatt v. Creditcare, Inc.,* 04-03681-JF, 2005 WL 2780684 (N.D. Cal. Oct. 25, 2005) .............. 17

*Zeisel v. Diamond Foods, Inc.,*
      C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011).................................16-17

**Statutory Provisions:**

Fed. R. Civ. P. 23 ..........................................................................................................*passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* .............................................*passim*

**Miscellaneous Authorities:**

1 NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2002)....................................................... 9

5 NEWBERG ON CLASS ACTIONS, § 24.25 (3d ed. 1992) .............................................. 16

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.      INTRODUCTION**

3       Text message spam is a pervasive and growing problem, with 69% of Americans having

4    received text message spam on their cellular telephones.[1]  These spam text messages have increased

5    dramatically in volume and insidiousness—many text messages now contain misleading and false

6    information designed to entice the unwary.[2]  Text message spam is attractive to advertisers because

7    of the ability to transmit bulk communications to thousands of individuals cheaply.[3]  But perhaps

8    what makes text message spam particularly attractive to advertisers is the ability to hide behind the

9    apparent "anonymity" of text spam—to lure, often through an unidentified third-party, unsuspecting

10    consumers through a phony "special offer" or other stalking horse that directs the consumer to a

11    website or a phone number where they are actually pitched the intended product.  This lawsuit and

12    class certification motion are products of, and a necessary counter to, this emerging landscape.

13       Plaintiff Jessica Lee and the proposed Class members all received unsolicited text messages

14    offering a free "Wal-Mart gift card" if the recipient called a telephone number contained in the body

15    of the message.  Of course, there was no "Wal-Mart gift card," this was just the bait that prolific

16    text message spamming operation Defendant Trifecta Marketing Group LLC ("Trifecta") used to

17    mask the true purpose of these messages: to generate leads for otherwise legitimate companies like

18    Defendant Stonebridge Life Insurance Company ("Stonebridge").  Certification of this Class is

19    essential to allow consumers who have suffered the aggravation and invasion of privacy that comes

20    with the receipt of such text message spam to obtain redress and to discourage these deceptive and

21    invasive advertising practices from continuing unabated.

22       While Trifecta has transmitted millions of spam text messages to consumers, Plaintiff is

23    seeking certification of a discrete class of 59,568 individuals who, on November 28, 2010, and

24

25    [1]     Declaration of John C. Ochoa ("Ochoa Decl."), ¶ 2.

26    [2]     According to a recent New York Times article, consumers in the United States received
        approximately 4.5 *billion* spam text messages in 2011. (*See* Ochoa Decl. ¶ 3.)

27    [3]     The article states that it cost one text message spammer only $300 to transmit 100,000
        unsolicited text messages. (Ochoa Decl. ¶ 3.)

28

1   continuing for four days thereafter, were sent identical text messages from the same cell-phone

2   number using the same software interface.  More precisely, Plaintiff seeks certification of a class as

3   defined as follows:

4         All individuals that received a text message from telephone number "650-283-0793" from

5         November 28, 2010 through December 2, 2010. [4]

6         Each of these text messages was transmitted as part of a marketing agreement between

7   Trifecta and Stonebridge to generate leads for selling Stonebridge's insurance products.  Trifecta

8   licensed the toll-free telephone number specifically identified in these text messages, which when

9   called connected consumers with Trifecta's call center located in Pinellas Park, Florida. Trifecta's

10   salespeople would then follow scripts written by Stonebridge designed to hard-sell consumers into

11   agreeing to receive a "call-back" from a Stonebridge representative, as well as receive pitches for

12   various other offers.

13         Although the hard-sell techniques and fraudulent business practices employed by Trifecta

14   and Stonebridge add color to this case, neither class certification nor Plaintiff's sole claim for

15   violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), are

16   premised on the misleading content of the messages or what occurred after a consumer called the

17   toll-free number.  Rather, it is Defendants' role in causing the transmission of the text messages

18   themselves from certain equipment that may fall within the definition of an automatic telephone

19   dialing machine ("ATDS") that form the legal and factual questions at issue in this class action.  As

20   such, this case is a textbook example of a claim suitable for class certification: a single telephone

21   number transmitted 59,568 text messages over a four-day period using the same technology and

22   inviting consumers to call a toll-free telephone number controlled by Trifeca for the benefit of

---

23   [4]    The class definition here has been modified from the definition pleaded in Plaintiff's

24       Amended Complaint, as the evidence collected by Plaintiff in this case to date has supported
        a different class definition than that originally pleaded.  (*See* Pl.'s Am. Compl. ¶ 28.)

25       Altering the class definition as a result of discovery is contemplated by Fed. R. Civ. P.
        23(c)(1)(C).  (stating that an order certifying a class "may be altered or amended before final

26       judgment"); *see also Moeller v. Taco Bell Corp.*, C 02-5849 MJJ, 2004 WL 5669683, at *1
        (N.D. Cal. Dec. 7, 2004); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135,

27       140 (N.D. Ill. 2009) (limiting *sua sponte* plaintiff's broad class definition in TCPA fax case
        to numbers listed on logs for particular dates).

28

1  Stonebridge.  As with a myriad other cases where TCPA classes have been certified, this case

2  presents factual and legal issues that are identical for the Plaintiff and each member of the proposed

3  Class, including (1) whether Defendants are liable under the TCPA for transmission of this text

4  message spam, (2) whether Defendants transmitted these text messages using an ATDS, (3) whether

5  Defendants can prove that they had "prior express consent" to send text messages to Plaintiff and

6  the proposed Class, and (4) whether Plaintiff and the Class members suffered the same injury

7  entitling them to statutory damages as a result of Defendants' conduct.

8       Regardless of the answers, these questions are common ones that focus solely upon

9  Defendants' conduct.  To the extent that any individual issues remain after these are decided, they

10  are *de minimis* in comparison to the common issues of this case.  The remaining prongs for

11  certification under Rule 23—numerosity, typicality, adequacy of representation, and superiority—

12  are also easily satisfied.  Accordingly, Plaintiff Jessica Lee, through her undersigned counsel, and

13  on behalf of thousands of other harassed and frustrated consumers, respectfully moves this Court for

14  an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).

15  **II.  THE TCPA**

16       In enacting the TCPA, Congress sought to prevent "intrusive nuisance calls" to consumers'

17  telephones that it determined were "invasive of privacy."  *Mims v. Arrow Fin. Servs. LLC,* 132 S.

18  Ct. 740, 744 (2012);[5] *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir.

19  2009).  The TCPA exists as a means to combat the growing threat to privacy being caused by

20  automated telemarketing practices, and prohibits parties from making "any call (other than a call

21  made for emergency purposes or made with the prior express consent of the called party) using any

22  automatic telephone dialing system[.]"  47 U.S.C. § 227(b)(1)(A)(iii); *see also Kramer v. Autobytel,*

23  *Inc,* 759 F. Supp. 2d. 1165, 1169 (N.D. Cal. 2010).  The TCPA applies with equal force to the

24

---

25  [5]      The Supreme Court discusses some of the findings of Congress when it enacted the TCPA,
including that "unrestricted marketing can be an intrusive invasion of privacy," that "many

26  consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to
their homes" and that "automated or prerecorded telephone calls made to private residences

27  [] were rightly regarded by recipients as an invasion of privacy."  *Mims*, 123 S. Ct at 745
(internal quotations and citations omitted).

28

1    transmission of text messages.  *Kramer,* 759 F. Supp. 2d at 1169-70.  A plaintiff need not suffer an

2    economic injury to state a claim under the TCPA, as Congress enacted the TCPA to prevent

3    invasions of privacy caused by unsolicited telemarketing calls.  *Smith v. Microsoft Corp.*, No. 11-

4    cv-1958 JLS (BGS), 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012).

5    　　　In response to a claim under the TCPA, a defendant may assert as an affirmative defense

6    that it had the consumer's "prior express consent" to be contacted.  *Grant v. Capital Mgmt.*

7    *Services, L.P.,* 449 F. App'x 598, 600, n.1 (9th Cir. 2011).  As an affirmative defense, both the FCC

8    and the courts have recognized that the burden is on the defendant to demonstrate prior express

9    consent.  *Sengenberger v. Credit Control Services, Inc.,* No. 09-C-2796, 2010 WL 1791270, at *4

10   (N.D. Ill. May 5, 2010).  "Prior express consent" has been defined by the Ninth Circuit as consent

11   that is "clearly and unmistakably stated."  *Satterfield,* 569 F.3d at 955.

12   　　　The TCPA sets statutory damages in the amount of $500 per violation, with an allowance

13   for trebling, as well as injunctive relief.  *See* 47 U.S.C. § 227(b)(3)(A-C).

14   **III.    BACKGROUND**

15   　　　**A.    Defendants Caused Text Messages to Be Transmitted as Part of a**

16   　　　　　　**Marketing Effort to Sell Stonebridge Life Insurance Products**

17   　　　On August 18, 2010, Defendant Stonebridge entered into a contract with Defendant Trifecta

18   entitled the Call Back Agreement ("Call Back Agreement") for the purpose of marketing

19   Stonebridge's insurance-related products and services.  (Ochoa Decl., ¶ 4.)  As part of the Call Back

20   Agreement, Stonebridge agreed to give Trifecta authority to perform marketing services for

21   Stonebridge's "insurance" and "sweepstakes" products.  (*Id.* at § 2.1.)  This "marketing," in reality,

22   consisted of text message transmissions that enticed consumers to call-in to receive a "Wal-Mart

23   gift card," only to be pitched various products, including the products of Stonebridge.  The

24   marketing process, while not particularly complicated, was intricately designed to maximize sales

25   "leads" for Stonebridge's products without ever referencing the name "Stonebridge" or the term

26   "insurance" prior to the consumer taking the bait and calling the phone number identified in the

27   unsolicited text message.  More specifically, Trifecta licensed numerous toll-free telephone

28   numbers that it then intentionally inserted into the body of the text messages.  (Deposition

4

1  Transcript of Alois Rubenbauer ("Rubenbauer Dep."), attached as Exhibit 4 of Ochoa Decl., at

2  67:7-9, 99:7-13, 57:20 – 59:7 *see also* Ochoa Decl. ¶¶ 6-8.)  Trifecta then contracted with various

3  third-parties to physically transmit the identical or nearly identical text messages to thousands of

4  consumers.  (Rubenbauer Dep. 51:4 – 52:9, 67:7-9; *see also* § III(B), *infra*.)

5        The recipients of the text messages, presumably intrigued by the prospect of a "free Wal-

6  mart gift card," would then call the toll-free phone number contained in the message, which was

7  answered by an operator in a call center hosted by Trifecta in Pinellas Park, Florida.  (Rubenbauer

8  Dep. 67:10-18; 99:7 – 100:2.)  During that phone conversation the consumer would be presented

9  various offers, including offers for Stonebridge's products and services, and offers to enter a

10  "sweepstakes" drawing sponsored by Stonebridge.  (Rubenbauer Dep. 97:4-7; Ochoa Decl. ¶ 9.)[6]

11  Stonebridge wrote the scripts that were read by Trifecta's call center operators, and Trifecta was

12  contractually obligated, and in fact did, read those scripts exactly as they were written to consumers

13  who called in.  (Rubenbauer Dep. 70:5-25.)  If a consumer expressed any interest in Stonebridge

14  products, Trifecta transmitted that consumer's contact information to Stonebridge, so Stonebridge

15  could then contact the consumer directly.  (Ochoa Decl. ¶ 4; Rubenbauer Dep. 94:24 – 95:15.)

16  Stonebridge maintained a list of "leads" generated through this text message marketing effort.

17  (Ochoa Decl. ¶ 10.)  This marketing arrangement – which Stonebridge had the right to alter and

18  control[7] – was in place during the time period between November 15, 2010 and December 2, 2010.

19  (Ochoa Decl. ¶¶ 11, 12.)

20        **B.      Nearly 60,000 Identical Text Messages Were Sent From the Same Source Using**

21             **the Same Technology**

22        Beginning on November 28, 2010, Defendants' agents transmitted text messages *en masse*

23  using the cellular telephone number "650-283-0793" to further the marketing scheme described

24  _____

25  [6]    Trifecta President Alois Rubenbauer testified that Stonebridge was not the first product
       offered during the inbound calls, but rather was the second or third product offered.
26       (Rubenbauer Dep., 115:24 – 116:9.)

27  [7]    Stonebridge controlled (or had the right to control) how Trifecta generated inbound calls, the
       process of which included, as set forth above, the transmission of the text messages and the
       call center sales scripts.  (Rubenbauer Dep. 102:24 – 103:1.)

28

5

above.  Plaintiff has obtained the "call detail" for cellular telephone phone number "650-283-0793" from cellular telephone carrier T-Mobile U.S.A.  (hereinafter, the "T-Mobile List").  The T-Mobile List shows that this single telephone number transmitted text messages almost continuously for four days, sending text message spam to 59,568 unique telephone numbers belonging to the members of the Class, including Plaintiff.  (Snyder Decl., ¶ 19.)  The call detail not only identifies all of the telephone numbers that received text messages from this telephone number, but also the date and time each transmission occurred.  (Snyder Decl., ¶¶ 19-20.)

The T-Mobile List reveals a substantial amount of information about the text message transmissions from "650-289-0793."  For instance, an examination of the T-Mobile List shows that the sender used a single software-based application programming interface ("API") to transmit the messages.  (Snyder Decl., ¶¶ 21, 23.)  In layman's terms, this means that the messages were not manually transmitted "one at a time," but rather a single computer program was used to transmit the messages rapidly.  In fact, the call detail shows that the text messages were transmitted at a rate of, on average, every 3-5 seconds.  (Snyder Decl., ¶¶ 19, 21.)  The text messages were also transmitted in a sequential fashion—that is, the messages were transmitted in ascending order, always increasing in number.  (Snyder Decl., ¶¶ 20, 21, 24.)[8]  Because of the sequential nature of the transmissions, the high rate of transmissions, and the use of a single API to transmit the text messages, the content of each transmission "block" (*i.e.*, grouping of continuous transmissions) was identical.  (Snyder Decl., ¶¶ 20, 23.)  In other words, all of the text messages sent from "650-289-0793" had the same content.

Although prior express consent is an affirmative defense to a TCPA claim, there has been no evidence produced in this case even suggesting that the Plaintiff, or any of the 59,568 other recipients of this text message spam, provided prior express consent to receive text messages from

---

[8]  The API used in this particular transmission was programmed to "skip" phone numbers that were not cellular phone numbers, or phone numbers that were otherwise not in service. (Snyder Decl., ¶ 21.)  This explains why there are "gaps" between the otherwise sequential ordering of the recipient telephone numbers. (*Id.*)

either Trifecta or Stonebridge.[9]  In fact, based on the sequential nature of the text message transmissions, the telephone numbers were generated in a random or sequential fashion,  (Snyder Decl., ¶¶ 5, 24, 25), which would remove even any suggestion of consent.

### C.  Facts Particular to Plaintiff Jessica Lee

On November 30, 2010, Jessica Lee received a text message on her cellular telephone from phone number "650-283-0793."  (Snyder Decl., ¶ 17, Ochoa Decl., ¶ 17.)[10]  The body of the text message received by Plaintiff read:

> Thanks 4 visiting our website please
> call 877-711-5429 to claim your $100
> walmart gift card voucher!
> reply stop 2 unsub

(Ochoa Decl., ¶ 18.)  Plaintiff Lee did not request to receive the text message, nor did she consent to receive it in any way.  (Lee Dep. 50:24-25 – 51:1.)  The text message received by Plaintiff was just one of the 59,568 messages transmitted *en masse* at intervals of approximately 3-5 seconds for almost four days from telephone number "650-283-0793."  (Snyder Decl., ¶ 17, 19.)  All of the text messages transmitted from telephone number "650-283-0793" were sent in an automated fashion using the same mechanisms.  (Snyder Decl., ¶¶ 21, 23.)  The text message received by Plaintiff contained the same or substantially similar as those received by the putative Class.  (Snyder Decl., ¶¶ 17, 23.)  In fact, according to Trifecta President Alois Rubenbauer, the substantive content, or  "call to action" in text messages sent on its behalf was a telephone number that connected consumers with Trifecta's call center in Pinellas Park.  (Rubenbauer Dep. 51:4 – 52:9; 67:10-18; 99:7 – 100:2.)  Trifecta licensed and paid for the toll-free telephone number contained in the text message sent to Plaintiff and to the other Class members during the relevant time period.

---

[9]  The President of Trifecta Marketing Group, Alois Rubenbauer, testified that he didn't know whether consumers had provided prior express consent to receive text messages on his companies' or clients' behalf.  (Rubenbauer Dep. 106:21 – 107:2.)  Neither Defendant has presented any evidence that any of the consumers whose telephone numbers appear on the T-Mobile List provided any consent, much less "prior express consent," to be contacted by Trifecta, Stonebridge, or any of its agents.

[10]  This cell phone number has belonged to Plaintiff Lee exclusively since she first obtained a cell phone at the age of 18.  (*See* Transcript of Deposition of Jessica Lee ("Lee Dep."), Ochoa Decl., Ex. 14, at 12:24 – 13:7.)

1   (Ochoa Decl., ¶¶ 7, 8.)  The text messages transmitted from "650-283-0793" were sent for the

2   purpose of generating inbound calls to Trifecta's call center, and, ultimately, to generate leads for

3   Stonebridge so that it could sell its insurance products.

4        Consequently, Plaintiff seeks to certify this case as a class action on behalf of a Class

5   defined as follows:  All individuals that received a text message from telephone number 650-283-

6   0793 from November 28, 2010 through December 2, 2010.

7   **IV.     ARGUMENT**

8        **A.      The Standards for Class Certification Are Satisfied.**

9        Federal Rule of Civil Procedure 23 provides that "[a] class action may be maintained if two

10  conditions are met—the suit must satisfy the criteria set forth in subdivision (a) (*i.e.* numerosity,

11  commonality, typicality, and adequacy of representation), and it must also fit into one of the three

12  categories described in subdivision (b)." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712

13  (9th Cir. 2010) (quoting *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437

14  (2010)).  In the instant case, Plaintiff seeks certification under Rule 23(b), which requires that

15  common questions of law or fact predominate and that maintaining the suit as a class action is

16  superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund,*

17  *Inc. v. Halliburton*, 131 S.Ct. 2179, 2184 (2011).  Although in some cases the court may have to

18  "probe behind the pleadings" to determine whether the plaintiffs have met the requirements of Rule

19  23, the court only considers the merits of the claim insofar as they overlap with the certification

20  requirements.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011); *see also Ellis v.*

21  *Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir. 2011); *United Steel, Paper & Forestry,*

22  *Rubber, Mfg. Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, v. ConocoPhillips*

23  *Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (stating that a court's class certification determination should

24  be based on the analysis of Rule 23's criteria and not on the underlying merits of the claim).

25       In this case, the evidence already gathered is more than sufficient to support class

26  certification.  In fact, a TCPA case in the Northern District of Ohio was recently certified on almost

27  identical facts and is highly instructive here.  *See Silbaugh v. Viking Magazine Services, Inc.*, 278

28  F.R.D. 389 (N.D. Ohio 2012).  In *Silbaugh*, as in this case, the defendant transmitted text messages

8

promoting "Wal-Mart gift cards" and encouraging recipients to call the toll-free number contained in the message.  *Id.* at 390.  Once called, the consumer was pitched defendant's magazine products. *Id.* at 391.[11]  As in this case, the defendant in *Silbaugh* had no evidence that any consumer had provided "prior express consent" to be called.  This case and *Silbaugh* share a similar marketing scheme, the lack of any prior express consent, and the *en masse* transmission of text messages to thousands of recipients.  But in this case, Plaintiff has even more evidence warranting class certification—namely, the T-Mobile List that details the common mechanisms used to transmit these messages.  Accordingly, the proposed Class in this case satisfies each of Rule 23(a)'s prerequisites and the requirements for certification under Rules 23(b)(3).

### 1.   *The Numerosity Requirement is Satisfied.*

The numerosity requirement is met when "the class is so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1).  To satisfy this requirement, a plaintiff need not demonstrate the exact number of class members, nor is there a particular "magic number" that is required.  *See In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005) ("Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity.").  Generally, numerosity is satisfied when the class comprises 40 or more members, *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007), and classes that number in the thousands "clearly" satisfy the numerosity requirement.  *See e.g., Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D.Ill. 1989); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646-47 (W.D. Wash. 2007) (finding numerosity requirement satisfied in TCPA junk fax case involving the transmission of 3,000 unsolicited faxes).

In this case, discovery has shown that the relevant text messages were transmitted to 59,568 potential Class members.  (Snyder Decl., ¶ 19.)  Plaintiff, therefore, easily satisfies the numerosity

---

[11]   Not only was the text message scheme in *Silbaugh* similar to the one that occurred here, the entity that physically transmitted the text messages in *Silbaugh* (Xcel Direct) is a "managing member" of Defendant Trifecta.   (*See* Ochoa Decl., ¶ 19.)  In fact, some of the same individual actors implicated in that case are also present in this case (namely, Mark Lyon and Alois Rubenbauer).   (*See Silbaugh v. Viking Magazine Services*, 11-cv-01299 (N.D. Ohio), at Dkt. 10-2, pp. 25, (referencing Alois Rubenbauer; & pp. 85 (referencing Mark Lyon and Xcel Direct); and Rubenbauer Dep. 11:25 – 12:4.)

9

1    requirement.  *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 ("Class actions under the amended

2    Rule 23 have frequently involved classes numbering in the hundreds, or thousands…In such cases,

3    the impracticability of bringing all class members before the court has been obvious, and the Rule

4    23(a)(1) requirement has been easily met.").

5         Additionally, although not explicitly an element of Rule 23, some courts have suggested that

6    the members of the class must also be "clearly ascertainable before a class action may proceed."

7    *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (listing cases).  In

8    this case, the T-Mobile List identifies the unique cellular telephone numbers of the Class plaintiff

9    seeks to certify here—namely, all individuals who received a text message from phone number

10   "650-283-0793" between November 28, 2010 and December 2, 2010.  Consequently, the Class can

11   be readily ascertained through this evidence.  *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07

12   C 5953, 2009 WL 2581324, *4 (finding TCPA class sufficiently identifiable because "[plaintiff]

13   may use the log and fax numbers to 'work backwards' to locate and identify the exact entities to

14   whom the fax was sent."); *Cy's Crabhouse North, Inc.*, 259 F.R.D at 141 (finding class sufficiently

15   identifiable in a TCPA fax case through reference to fax numbers on transmission logs).

16              **2.    *The Commonality Requirement is Satisfied.***

17        The second threshold to certification requires that "there are questions of law or fact

18   common to the class."  Fed. R. Civ. P. 23(a)(2).  This rule is "construed permissively."  *Parra v.*

19   *Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).  Commonality may be demonstrated when the

20   claims of all class members "depend upon a common contention" and "even a single common

21   question will do."  *Dukes*, 131 S.Ct. at 2545, 2556; *see also Parra*, 536 F.3d at 978 ("[t]he existence

22   of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient

23   facts coupled with disparate legal remedies within the class").  The common contention must be of

24   such a nature that it is capable of class-wide resolution, and that the "determination of its truth or

25   falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

26   *Dukes*, 131 S.Ct. at 2545.  Moreover, the permissive standard of commonality provides that

27   "[w]here the circumstances of each particular class member vary but retain a common core of

28   factual or legal issues with the rest of the class, commonality exists."  *Parra*, 536 F.3d at 978-79.  In

---

10

1   this case, Plaintiff's Amended Complaint is limited to one count alleging violations of the TCPA,

2   and the violations are the same with respect to each member of the proposed Class—they all

3   involve text message transmissions from the same phone number using the same technology over a

4   very brief period of time.  Further, the evidence also shows that all of the text messages were

5   transmitted in furtherance of Defendants' specific and agreed-upon marketing scheme.

6          ***i.***       ***Whether Defendants are liable to the Class for the text messages***

7          ***transmitted is a common question.***

8         The primary question in this class action, whether Stonebridge and Trifecta are liable under

9   the TCPA for sending the text messages from phone number 650-283-0793 to the proposed Class, is

10  a common question that the evidence adduced to date shows can be answered on a class-wide basis.

11  The T-Mobile list establishes a unity of purpose in the transmissions.  All of the text messages were

12  transmitted from a single telephone number in a rapid fashion.  (Snyder Decl., ¶ 19.)  The high rate

13  of transmission and the use of a single API interface proves that all the messages contained the

14  same content, (*i.e.*, the same call to action).  (Snyder Decl., ¶¶ 19, 21, 23.)  Simply put, the

15  messages were transmitted too rapidly to allow for disparate or changing content to be transmitted

16  for that time period.  (Snyder Decl., ¶ 23.)  Because the text messages transmitted were all uniform,

17  Defendants' liability for transmitting those text messages will also be a question easily resolved on

18  a class-wide basis.

19        Strengthening this finding, the evidence in the record reveals that the "content" or "call to

20  action" in each text message was the same—a toll-free telephone number that, when called, led

21  back to Trifecta's call center in Pinellas Park where operators read from a script written by

22  Stonebridge.  The text message received by Plaintiff contained a toll-free telephone number

23  licensed by Trifecta.  (Ochoa Decl., ¶¶ 7, 18.)  As discussed above, the technology and

24  methodology used to transmit the messages meant that all the messages contained the same content.

25  This is consistent with the testimony of Trifecta president Alois Rubenbauer who confirmed that the

26  text messages transmitted on its behalf contained telephone numbers that allowed the recipient to

27

28

PL'S NOM, MOT. & MEMO IN SUPPORT OF CLASS CERT.          CV-11-00043-RS

1   call in and be connected to Trifecta's call centers.  (Rubenbauer Dep. 51:4 – 52:9; 67:7-9.)[12]

2   During inbound calls to these toll-free telephone numbers, Trifecta's operators would attempt to

3   generate "leads" for Stonebridge's life insurance products.  (Rubenbauer Dep. 29:20 – 30:4.)  The

4   date of the transmission of these text messages to the proposed Class (November 28th through

5   December 2nd) occurred during a time period when Trifecta was actively generating leads for

6   Stonebridge.  (Ochoa Decl., ¶¶ 11, 12.)  By contract, Trifecta's operators would read from a script

7   that referenced Stonebridge's products "second or third" on inbound telephone calls to Trifecta's

8   call centers.  (Rubenbauer Dep. 116:5-10.)[13]  Because all the text messages contained the same "call

9   to action," *i.e.*, a toll-free telephone number leading back to Trifecta, and because Trifecta was

10  contractually obligated to create leads for Stonebridge on those inbound calls, the answer to whether

11  Defendants can be held liable under the TCPA for the transmission of these messages is a common

12  one.

13          Cross-referencing the T-Mobile List with Stonebridge's records confirms the conclusion that

14  all of the messages transmitted from phone number "650-283-0793" were sent to further

15  Defendants' marketing scheme.  In fact, there are over two-dozen consumer telephone numbers in

16  Stonebridge's records that match telephone numbers on the T-Mobile List, demonstrating that there

17  were certain consumers who were duped into calling the toll-free numbers identified in the text

18  message received from "650-283-0793" and who then expressed interest in receiving Stonebridge

19  life insurance products.  (Ochoa Decl., ¶ 15.)  These consumers were eventually entered into

20  Stonebridge's records, with the Stonebridge Leads List revealing a "contact date" for all these

21  particular consumers of within days from when each received the text message from "650-283-

22

23  ───────────────

24  [12]    In addition, Plaintiff is confident that further merits discovery will confirm that "Vincent
        Montalbano," the individual identified by T-Mobile as having purchased the pre-paid
25      cellular telephone number "650-283-0793," did so at the direction of Defendant Trifecta.
        (Ochoa Decl., ¶¶ 14, 15.)

26  [13]    Rubenbauer explained the "position" Stonebridge would be pitched on inbound calls as
        follows: "McDonald's says, you know, one-dollar hamburgers, right?  You're going to
27      McDonalds for the one-dollar hamburgers, but 'I'll take a soda with that too.'  Stonebridge
        was the soda."  (Rubenbauer Dep. 115:24 – 116:9.)

28

1  0793." (Ochoa Decl., ¶ 10, 15.)[14]  While these common facts support the merits of Plaintiff's

2  TCPA claim, they undoubtedly bolster the conclusion that a common question – whether

3  Defendants can be held liable for transmitting text messages in furtherance of their marketing

4  scheme – can be commonly answered for the entire Class.

5      The holding in *Silbaugh v. Viking Services* strengthens this conclusion.  The defendant in

6  *Silbaugh* was engaged in an almost identical marketing program, and the court there likewise found

7  the resolution of defendant's liability a common question.  278 F.R.D. at 393 ("plaintiff asserts that

8  defendant set up a single text message marketing campaign that ran for a one month period which

9  was conducted in the same manner with respect to all of the class members.").  The same result is

10  warranted here.

11          ***ii.***      ***Whether Defendants used an ATDS to transmit the text messages to***

12                    ***the Class is a common question.***

13      A second common question capable of class-wide determination is whether the messages at

14  issue were sent using an ATDS, which Congress defines as "equipment which has the capacity (A)

15  to store or produce telephone numbers to be called, using a random or sequential number generator;

16  and (B) to dial such numbers."  47 U.S.C. § 227(a)(1); *Satterfield*, 569 F.3d at 950.  The T-Mobile

17  List itself, along with the expert opinion of Randall Snyder, demonstrates that this question is

18  capable of class-wide determination as the messages were all transmitted from the same telephone

19  number using a single API.

20      First, all text messages were transmitted from a single telephone number in rapid succession

21  over a short period of time.  (Snyder Decl., ¶ 19.)  This shows the use of a single technology (*i.e.*

22  "API") in the transmission of these messages (as opposed to different transmission methods for

23

24  [14]    The reason all the telephone numbers on the Stonebridge Leads List do not match the T-
       Mobile list is because Trifecta employed numerous agents to transmit text messages on its
25     behalf, some of which not even Trifecta's President could recall.  (Rubenbauer Dep. 114:9-
       15.)  While the limited Class Plaintiff seeks to certify is clearly ascertainable, future
26     discovery may disclose some of these other agents, thus warranting an expansion of the
       Class. Plaintiff seeks to certify the Class as defined in this Motion because, to date, it is the
27     only ascertainable class that she can represent.  Future discovery may warrant an expansion
       of the Class.

28

each phone number).  (Snyder Decl., ¶¶ 19, 21.)  If a single technology was used to transmit these messages, then the question of whether an ATDS was used is a common one to all Class members. Second, the T-Mobile List itself not only shows that a single technology was used to transmit the messages, but also that the technology was in fact an ATDS.  (Snyder Decl., ¶¶ 21, 24.)  The text messages here were transmitted in a sequential fashion, *i.e.*, the recipient telephone numbers were arranged in a numerically ascending order, and the text messages were transmitted to the Class members in that order.  (Snyder Decl., ¶¶ 20, 21.)  The sequential nature of the T-Mobile List demonstrates not only that the equipment used had the *capacity* to produce and dial numbers in a random or sequential fashion, but that it in fact *did* dial numbers sequentially.  Regardless of the ultimate answer to this question, the evidence gleaned from the T-Mobile List reveals that the answer will be one common to all the Class members.

> ### iii.    Whether Defendants can demonstrate that Class members provided "prior express consent" is a common question.

A third common question is whether the Defendants obtained express consent from the Plaintiff or proposed Class prior to sending the text messages.  Plaintiff testified that she never consented to receive the text message alleged in the Complaint.  (Lee Dep. 50:24-25 – 51:1.)  As discussed in Section II, *supra*, defendants in a TCPA action bear the burden of demonstrating prior express consent.  After nearly two years of litigation, neither Stonebridge nor Trifecta have yet to gain or provide any evidence in discovery that any Class member consented to receive text messages from either Defendant.  In fact, Trifecta even admitted that it has no evidence of such consent, stating under oath that Trifecta does not know whether anyone who received text messages on its behalf consented.  (Rubenbauer Dep. 106:21 – 107:2.)  The record is simply devoid of any evidence of (1) where consent may have been obtained (2) when consent may have been obtained, or (3) what language was used to attempt to gain consent.  If consumers had given either Trifecta or Stonebridge "prior express consent" to contact them via text message, this evidence would presumably be in Defendants' records, or at a minimum obtainable by the Defendants.  The complete lack of evidence of consent as to the T-Mobile List should put to rest any argument that "individualized issues" remain as to whether the Plaintiff or any Class member consented.  *See*

14

1   *Silbaugh*, 28 F.R.D. at 393 ("Having produced no evidence that any individual consented to receive

2   the text messages . . .  defendant is unable to realistically argue that individual issues regarding

3   consent outweigh the commonality.").

4         Still, Defendants may attempt to artificially manufacture an "individual" issue, potentially

5   arguing that the issue of consent would have to be resolved for each individual Class member.  Such

6   an argument is a red herring, as Defendants have failed not only to provide evidence of any such

7   consent, but have also failed to demonstrate why any subsequent "resolution" of this consent issue

8   would, itself, not constitute a common question of fact.  *See Silbaugh*, 278 F.R.D. at 393.  Other

9   Courts have rightfully pointed out that in TCPA cases such as this, when thousands of calls are

10  made as part of an "organized program," and when defendants engaged in a "standardized course of

11  conduct," the commonality requirement is satisfied.  *See Hinman v. M and M Rental Ctr., Inc.*, 545

12  F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (collecting authorities).  This is precisely the case here,

13  where thousands of text messages were transmitted from a single phone number, using the same

14  technology, and for the same purpose, resulting in identical injury to the Class members' privacy

15  rights.

16        Further, as discussed above, the T-Mobile List demonstrates that the recipients' phone

17  numbers were sequentially generated and transmitted, showing that the phone numbers were not

18  obtained from a third-party that might somehow have guaranteed the individuals "opted-in" or

19  otherwise consented to receive text messages, but rather that the numbers were generated in a

20  random fashion using a computer.  (Snyder Decl., ¶¶ 24, 25.)  Consequently, the fact that the

21  numbers were randomly generated using a computer further establishes that no Class member

22  provided prior express consent to either Stonebridge or Trifecta to receive these text messages.  In

23  short, the question of whether the Class members provided "prior express consent" can

24  unequivocally be answered in the negative—a common question with a common answer for all

25  Class members.

26                    *iv.      **Whether the Class members suffered the same injury and are**

27                         ***entitled to damages Is a common question.***

28        A fourth common question is whether Plaintiff and the Class members all suffered the same

                                              15

1    injury entitling them to damages as a result. *See, e.g., Dukes*, 131 S.Ct at 2551. Here, Plaintiff

2    alleges a single violation of the TCPA, which exists to redress privacy violations caused by the

3    annoying and invasive transmission of unsolicited text messages. *Mims*, 123 S.Ct. at 745; *see also*

4    *Smith*, 2012 WL 2975712, at \*6 (explaining that the TCPA protects privacy rights, and does not

5    depend on economic injury); *Silbaugh*, 278 F.R.D. at 393 ("every court examining the pertinent

6    language of the TCPA has concluded that a plaintiff does not have to prove that he was charged for

7    a call to state a claim under the TCPA. . ."). Further, the TCPA provides for statutory injunctive

8    relief and monetary damages of $500 per violation, with the possibility of trebling those damages if

9    a defendant's conduct was willful. 47 U.S.C. § 227(b)(3)(A-C). Here, each and every Class

10    member suffered an identical invasion of privacy when their respective cellular phones received the

11    unsolicited text message on the date and time specified on the T-Mobile List. There is no need to

12    calculate damages for each individual Class member, as the statute already provides the damages

13    for each Class member. And, as outlined above, the entitlement to such statutory relief to the Class

14    members will rise or fall with the common questions detailed above.

15       Regardless of the ultimate answer to any of these questions, the answer depends on an

16    examination of the Defendants' conduct, which is identical towards each member of the proposed

17    Class. To the extent that any individualized issues exist at all, they will be peripheral to the

18    dispositive issues in this case.

19                **3.**      ***The Typicality Requirement is Satisfied.***

20       Rule 23 next requires that class representatives have claims that are typical of those of the

21    putative class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to

22    the commonality requirement and is satisfied if Plaintiff's claims arise from the same practice or

23    course of conduct that gives rise to the claims of other Class members. *Cole v. Asurion Corp.*, 267

24    F.R.D. 322, 326 (C.D. Cal. 2010). "Under the rule's permissive standards, representative claims are

25    'typical' if they are reasonably coextensive with those of absent class members; they need not be

26    substantially identical." *Zeisel v. Diamond Foods, Inc.*, C 10-01192 JSW, 2011 WL 2221113 at \*7

27    (N.D. Cal. June 7, 2011) (citing *Hanlon v. Chrystler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

28    Typicality "does not mean that the claims of the class representative[s] must be identical or

16

1   substantially identical to those of the absent class members." 5 NEWBERG ON CLASS ACTIONS, §

2   24.25 (3d ed. 1992); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, the

3   named plaintiff's claims must be "reasonably coextensive" with absent class members' claims.

4   *Zeisel*, 2011 WL 2221113, at *7.  Typicality has been found where defendant's practice of sending

5   unsolicited advertisements to the named plaintiff and the proposed class resulted in the claims of the

6   potential plaintiffs being "based upon the same legal theory, *i.e.* violation of the TCPA." *CE*

7   *Design v. Beaty Const., Inc.*, 07 C 3340, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009); *see also*

8   *Kavu, Inc.*, 246 F.R.D. at 648 (finding named plaintiff's TCPA claim for receiving unsolicited faxes

9   typical of the class).  Finally, "a finding of commonality will ordinarily support a finding of

10  typicality." *Ashmus v. Calderon*, 935 F. Supp. 1048 (N.D. Cal. 1996); *see General Tel. Co. v.*

11  *Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting how the requirements of commonality and typicality

12  "merge").

13          In this case, Plaintiff Jessica Lee's claims are precisely coextensive with the claims of the

14  proposed Class members.  As confirmed by the records produced by T-Mobile, Plaintiff Lee and the

15  proposed Class members all received text messages from the same telephone number over the

16  course of a few days.  (Ochoa Decl., ¶ 17; Snyder Decl., ¶¶ 17, 19.)  These messages were all sent

17  in furtherance of Defendants' marketing scheme.  (*See* § III(A) *supra;* Ochoa Decl., ¶ 15.)  As

18  recognized by Congress when it passed the TCPA, these spam text message calls violated the

19  privacy rights of Plaintiff and the other Class members.  Thus, Plaintiff's claim under the TCPA

20  arises out of the same course of conduct, is based on the same legal theory, and resulted in the same

21  injury as the proposed Class's claims.  Accordingly, the typicality requirement is satisfied.

22          **4.       *The Requirement of Adequate Representation is Satisfied.***

23          The final Rule 23(a) prerequisite requires that the representative parties have and will

24  continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This

25  factor has two components. "First, the named representatives must appear able to prosecute the

26  action vigorously through qualified counsel, and second, the representatives must not have

27  antagonistic or conflicting interests with the unnamed members of the class." *Wyatt v. Creditcare,*

28  *Inc.,* 04-03681-JF, 2005 WL 2780684 at *5 (N.D. Cal. Oct. 25, 2005), (quoting *Lerwill v. Inflight*

17

1   *Motion Pictures*, 582 F.2d 507, 512 (9th Cir. 1978)).

2          In this case, Plaintiff Lee has the same interests as the proposed Class members—all have

3   allegedly received text messages from Defendants without their consent.  Furthermore, Plaintiff Lee

4   has actively participated in the litigation, traveling across the country to participate in a settlement

5   conference with Magistrate Judge Spero, appearing for a full-day deposition, producing hundreds of

6   pages of her telephone records to Defendants, responding to multiple sets of discovery, and

7   otherwise assisting counsel in their prosecution of this case.  In her pursuit of this matter, Plaintiff

8   has not only testified that she did not bring this case to enrich only herself (Lee Dep. 87:12-14), she

9   has also demonstrated that she will be a zealous advocate for the Class, putting their interests ahead

10  of her own.  Therefore, the proposed class representative has no interests antagonistic to the

11  interests of the proposed Class.

12         Similarly, proposed class counsel, Edelson McGuire, LLC, have regularly engaged in major

13  complex litigation, and have extensive experience in consumer class action lawsuits involving

14  cellular phone technology. (*See* Declaration of Ryan D. Andrews ("Andrews Decl."), ¶¶ 3-5.)

15  Plaintiff's counsel have been appointed as class counsel in several complex consumer class actions

16  and have been appointed as class counsel for similar TCPA text messaging cases.  "The fact that

17  attorneys have been found adequate in other cases is persuasive evidence that they will be adequate

18  again."  *Whitten v. ARS Nat. Services, Inc.*, 00 C 6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27,

19  2001) (internal quotations omitted); *see, e.g., Satterfield v. Simon & Schuster,* No. 06-cv-2893 CW

20  (N.D. Cal.); *Lozano v. Twentieth Century Fox,* No. 09-cv-06344 (N.D. Ill.); *Weinstein, et al. v. The

21  Timberland Co.,* No. 06-cv-0454 (N.D. Ill.); *Kramer v. Autobytel, Inc., et al.*, 10-cv-2722 (N.D.

22  Cal.); *Espinal v. Burger King Corp., et al.,* No. 09-20982 (S.D. Fla.); *Rojas v. Career Education

23  Corporation*, No. 10-cv-05260 (N.D. Ill.).  Accordingly, Plaintiff's counsel will adequately

24  represent the instant Class.

25         **5.        *The Proposed Class Satisfies Rule 23(b)(3)'s Requirements*.**

26         In addition to meeting the prerequisites of Rule 23(a), Plaintiff must also meet one of the

27  three requirements of Rule 23(b) to certify the proposed Class.  *Zinser v. Accufix Research Inst.,

28  Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(b)(3) provides that a class action can be

1 maintained where: (1) the questions of law and fact common to members of the class predominate

2 over any questions affecting only individuals, and (2) the class action mechanism is superior to the

3 other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P.

4 23(b)(3); *Pierce v. County of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008).  Certification under

5 Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be

6 served best by settling their differences in a single action."  *In re Ferrero Litigation*, 278 F.R.D.

7 552, 559 (S.D. Cal. 2011) (citing *Hanlon* 150 F.3d at 1022)).  A case such as this, where individual

8 recoveries for Plaintiff and the Class members will be small and but for the class action would not

9 likely be pursued, is a quintessential example of the practical utility of the class action mechanism

10 under federal law.  *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004)

11 (stating that "[t]he policy at the very core of the class action mechanism is to overcome the problem

12 that small recoveries do not provide the incentive for any individual to bring a solo action

13 prosecuting his or her rights.").

14                                         **i.**       ***Common questions of law and fact predominate.***

15       The predominance requirement "tests whether proposed classes are sufficiently cohesive to

16 warrant adjudication by representation," which is a "far more demanding" standard than the

17 commonality requirement of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

18 1172 (9th Cir. 2010).  Nevertheless, "[w]hen common questions present a significant aspect of the

19 case and they can be resolved for all members of the class in a single adjudication, there is clear

20 justification for handling the dispute on a representative rather than an individual basis." *Mazza v.*

21 *Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012).  Further, when the plaintiff

22 advances a theory of liability in its certification motion, the court should determine whether

23 common issues predominate under this theory without evaluating the theory itself.  *See United Steel*

24 *v. ConocoPhillips Co.,* 593 F.3d 802, 808-09 (9th Cir. 2010).  In fact, common legal and factual

25 issues have been found to predominate where the class members' claims arose under the TCPA and

26 where the claims focused on the defendants' advertising campaign. *Kavu, Inc.,* 246 F.R.D. at 650-

27 51; *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.,* 08 C 5959, 2010 WL 4931001, at *3

28 (N.D. Ill. Nov 29, 2010).  The predominance test "begins, of course, with the elements of the

19

1  underlying cause of action." *Erica P. John Fund, Inc.*, 131 S.Ct at 2184.  The elements of a TCPA

2  claim are whether Defendants "made" text message calls using an ATDS.  *See* 47 U.S.C. §

3  227(b)(1)(A)(iii).

4      Plaintiff presents a cognizable, unified theory of liability in this Motion: that Defendants

5  "made" all the text message calls to further their joint marketing scheme.  Pursuant to the Call Back

6  Agreement between Defendants, Trifecta attempted to generate leads for Stonebridge life insurance

7  products.  If and when members of the Class called the toll-free number contained in the text

8  messages they received, they would have been read a script created by Stonebridge in order to

9  generate leads.  (*See* § III(A) *supra*).  All of the Class members' claims will rise or fall on whether

10 Trifecta and Stonebridge can be held liable for the transmission of these messages.  And

11 Defendants' liability will be established solely by examining the conduct of the Defendants

12 themselves, not the actions of any Class members.  In *Silbaugh*, the Court accepted the plaintiff's

13 theory that "a single text message marketing campaign . . .which was conducted in the same manner

14 with respect to all the class members" satisfied the predominance requirement.  278 F.R.D. at 393.

15 Plaintiff presents the same theory here, that all of the text messages were transmitted in the same

16 manner in furtherance of Defendants' marketing scheme.

17     The use of a single telephone number and a single API software interface to transmit the text

18 messages, and the rapid *en masse* transmission of thousands of text messages to sequentially-

19 numbered telephone numbers, resulted in text messages being sent to the Class in precisely the

20 same manner.  This makes the question of whether Defendants used an ATDS to transmit these

21 messages a common one that predominates over any individual issues.  *See, e.g., Silbaugh*, 278

22 F.R.D. at 393-94.

23     As noted in Section II, *supra*, the existence of prior express consent is an affirmative defense

24 to a TCPA claim, not an element of a claim itself.  And as discussed in Section IV(A)(2), whether

25 Defendants can prove prior express consent is a common question to all Class members.

26 Specifically, Defendants have no evidence of consent—the likely reason being that the phone

27 numbers of the text message recipients was randomly generated using an ATDS.  (Snyder Decl., ¶¶

28 5, 24, 25.)  This single source of recipient numbers is applicable to all Class members.  In other

20

1    words, whether a random number generator was used, and as a consequence, no prior express

2    consent exists, is a common question as to all Class members with the answer depending only on

3    Defendants' and their agents' conduct.  Like *Silbaugh*, Plaintiff here has presented evidence that the

4    text message blast was sent to recipients with no connection to Defendants and that the recipient

5    phone numbers were generated through a common course of conduct.  *Silbaugh*, 278 F.R.D. at 393-

6    94.  As such, common questions clearly predominate over any individual issues that may exist.

7                    ***ii.        The class action is a superior method for the adjudication of this***

8                    ***controversy.***

9            The instant class action is superior to any other method available to fairly and efficiently

10   adjudicate the Class members' claims.  The superiority requirement's purpose is one of judicial

11   economy and to assure that a class action is the "most efficient and effective means of resolving the

12   controversy." *Wolin,* 617 F.3d at 1175-76.  "Where recovery on an individual basis would be

13   dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class

14   certification."  *Id.* at 1175.  Moreover, the class action mechanism is superior to individual actions

15   in consumer cases with thousands of members as "Rule 23(b)(3) was designed for situations such as

16   this, in which the potential recovery is too slight to support individual suits, but injury is substantial

17   in the aggregate." *Holloway v. Full Spectrum Lending*, CV 06-5975 DOC RNBX, 2007 WL

18   7698843 at *9 (C.D. Cal. June 26, 2007) (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953

19   (7th Cir. 2006)).

20           This case is particularly suited for class treatment because the claims of the Plaintiff and the

21   proposed Class involve identical alleged violations of a federal statute, namely the transmission of

22   text messages by Defendants.  In addition, absent a class action, most members of the Class would

23   find the cost of litigating their claims—each of which is statutorily limited by the TCPA to a

24   maximum of $500 (or $1,500 if trebled)—to be prohibitive and such multiple individual actions

25   would be judicially inefficient.

26           Certification of the proposed Class here is essential to stemming the tide of unauthorized

27   text messages, which by all accounts has been increasing dramatically in both scope and

28   insidiousness.  Many companies, cognizant of the pitfalls of transmitting text message spam, no

                                                        21

1    longer advertise their products or brand name in the content of the text message.  Rather, they hide

2    behind offers of "free gift cards" and ubiquitous trademarks.  This is precisely what happened in

3    this case, as well as in *Silbaugh*.  278 F.R.D. at 390.  The Court in *Silbaugh* certified a class based

4    on a text message marketing scheme almost identical to the one described in this case.  Certification

5    of this Class is essential so that advertisers stop inundating consumers with deceptive, misleading

6    text message spam to market their products.

7         Were this case not to proceed on a class-wide basis, it is unlikely that any significant number

8    of Class members would be able to obtain redress or that Defendants would willingly cease their

9    unauthorized text message spam.  Current technology provides a strong financial incentive for

10   unscrupulous advertisers to transmit tens of thousands of text messages extremely cheaply.  This

11   can only be countered with the possibility that all of the individuals harmed by such conduct can

12   obtain redress, as the threat of a few individual actions would not deter Defendants' conduct.

13   Accordingly, common questions predominate and a class action is the superior method of

14   adjudicating this controversy.

15        **B.        The Court Should Appoint Plaintiff's Counsel As Class Counsel**

16        Under Rule 23, "a court that certifies a class must appoint class counsel…[who] must fairly

17   and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  In making this

18   determination, the Court must consider counsel's: (1) work in identifying or investigating potential

19   claims; (2) experience in handling class actions or other complex litigation, and the types of claims

20   asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to

21   representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

22        The proposed Class counsel have diligently investigated Plaintiff's TCPA text-messaging

23   claim and have devoted, and will continue to devote, time and resources to this litigation. (Andrews

24   Decl., ¶ 5.)  As discussed above, proposed Class counsel have experience with similar class action

25   litigation and have been appointed class counsel in analogous consumer class actions regarding the

26   TCPA. (*See* Andrews Decl. ¶ 3.)  Proposed Class counsel also have an in-depth knowledge of the

27   applicable law, having been involved in other TCPA text-message litigation. (*See* Andrews Decl. ¶

28   4.)  Accordingly, the Court should appoint Plaintiff's counsel, Ryan D. Andrews, Evan M. Meyers,

                                          22

1   John C. Ochoa and Bradley Baglien of Edelson McGuire, LLC, to serve as Class Counsel for the

2   proposed class pursuant to Rule 23(g).[15]

3   **V.      CONCLUSION**

4              For the reasons discussed above, the requirements of Rule 23 are satisfied. Therefore,

5   Plaintiff Jessica Lee respectfully requests that the Court enter an order certifying the proposed Class

6   pursuant to Rule 23(b)(3), appointing Ryan D. Andrews, Evan M. Meyers, John C. Ochoa and

7   Bradley Baglien as Class Counsel, and awarding such additional relief as the Court deems

8   reasonable and just.

9

10   Dated:  August 29, 2012

11                                                                    Respectfully Submitted,

12

13                                                                    JESSICA LEE, individually and on behalf of a class of
                                                                     similarly situated individuals

14
                                                                     BY: /s/  John C. Ochoa_____
15                                                                   One of Her attorneys

16

17   Sean Reis (SBN 184044)
     Edelson McGuire, LLP
18   30021 Tomas Street, Suite 300
     Rancho Santa Margarita, California 92688
19   Tel: 949.459.2124
     Fax: 949.459.2123
20   sreis@edelson.com

21
     Ryan Andrews (*Pro Hac Vice*)
22   John C. Ochoa (*Pro Hac Vice*)
     Evan M. Meyers (*Pro Hac Vice*)
23   Bradley Baglien (*Pro Hac Vice*)
     Edelson McGuire, LLC
24   350 North LaSalle, Suite 1300
     Chicago, Illinois 60654
25   Tel: 312.589.6370
     Fax: 312.589.6378
26

27   [15]      Upon certification of this Class, Plaintiff will present a notice plan to the Court and provide
              an explanation about how direct notice that satisfies Due Process can be accomplished.
28

1   randrews@edelson.com
    jochoa@edelson.com
2   emeyers@edelson.com
    bbaglien@edelson.com
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL'S NOM, MOT. & MEMO IN SUPPORT OF CLASS CERT.                                    CV-11-00043-RS

## **CERTIFICATE OF SERVICE**

I, John C. Ochoa, an attorney, certify that on August 29, 2012, I caused the above and foregoing ***Plaintiff's Notice of Motion, Motion for Class Certification, and Memorandum of Points and Authorities in Support*** to be served on counsel of record by causing true and accurate copies of such paper to be sent via ecf to:

Tiffany Cheung
TCheung@mofo.com
Dan Edward Marmalefsky
DMarmalefsky@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482

*Attorneys for Stonebridge Life Insurance Company*

Stuart D. Kirchick
sdkirchick@aol.com
Law Offices of Stuart D. Kirchick
1143 Story Road
Suite 210
San Jose, CA 95122

ALEXANDER EDWARD SKLAVOS
aes@sklavoslaw.com
LAW OFFICES OF ALEXANDER E. SKLAVOS, PC
375 N. Broadway, Suite 208
Jericho, NY 11753
Telephone: 516.248.4000
Facsimile: 516.877.8010

*Attorney for Trifecta Marketing Group LLC*

/s/ John C. Ochoa

PL'S NOM, MOT. & MEMO IN SUPPORT OF CLASS CERT.                    CV-11-00043-RS