1   DAN MARMALEFSKY (CA SBN 95477)
DMarmalefsky@mofo.com
2   MORRISON & FOERSTER LLP
555 West Fifth Street
3   Los Angeles, California  90013-1024
Telephone: 213.892.5200
4   Facsimile: 213.892.5454

5   TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
6   MORRISON & FOERSTER LLP
425 Market Street
7   San Francisco, California  94105-2482
Telephone: 415.268.7000
8   Facsimile: 415.268.7522

9   Attorneys for Defendant
STONEBRIDGE LIFE INSURANCE
10  COMPANY, A VERMONT CORPORATION

11

12               UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

| | |
|---|---|
| JESSICA LEE, individually and on behalf of a class of similarly situated individuals, | Case No.    CV 11-0043-RS |
| Plaintiff, | **DEFENDANT STONEBRIDGE LIFE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | |
| STONEBRIDGE LIFE INSURANCE COMPANY, a Vermont corporation, and TRIFECTA MARKETING GROUP LLC, a Florida limited liability company, | Date:      November 1, 2012<br>Time:     1:30 p.m.<br>Place:    Courtroom 3, 17th Floor<br>Judge:   Hon. Richard Seeborg |
| Defendants. | Action Filed:     January 4, 2011 |
| | **PUBLIC REDACTED VERSION** |

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .................................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ............................................... 2

    A.    Plaintiff Has No Evidence to Support Her Allegations Against
        Stonebridge. ..................................................................................... 2

        1.    Plaintiff Cannot Prove the Content of the Alleged Text or
               When She Received It. ........................................................ 3

        2.    Plaintiff's Putative Class Is Based On Documents Her
               Counsel Received In a Separate Case Against a Different
               Defendant. .......................................................................... 4

    B.    Neither Defendant Sent or Authorized the Claimed Text Message. ..... 4

    C.    Trifecta Was Authorized to Perform Only Limited Services For
        Stonebridge That Did Not Include Text Messages. ........................... 6

    D.    Plaintiff Has Changed the Definition of the Putative Class. ............... 7

LEGAL STANDARD ............................................................................................... 8

ARGUMENT ........................................................................................................... 9

I.    PLAINTIFF HAS NOT MET ALL REQUIREMENTS OF RULE 23(a). ..................... 10

    A.    Plaintiff Is Not Typical of the Class She Seeks to Represent. ............ 10

        1.    Plaintiff Cannot Prove that Stonebridge Sent or Controlled
               the Alleged Text. ................................................................. 10

        2.    Plaintiff Is Subject to a Unique Adverse Inference. ................. 12

    B.    Plaintiff Has Not Established Adequacy. ......................................... 13

        1.    Questions About Plaintiff's Credibility Preclude Her from
               Adequately Representing the Class. ...................................... 13

        2.    Plaintiff's Close Relationship With Class Counsel Renders
               Her an Inadequate Class Representative. ................................ 14

    C.    Plaintiff Has Not Established Numerosity. ....................................... 15

II.    PLAINTIFF HAS NOT MET THE REQUIREMENTS OF
    RULE 23(B)(3). ..................................................................................... 16

    A.    Each Class Member Must Individually Prove the Content of the
        Text Message She Received .............................................................. 17

        1.    Each Class Member Must Individually Prove That She
               Received An Unsolicited Text Message for the Benefit of
               Stonebridge. ........................................................................ 18

        2.    Individual Issues Regarding Each Plaintiff's Consent Would
               Predominate in Any Trial. .................................................... 19

    B.    A Class Action Is Not a Superior Method for Adjudicating This
        Controversy. ................................................................................... 23

III.    PLAINTIFF'S CLASS DEFINITION IS DEFECTIVE. .................................... 23

1

A.    The Class Is Not Narrowly Defined to Be Limited to Individuals Injured by Conduct of Stonebridge ....................................................... 23

B.    Plaintiff Has Not Shown That Any Appropriate Class Could Be Ascertained ........................................................................................ 25

CONCLUSION ........................................................................................................ 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## TABLE OF AUTHORITIES

3

**Page(s)**

4

CASES

5

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................ 8, 16, 19

6

7

*Anderson v. Domino's Pizza, Inc.,*
    2012 U.S. Dist. LEXIS 98482 (W.D. Wash. May 16, 2012) ........................................... 24, 25

8

*Beers v. GMC,*
    1999 U.S. Dist. LEXIS 12285 (N.D.N.Y. May 17, 1999) ..................................................... 12

9

10

*Bouygues Telecom, S.A. v. Tekelec,*
    472 F. Supp. 2d 722 (E.D.N.C. 2007) ................................................................................. 18

11

12

*Broussard v. Meinecke Disc. Muffler Shops, Inc.,*
    155 F.3d 331 (4th Cir. 1998) ................................................................................................ 19

13

*Castano v. Am. Tobacco Co.,*
    84 F.3d 734 (5th Cir. 1996) .................................................................................................. 16

14

15

*CE Design Ltd. v. Cy's Crabhouse N., Inc.,*
    259 F.R.D. 135 (N.D. Ill. 2009) ........................................................................................... 15

16

17

*CE Design Ltd. v. King Architectural Metals, Inc.,*
    637 F.3d 721 (7th Cir. 2011) ................................................................................................ 14

18

*CE Design v. Beaty Const., Inc.,*
    2009 WL 192481 (N.D. Ill. Jan. 26, 2009) .......................................................................... 12

19

20

*Celano v. Marriott Int'l, Inc.,*
    242 F.R.D. 544 (N.D. Cal. 2007) ......................................................................................... 15

21

22

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) .............................................................................................. 8, 10

23

*Gen. Tel. Co. of the Sw. v. Falcon,*
    457 U.S. 147 (1982) .................................................................................................. 8, 15, 16

24

25

*Gene & Gene LLC v. BioPay LLC,*
    541 F.3d 318 (5th Cir. 2008) ................................................................................................ 16

26

27

*Glover v. BIC Corp.,*
    6 F.3d 1318 (9th Cir. 1993) .................................................................................................. 12

28

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .............................................................................. 10, 13

*Heastie v. Comty. Bank of Greater Peoria*,
   125 F.R.D. 669 (N.D. Ill. 1989) .................................................................................. 16

*Hubbard, et al. v. Wenner Media, LLC*,
   Case No. 11-CV-4648-EMC (N.D. Cal. filed Sept. 20, 2011) ...................................... *passim*

*In re Live Concert Antitrust Litig.*,
   2012 U.S. Dist. LEXIS 47768 (C.D. Cal. Mar. 23, 2012) ..................................................... 17

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ................................................................................ 16

*Kavu, Inc. v. Omnipak Corp.*,
   246 F.R.D. 642 (W.D. Wash. 2007) ........................................................... 12, 16, 22, 24

*Kemblesville HHMO Ctr., LLC v. Landhope Realty Co.*,
   2011 U.S. Dist. LEXIS 83324 (E.D. Pa. July 27, 2011) ...................................................... 23

*Kenro, Inc. v. Fax Daily, Inc.*,
   962 F. Supp. 1162 (S.D. Ind. 1997) ............................................................................ 22

*Kohen v. Pac. Inv. Mgmt. Co.*,
   571 F.3d 672 (7th Cir. 2009) ...................................................................................... 23

*Kondos v. Lincoln Prop. Co.*,
   110 S.W.3d 716 (Tex. Ct. App. 2003) .......................................................................... 22

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ....................................................................................... 12

*Levitt v. Fax.com*,
   2007 U.S. Dist. LEXIS 83143 (D. Md. May 25, 2007) .............................................. 21, 22

*London v. Wal-Mart Stores, Inc.*,
   340 F.3d 1246 (11th Cir. 2003) ................................................................................... 14

*Maddock v. KB Homes, Inc.*,
   248 F.R.D. 229 (C.D. Cal. 2007) ................................................................................. 23

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011) ................................................................................ 20, 23

*Mendoza v. Home Depot, U.S.A., Inc.*,
   2010 U.S. Dist. LEXIS 13025 (C.D. Cal. Jan. 21, 2010) .................................................. 19

*O'Connor v. Boeing N. Am., Inc.*,
   180 F.R.D. 359 (C.D. Cal. 1997) ........................................................................... 23, 25

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006)................................................................. 24

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
    2010 WL 4931001 (N.D. Ill. Nov 29, 2010)........................................ 22

*Rader v. Teva Parenteral Meds., Inc.*,
    276 F.R.D. 524 (D. Nev. 2011)............................................................ 25

*Ross v. RBS Citizens*,
    2010 U.S. Dist. LEXIS 107779 (N.D. Ill. Oct. 8, 2010)..................... 13

*Schwartz v. The Upper Deck Co.*,
    183 F.R.D. 672 (S.D. Cal. 1999)......................................................... 15

*Searcy v. eFunds Corp.*,
    2010 U.S. Dist. LEXIS 31627 (N.D. Ill. Mar. 31, 2010)..................... 13

*Serna v. Big A Drug Stores, Inc.*,
    2007 U.S. Dist. LEXIS 82023 (C.D. Cal. Oct. 9, 2007)................. 14, 15

*Silbaugh* v. *Viking Magazine Servs., Inc.*,
    278 F.R.D. 389 (N.D. Ohio 2012) .......................................... 9, 10, 24

*Siles v. ILGWU Nat'l Ret. Fund*,
    783 F.2d 923 (9th Cir. 1986)................................................................ 15

*Thomas v. Taco Bell*,
    2012 U.S. Dist. LEXIS 107097 (C.D. Cal. June 25, 2012)................ 9, 24

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
    274 F.R.D. 229 (S.D. Ill. 2011)............................................... 21, 24, 25

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .......................................................... 8, 15, 19

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001)............................................................... 8

**STATUTES**

United States Code
    47 U.S.C. § 227(b)(1)(A) .................................................................. 9, 10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure
    Fed. R. Civ. P. 23 .........................................................................*passim*

Weinstein's Federal Evidence § 702.04[6] (Matthew Bender 2d ed. 2012) ................................ 18

1

**INTRODUCTION**

2       This is a case about a single text message allegedly received by plaintiff.  However,

3  plaintiff herself does not have a copy of the text message that is the basis of her lawsuit, and she

4  has given three different versions of that message based on her purported recollection.  (Plaintiff

5  claims she provided details concerning the alleged text message to her lawyers, but her lawyers

6  have refused to produce any such message, based on a claim of privilege.)  Thus, the initial

7  problem with plaintiff's case is we don't even know what message might be at issue.

8       More fatal to this class action, however, is the complete absence of any evidence that

9  defendant Stonebridge Life Insurance Company ("Stonebridge"):

10       • Sent any text messages;

11       • Controlled the transmission of any text messages;

12       • Was mentioned in any text messages; or

13       • Authorized any person or entity to send any text messages.

14  Under the Agreement between Stonebridge and defendant Trifecta Marketing Group LLC

15  ("Trifecta"), Trifecta's services were limited to reading a script prepared by Stonebridge as the

16  sole means of identifying potential customers who might be interested in a Stonebridge product.

17  Trifecta then provided Stonebridge with contact information for consumers ███████████████

18  ████████████████████████████████████████  Plaintiff does not challenge these

19  limited services that Stonebridge authorized Trifecta to perform.

20       Plaintiff proposes a class that is not at all tied to Stonebridge's conduct, but rather is based

21  on telephone records produced to different plaintiffs in a different class action.  *Hubbard, et al. v.*

22  *Wenner Media, LLC*, Case No. 11-CV-4648-EMC.  Plaintiffs there allege that Wenner Media is

23  responsible for an unsolicited text message sent on November 30, 2010, from the phone number

24  650-283-0793 that offered a gift card "from a ubiquitous discount retail store" if the recipient

25  called the toll-free number 877-711-5429.  Virtually identical allegations appear here.  However,

26  Plaintiff did not call that number, so there is no way to ascertain whether — if she had first

27  purchased a product of another company — Trifecta would have asked if she wanted to learn

28  more about Stonebridge products (or those of Wenner Media or any number of other companies).

1       Plaintiff cannot prove that she was sent an unsolicited text message from Stonebridge, and

2    has therefore failed to show that she is a typical class representative.  She also cannot establish

3    that the Rule 23(a) requirements of adequacy and numerosity are satisfied.  Nor has she shown

4    that common issues would predominate in a trial where individual determinations will need to be

5    made regarding the content of each text message received, whether the text message was sent

6    from Stonebridge, and whether each class member consented to receive the text.  Plaintiff's

7    proposed class is not even properly defined, and any tailored class would not be ascertainable.

8    Because plaintiff has failed to satisfy several independent burdens, her motion should be denied.

9                       **PROCEDURAL AND FACTUAL BACKGROUND**

10    **A.**       **Plaintiff Has No Evidence to Support Her Allegations Against Stonebridge.**

11       Plaintiff has used the same cellular telephone number for over eight years.  (Cheung Decl.,

12    Ex. 1 (Lee Dep. at 12:24-13:7).)  Plaintiff knowingly provided this number to retail stores,

13    including online stores, and "most likely" read disclosures describing how those businesses would

14    use her personal information, including her cell phone number.  (*Id*. at 62:5-63:7; 68:4-69:14.)

15       Plaintiff claims that she received numerous unsolicited text messages that invited her to

16    call a number to redeem something.  (*Id*. at 40:3-25; 48:22-49:20.)  This lawsuit, however,

17    involves only one text.  At her deposition, plaintiff could not recall the date on which she received

18    the text that is the subject of her claim; its actual content, including the toll-free number allegedly

19    listed; or the phone number from which this text originated.  (*Id*. at 37:2-:38:1; 38:25-39:8; 46:15-

20    47:13; 77:15-18.)  In the nearly two years since filing this action, plaintiff has failed to produce

21    any documents that constitute the text message at issue, reproduce its content, or show the date on

22    which she received it.  (Cheung Decl. ¶ 2.)  Plaintiff testified that she has nothing to produce

23    because she did not retain any records regarding this text message and was not aware that she was

24    obligated to do so.  (*Id*., Ex. 1 (Lee Dep. at 75:15-76:11; 113:20-114:5).)

25       No version of the claimed text message refers to Stonebridge.  Plaintiff never received a

26    text message directly from Stonebridge.  (*Id*. at 37:21-38:1.)  She never communicated with any

27    representative of Stonebridge before this lawsuit was filed and never paid Stonebridge any

28    money.  (*Id*. at 20:6-22:13; 47:20-48:6; 70:3-10; 71:11-13.)  Although she claims that she

1   received an unsolicited text message with a toll-free phone number, she *never* called that number

2   and does not know anyone who did.  (*Id*. at 47:20-48:6.)  The pending motion does not contain

3   any evidence connecting Stonebridge to the alleged text message.

### 1.   Plaintiff Cannot Prove the Content of the Alleged Text Message or When She Received It.

6   Plaintiff filed her original complaint on January 4, 2011. (Dkt. No. 1.)  In this complaint,

7   plaintiff alleged that she received a single unsolicited text message from the number "650-283-

8   0793" on or about November **28**, 2010, which read:

THANKS 4 VISITING OUR WEBSITE
PLEASE CALL 877-711-5429 TO CLAIM YOUR $100
WALMART GIFT CARD VOUCHER!
REPLY STOP 2 UNSUB

11   (Compl. ¶¶ 17-18.)  In her Amended Complaint filed seven months later, plaintiff again quoted

12   this text message in all capital letters and again noted that she had received it on November 28.

13   (Am. Compl. ¶¶ 21-22. [Dkt. No. 34.])  At plaintiff's July 31, 2012 deposition, however, she

14   could not verify the content of the allegedly unsolicited text message or the date she had received

15   it.  (Cheung Decl., Ex. 1 (Lee Dep. at 37:2-38:1; 38:25-39:8; 46:15-47:13; 77:15-18).)

16   Then on August 9, 2012, Alois Rubenbauer, president of Trifecta, testified that Trifecta

17   never approved the transmission of the text message described in the complaints.  Rubenbauer

18   directly supervised all of Trifecta's employees and was responsible for Trifecta's day-to-day

19   operations.  (*Id*., Ex. 20 (Rubenbauer Dep. 14:15-17; 102:9-11).)  He testified that, unlike the text

20   message quoted in the complaints, all text messages approved by Trifecta provided instructions

21   on how people could ask for help (*e.g.*, "text help 4 help"), and none ever included text in all

22   capital letters.  (*Id*. at 112:3-113:1.)  Three weeks after Rubenbauer's testimony, and more than

23   19 months after the original complaint was filed, plaintiff changed her story.  On August 29,

24   2012, plaintiff stated for the first time that, to the best of her "knowledge, information, and

25   belief," the text message at issue did *not* appear in all capital letters and instead read:

Thanks 4 Visiting Our Website Please
Call 877-711-5429 To Claim Your $100
Walmart Gift Card Voucher!
Reply STOP 2 Unsub

1   (Ochoa Decl. in Support of Mot. for Class Cert., Ex. 16 at 3-4, 6 [Dkt No. 69-1].)  That same day,

2   plaintiff filed her brief in support of class certification, which offered up a *third* version of the

3   text message that includes only one capital letter.  (Class Cert. Mot. ("Mot.") at 7 [Dkt. No. 69].)

4   Plaintiff now adds, for the first time, that the message was sent to her on November **30**, 2010

5   (instead of November 28).  (*Id*.)  In light of her changing story and the complete absence of any

6   documents to support her allegations, plaintiff has no tangible evidence that she ever received any

7   message with the alleged text of which she complains.

8          **2.      Plaintiff's Putative Class Is Based on Documents Her Counsel**
              **Received in a Separate Case Against a Different Defendant.**
9

10          On September 20, 2011, plaintiff's counsel filed a complaint in this courthouse against

11  Wenner Media LLC that asserts essentially identical allegations on behalf of different plaintiffs,

12  Jasmine Hubbard and Marvel Mills.  (Cheung Decl., Ex. 4 (Complaint in *Hubbard, et al. v.*

13  *Wenner Media LLC*, Case No. CV-11-4648-EMC).)  Hubbard alleges there that on November 30,

14  2010, she received an unsolicited text message from "650-283-0793" that invited her to call (877)

15  711-5429 to receive a gift card to a "ubiquitous discount retail store."  (*Id*. ¶¶ 19-21.)  Plaintiffs

16  there claim that Wenner Media is responsible for that allegedly unsolicited text.  (*Id*. ¶¶ 30, 42.)

17          Plaintiff's counsel issued a subpoena in the *Wenner Media* action to T-Mobile, the

18  company that sold the phone assigned to "650-283-0793."  The records T-Mobile subsequently

19  produced include a list of phone numbers that were sent text messages from "650-283-0793" and

20  form the basis for the class certification motion pending in this case ("T-Mobile List").  These

21  records do not contain any information regarding the actual text of any of the text messages sent

22  to the numbers appearing on the T-Mobile List.

23      **B.      Neither Defendant Sent or Authorized the Claimed Text Message.**

24          Neither Stonebridge nor Trifecta sent any text messages.  (Cheung Decl., Ex. 20

25  (Rubenbauer Dep. at 67:4-9).)  Trifecta hired two companies to send text messages to consenting

26  consumers:  Acquinity Interactive, LLC (which is related to ModernAd Media LLC

27  ("ModernAd")) and Monetizenet, LLC ("Monetizenet").  (*Id*., Ex. 14 at Interrogatory No. 5; *id*.,

28  Ex. 15 (Trifecta's Resp.).)  There is no evidence of any connection between Stonebridge and

either ModernAd or Monetizenet.  Rather, these third parties entered into agreements with

*Trifecta* to send text messages only to consumers who had first consented to receive such text

messages.  (*Id.*, Ex. 20 (Rubenbauer Dep. at 51:4-16; 106:21-107:5); *see also id.*, Ex. 17 (Modist

Dep. at 40:2-6; 74:14-75:5 (all consumers to whom ModernAd sent text messages first consented

to receive them)); *id.* ¶ 19 (Monetizenet produced documents identifying the specific date and

time and specific website each recipient visited to opt-in to receiving texts).)  Marketing text

messages may be sent as a group to consumers who opt-in to receiving them.  (*Id.*, Ex. 11 (Snyder

Dep. at 93:11-94:24).)  There is no evidence that either of the companies hired by Trifecta ever

sent unsolicited text messages, and no evidence that Trifecta employed any other person or entity

to send text messages on its behalf.  Again, Stonebridge had no involvement with the

relationships between those third parties and Trifecta.

The third parties that Trifecta contracted with to send text messages used "short codes" —

five-digit numbers from which text messages originate.  (*Id.*, Ex. 18 (Rustin Dep. at 45:3-12;

138:3-7); *id.*, Ex. 20 (Rubenbauer Dep. at 94:1-14).)  In contrast, plaintiff alleges that the text

message she received originated from a "long code" — a ten-digit number that can also be used to

send text messages.  (*Id.*, Ex. 18 (Rustin Dep. at 44:20-45:12).)

The records produced by T-Mobile reflect that the number "650-283-0793" was assigned

to "Vincent Montalbano" in November 2010.  (Cheung Decl. ¶ 12.)  Rubenbauer did not

recognize that name.  (*Id.*, Ex. 20 (Rubenbauer Dep. at 81:18-20).)  Plaintiff presents no evidence

of any connection between anyone named Montalbano and Stonebridge.  Plaintiff's unsupported

hope is that further discovery will provide some shred of evidence that Vincent Montalbano

purchased the number 650-283-0793 "at the direction of Defendant Trifecta."  (Mot. at 12 n.12.)[1]

---

[1] Plaintiff's theory hangs on the thread that someone named *Joseph* Montalbano — not *Vincent* Montalbano — is listed in the Florida Department of State's records as a "manager/member" of Impulse Marketing LLC ("Impulse").  Rubenbauer testified that Trifecta was not related to Impulse except that Impulse leased space in the same call center *before* Trifecta operated out of that call center, and Trifecta took over some phone lines from Impulse.  (Cheung Decl., Ex. 20 (Rubenbauer Dep. at 86:6-88:4).)  A public records search for the surname "Montalbano" yields more than 7,000 results in the United States, including 555 in Florida alone. A search for "Joseph Montalbano" yields more than 225 results, and a search for "Vincent Montalbano" yields more than 55 results in the United States.  (*Id.*, ¶ 12.)

1

**C.    Trifecta Was Authorized to Perform Only Limited Services For Stonebridge That Did Not Include Text Messages.**

2

3    Stonebridge did not authorize anyone, including Trifecta or any of its subcontractors, to

4    send text messages on Stonebridge's behalf.  For approximately six weeks in late 2010, Trifecta

5    assisted Stonebridge with identifying consumers who were interested in insurance offers from

6    Stonebridge — in other words, identifying potential "leads."  (Cheung Decl. Ex. 20 (Rubenbauer

7    Dep. at 30:2-7; 101:9-12); *id.* Ex. 12 (leads list shows call-back dates from 10/18/2010 to

8    12/2/2010).)  Trifecta also performed marketing services for numerous other clients.  (*Id.*, Ex. 20

9    (Rubenbauer Dep. at 51:11-19; 107:9-12); *see, e.g.*, *id.*, Ex. 6.)[2]

10    The August 2010 Call Back Agreement ("Agreement") between Stonebridge and Trifecta

11    defined the services that Trifecta performed for Stonebridge.  (*Id.*, Ex. 19 ¶ 2.1.) ████████

12    ████████████████████████████████████████████████████████████████████████

13    ████████████████████████████████████████████████████████████████████████

14    ██████████████████████████████████████████  (*Id.* ¶¶ 1.3, 1.4, 1.6, 2.1, 2.3, 3.1-

15    3.6, 3.15.)[3] █████████████████████████████████████████████████████

16    █████████████  (*Id.*, ¶ 1.3.)  Trifecta did *not* offer the Stonebridge call-back to every

17    consumer who called Trifecta's calling center.  (*Id.* Ex. 20 (Rubenbauer Dep. at 115:6-116:9).)

18    The Agreement contains ***no*** provisions that grant Stonebridge any right to control how Trifecta

19    generated in-bound calls.  The Agreement does not discuss or otherwise disclose that Trifecta

20    might send, or contract with another company to send, any text messages.  For the limited

21

22

23    [2] Filings in *Wenner Media* reveal that in one call alone, plaintiff Hubbard was offered membership at discount clubs called Value Plus and FunSource, a product protection service called Expert Warranty, and a subscription to *US Weekly*.  (Cheung Decl., Ex. 5 (Hubbard Dkt. No. 42).)

24

25    [3] The insurance industry is highly regulated.  Detailed state regulations determine the content of advertising for an insurance product.  Anything designed to develop an interest in a company's insurance products is likely to be considered advertising subject to these regulations.

26    Thus, an insurance company must take care to follow regulations in order to maintain its good standing and avoid penalties in any particular state.  Mandating that a script be read is one method

27    to ensure compliance.  The Agreement contains several provisions that refer to the script as the sole method of presenting Stonebridge products, and it required that Trifecta follow all laws, rules, and regulations.  (*See* Cheung Decl., Ex. 19.)

28

services performed by Trifecta during the period of November 16 through December 2, 2010, Stonebridge paid Trifecta a total of ██████. (Ochoa Decl., Exs. 10 and 11.)

Rubenbauer confirmed that Stonebridge had no control or right to control Trifecta's day-to-day operations, the services that Trifecta provided to its clients, or Trifecta's management of its employees. (Cheung Decl., Ex. 20 (Rubenbauer Dep. at 102:12-23).) Stonebridge did not control and *had no right to control* the content, manner, or distribution of any text messages sent for Trifecta; no input into the creation or development of any such text messages; never supervised or directed the manner by which such text messages might be sent; and no control over whether or to whom text messages might be sent. (*Id.* at 104:22-105:17; 107:20-108:15; *see also* Cheung Decl., Ex. 19 ¶¶ 1.3, 3.15.) To the extent that Stonebridge could have negotiated any right to direct how in-bound calls were generated, Stonebridge had no such right if that right did not appear in the Agreement. (*Id.*, Ex. 20 (Rubenbauer Dep. at 103:25-104:7).)

Indeed, the Agreement expressly stated that the relationship between Stonebridge and Trifecta "is that of independent contractors." (*Id.*, Ex. 19 ¶ 22.) ████████████████ ████████████████████████████████████████████████ ████████████████ (*Id.*) In three separate paragraphs, Trifecta agreed that it would comply with all laws. (*Id.* ¶¶ 3.10, 3.16, 26.)

**D.     Plaintiff Has Changed the Definition of the Putative Class.**

Plaintiff's complaints alleged a putative class of "[a]ll persons in the United States and its territories who received one or more *unauthorized* text message advertisements *on behalf of Stonebridge*." (Compl. ¶ 26; Am. Compl. ¶ 28.) (emphasis added). Plaintiff, however, recognized certain problems: plaintiff cannot establish that *any* text message was sent *on behalf of Stonebridge*, much less that *any* such text message was "*unauthorized*." Plaintiff thus attempts to gloss over these flaws by offering up a putative class that has no ties to Stonebridge — namely, "[a]ll individuals that received a text message from telephone number '650-283-0793' from

1   November 28, 2010 through December 2, 2010."[4]  (Mot. at 2.)  Plaintiff seeks from Stonebridge

2   actual damages and penalties of up to $1500 for each text message.  (Am. Compl. at 7-8.)

3                                  **LEGAL STANDARD**

4           Plaintiff's brief suggests faith in a rogue legal standard for class certification in which

5   evidence connecting the putative class to the defendant does not matter, and where a plaintiff

6   need not tie the subject matter of the complaint — here text messaging — to that defendant.  Rule

7   23 cannot be satisfied merely by proof that Stonebridge had a business relationship with Trifecta,

8   much less by suggesting that Trifecta leased office space and telephone lines previously used by

9   another company that employed a manager who shared the same last name as someone who

10  purchased a cell phone from which a text message of unknown content was sent to the plaintiff.

11          Plaintiff bears the burden to satisfy Rule 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S.

12  591, 614 (1997); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

13  Rule 23 "does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

14  2541, 2551-52 (2011).  A court may not simply accept counsel's assurances that Rule 23 is

15  satisfied, but must conduct a "rigorous analysis" to ensure that plaintiff has met her burden on

16  each element.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Zinser*, 253 F.3d at

17  1186.  This "'rigorous analysis' will entail some overlap with the merits of plaintiff's underlying

18  claim.'"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Wal-Mart*,

19  131 S. Ct. at 2551).  The "[e]valuation of many of the questions entering into determination of

20  class action questions is intimately involved with the merits of the claims. The typicality of the

21  representative's claims or defenses, the adequacy of the representative, and the presence of

22  common questions of law or fact are obvious examples."  *Id.*  Resolving class action issues

23  "'generally involves considerations that are enmeshed in the factual and legal issues comprising

24  the plaintiff's cause of action.'"  *Dukes*, 131 S. Ct. at 2551-52 (internal citations omitted).

25

26  _____

27         [4] This definition overlaps with the putative class that the same lawyers seek to represent in
    *Wenner Media*.  (Cheung Decl., Ex. 4 ¶ 30.)

28

1       Plaintiff asserts a claim under section 227(b)(1)(A) of the TCPA on behalf of herself and

2   an unidentified group of individuals who were sent 59,568 text messages.  (Mot. at 2-3.)  A

3   defendant is liable under this section only if (1) the defendant (2) made a "call" (other than a call

4   made with the prior express consent of the called party) (3) "using any automatic telephone

5   dialing system" to a cellular telephone number.  47 U.S.C. § 227(b)(1)(A); *see Thomas v. Taco*

6   *Bell*, 2012 U.S. Dist. LEXIS 107097, at *10 (C.D. Cal. June 25, 2012).

7                             **ARGUMENT**

8       Plaintiff has wholly failed to meet her burdens under Rule 23.  Plaintiff has failed to

9   satisfy the typicality, adequacy, and numerosity requirements of Rule 23(a).  Nor, as required by

10  Rule 23(b)(3), has plaintiff shown that common issues predominate over individual issues.

11  Finally, the proposed class definition is untethered to Stonebridge and is overbroad and improper.

12  Nor has plaintiff shown that an appropriate class definition would make the class ascertainable.

13      The deficiencies in plaintiff's motion are highlighted by comparison with the case on

14  which she relies heavily, *Silbaugh* v. *Viking Magazine Servs., Inc.*, 278 F.R.D. 389 (N.D. Ohio

15  2012).  *First*, in *Silbaugh*, there was no dispute that the defendant, a company that sells magazine

16  subscriptions over the telephone, hired a company to send text messages to advertise Viking's

17  products and to invite consumers to call Viking's own calling centers.  278 F.R.D. at 391 ("the

18  text message was sent by defendant . . . Defendant does not specifically dispute plaintiff's

19  presentation of these facts.").  Here, plaintiff presents no evidence connecting Stonebridge to any

20  text message.  The evidence shows that *neither Stonebridge nor Trifecta sent or authorized the*

21  *alleged text message*.  *Second*, in *Silbaugh*, the class definition was limited to those individuals

22  who received a text message "*from defendant*."  *Id.* (emphasis added).  Here, the class definition

23  does not mention or have any connection to Stonebridge at all.  *Third*, in *Silbaugh*, the defendant

24  obtained the phone numbers from a single source.  *Id.* at 394.  Here, even if the alleged text

25  message could be tied to Trifecta, Trifecta hired two different companies to send text messages,

26  and each first received consent from consumers who agreed on numerous different websites to

27

28

1   receive text messages — not from a single source. [5]  Plaintiff's own expert testified that the

2   changing pattern of phone numbers on the T-Mobile List, from an ascending order to a non-

3   ascending order, suggests that different lists were combined before text messages were sent to the

4   numbers on that list.  (Cheung Decl., Ex. 11 (Snyder Dep. at 153:7-154:16).)  *Fourth*, the

5   defendant in *Silbaugh* "engage[d] in a single course of conduct with respect to all class

6   members." 278 F.R.D. at 394.  In stark contrast, here, even if each text contained Trifecta's toll-

7   free number, Trifecta's conduct varied as to each text recipient who contacted its calling center.

8   Trifecta retained sole discretion to offer different companies' products to those who called; it may

9   have offered the Stonebridge call-back along with several others' products, or not offered that

10   call-back at all.  (Cheung Decl., Ex. 19 ¶ 1.3; *id.*, Ex. 20 (Rubenbauer Dep. at 115:6-9; 115:14-

11   116:9).)  *Silbaugh* does not support plaintiff here, where she cannot tie her proposed class to

12   Stonebridge, or show that every text was compiled from one website and sent for Stonebridge.

13   **I.      PLAINTIFF HAS NOT MET ALL REQUIREMENTS OF RULE 23(A).**

14           **A.      Plaintiff Is Not Typical of the Class She Seeks to Represent.**

15           Representative plaintiffs' claims must be "typical of the claims or defenses of the class."

16   Fed. R. Civ. P. 23(a)(3).  Unique defenses applicable to the named plaintiff undermine her ability

17   to represent the class.  *Ellis*, 657 F.3d at 974; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

18   (9th Cir. 1992) (plaintiff not typical when he would "meet defenses that are not typical of the

19   defenses which may be raised against other members of the proposed class").  The numerous

20   defects in plaintiff's individual claim render her an atypical representative.

21                   **1.      Plaintiff Cannot Prove that Stonebridge Sent or Controlled the
                              Alleged Text Message.**

22

23           Plaintiff cannot prove that Stonebridge "made" the challenged call.  *See* 47 U.S.C.

24   § 227(b)(1)(A).  There is absolutely ***no*** evidence that Stonebridge sent or controlled any text

25   message sent from "650-283-0793" to plaintiff.  The text at issue does not mention Stonebridge;

26

27           [5] In contrast, in *Silbaugh*, the transmitter of the text messages had not provided evidence of
     opt-ins.  *Silbaugh*, 278 F.R.D. at 393.

28

1   the number from which the text originated did not belong to Stonebridge; the toll-free number

2   allegedly appearing in the text did not belong to Stonebridge; and plaintiff never called this toll-

3   free number, so she does not know whom she would have reached or what product(s) she might

4   have been offered.  (Cheung Decl. Ex. 1 (Lee Dep. at 37:2-16; 37:21-38:1; 47:20-48:3).)

5           Plaintiff therefore stretches to first claim that Trifecta authorized the alleged text message,

6   and then that Stonebridge is vicariously liable because of its contractual relationship with Trifecta

7   regarding unrelated services.  Notwithstanding the legal authority that precludes this theory (*see*

8   *infra* section III.A), plaintiff cannot even prove that the alleged text from "650-283-0793" was

9   sent or controlled by *Trifecta*.  Rubenbauer flatly denied authorizing the alleged text.  (Cheung

10  Decl., Ex. 20 (Rubenbauer Dep. at 81:2-4; 81:18-20; 94:1-14; 112:3-113:1).)  Nor is there any

11  evidence that "Vincent Montalbano" is connected to Trifecta, ModernAd, or Monetizenet.

12          To attempt to connect Trifecta to the alleged text message, plaintiff ignores Rubenbauer's

13  testimony and relies solely on her unsubstantiated allegation that the text message she received

14  from "650-283-0793" contained a toll-free number assigned to Trifecta.  However, plaintiff

15  cannot prove that this toll-free number actually appeared in the text message she received from

16  "650-283-0793" and has offered up three different versions of this alleged text message.

17          Moreover, plaintiff has not provided evidence that she received a text with Trifecta's toll-

18  free number on November 30, 2010.  (Mot. at 7.)  Plaintiff initially alleged that she had received

19  the text at issue on November 28, 2010.  (Compl. ¶ 17; Am. Compl. ¶ 21.)  The T-Mobile List

20  was then produced and showed no text messages sent from "650-283-0793" on November 28.

21  (Snyder Decl. ¶ 17.)  Indeed, plaintiff's own telephone bills reflect that plaintiff received text

22  messages from unique phone numbers on both November 28 and 30 and that she later each day

23  sent texts to her attorney.  (Cheung Decl. ¶ 16 & Ex. 13.)  Plaintiff has not demonstrated that she

24  received the alleged message containing Trifecta's phone number on November 30 (or on any

25  other date).  And even if plaintiff could prove that she received a text containing a number owned

26  by Trifecta from "650-283-0793" on November 30, she cannot show that any such text was sent

27  or controlled by Stonebridge, for the reasons discussed above.

28

## 2.      Plaintiff Is Subject to a Unique Adverse Inference.

Plaintiff is subject to a unique defense based on her spoliation of essential evidence. Plaintiff admits that she failed to preserve the text message she allegedly received and the cell phone that allegedly received this text message.  Plaintiff is thus subject to an adverse inference that the alleged text did not say what she alleges and did not include the toll-free number she claims.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 963 (9th Cir. 2006) (dismissal proper where plaintiff destroyed crucial evidence); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (no evidence of bad faith is necessary to permit an adverse instruction on spoliation); *Beers v. GMC*, 1999 U.S. Dist. LEXIS 12285, at *13-15 (N.D.N.Y. May 17, 1999) (dismissal proper where plaintiff had negligently lost a key piece of evidence that defendant never had an opportunity to examine).  In her initial disclosures, plaintiff stated that she intended to rely on the cell phone that received the text at issue and that she "has taken steps to preserve any digitally stored information on this telephone."  (Cheung Decl., Ex. 2 at 2 (Plaintiff's Initial Disclosures).)  At deposition, however, plaintiff testified that she no longer has this cell phone, did not retain a copy of the alleged text message, and did not "save any records at all regarding that text message."  (*Id.*, Ex. 1 (Lee Dep. at 25:15-31; 75:15-76:5; 79:20-22).)  Plaintiff is thus subject to an adverse instruction. [6]

Plaintiff argues that her claim satisfies typicality if it is "based on the same legal theory" as the class of potential plaintiffs.  As shown above, a similar legal theory is insufficient where plaintiff's individual claim is subject to unique challenges.  In any event, the cases cited by plaintiff, *CE Design v. Beaty Const., Inc.*, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009) and *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007), are inapposite.  (Mot. at 17.) In those cases, the named plaintiffs demonstrated that each class member received the same fax containing content directly advertising the defendant, and no unique defenses had been raised against the named representatives.  Here, because plaintiff herself cannot prove a TCPA claim

---

[6] Although plaintiff later claimed that she dropped the phone in water and "now remembers" that she sent the phone to AT&T, she was obligated to maintain possession of the phone, rather than intentionally giving it away.  (*See infra* section I.B.1.)

1    against Stonebridge, particularly in light of the adverse instruction that should apply, plaintiff is

2    not a typical class representative.  *Hanon*, 976 F.2d at 508.

3        **B.      Plaintiff Has Not Established Adequacy.**

4            **1.      Questions About Plaintiff's Credibility Preclude Her from Adequately
                        Representing the Class.**

5

6    Rule 23(a)(4) requires that the plaintiff will "fairly and adequately protect the interests of

     the class."  Fed. R. Civ. P. 23(a)(4).  Credibility issues tied to a representative's claims are

7    relevant to whether she can adequately represent the class.  *See Searcy v. eFunds Corp.*, 2010

8    U.S. Dist. LEXIS 31627, at *17-18 (N.D. Ill. Mar. 31, 2010) (striking a named plaintiff due to

9    lack of "honesty and credibility" because "'an untrustworthy plaintiff could reduce the likelihood

10   of prevailing on the class claims'").  "A class is not fairly and adequately represented if class

11   members have antagonistic or conflicting claims, and a plaintiff with credibility problems may be

12   considered to have interests antagonistic to the class." *Ross v. RBS Citizens*, 2010 U.S. Dist.

13   LEXIS 107779, at *13 (N.D. Ill. Oct. 8, 2010) (internal quotation marks and citations omitted).

14
         The credibility questions here are tied directly to plaintiff's claim that she received an
15
     unsolicited text message.  She has so far offered three different versions of the text message at
16
     issue and claims to have received it on different dates.  Questions surrounding plaintiff's
17
     credibility regarding the critical facts of what the alleged text said and when she received it
18
     undermine her adequacy to serve as a class representative.
19
         Plaintiff also lacks credibility because of the spoliation issue discussed above.  After
20
     Stonebridge requested plaintiff to produce the cell phone that received the alleged text, plaintiff
21
     claimed that she failed to preserve relevant evidence because she submerged her phone in water
22
     and "now remembers" that she sent it to AT&T. (Cheung Decl., Ex. 3 (Letter from Ochoa to
23
     Cheung, 9/11/2012).)  However, the water-damaged phone was not the phone that received the
24
     text at issue.  At her July 30, 2012 deposition, plaintiff testified that her current phone was only a
25
     week old because she had just dropped her previous phone in water.  (*Id.*, Ex. 1 (Lee Dep. at
26
     23:16-24:6).)  She had purchased the dropped phone "less than a year ago," no earlier than the
27
     middle of 2011, well *after* she received the alleged text message.  (*Id.* at 24:13-15.)  Plaintiff's
28

1    attempt to revise her previous statements made under oath undermines her credibility regarding

2    her failure to preserve a key piece of evidence and casts doubt on her adequacy to serve as a class

3    representative.  *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 727-28 (7th

4    Cir. 2011) (holding that a plaintiff's lack of credibility could make him inadequate).

5                          **2.     Plaintiff's Close Relationship with Class Counsel Renders Her an
6                                   Inadequate Class Representative.**

7            Plaintiff's close relationship with class counsel is a conflict of interest that creates a strong

8    presumption that she will not adequately represent the interests of absent class members.  *Serna v.*

9    *Big A Drug Stores, Inc.*, 2007 U.S. Dist. LEXIS 82023, at *8-9 (C.D. Cal. Oct. 9, 2007).  "Class

10   counsel must be monitored by an independent and informed client in order to protect the interests

11   of the absent class members."  *Id.* (citing *In re Cal. Micro Devices Sec. Lit.*, 168 F.R.D. 257, 262

12   (N.D. Cal. 1996)).  Absent meaningful oversight, class members' interests are not sufficiently

13   protected such that the court can certify a class and bind absent class members. *Id.* (citing *Staton*

14   *v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003)).  In particular, "courts fear that a class

15   representative who is closely associated with the class attorney [will] allow settlement on terms

16   less favorable to the interests of absent class members."  *London v. Wal-Mart Stores, Inc.*, 340

17   F.3d 1246, 1251 (11th Cir. 2003) (reversing class certification because class representative's

18   close relationship with counsel made him inadequate).

19          Plaintiff has been friends with Chandler Givens, an associate at Edelson McGuire, since

20   they were in second grade. [7]  (Cheung Decl., Ex. 1 (Lee Dep. at 44:3-8).)  At her deposition,

21   plaintiff testified that before she received the text at issue, she communicated with Givens by

22   phone "[e]very couple of weeks maybe" and exchanged text communications "every couple of

23   months maybe."  (*Id*. at 121:5-18.)  In fact, her telephone records show that she made or received

24   a phone call or text to or from Givens's cell phone an astounding **9,794 times** from January 1,

25   2008, through November 30, 2010.  (Cheung Decl. ¶ 15; *see also id*., Ex. 13.)  Plaintiff's

26   _____

27          [7] This close relationship also raises doubts about class counsel's ability to adequately
     represent the class, particularly given that plaintiff has no tangible evidence regarding the text at
28   issue and her counsel, Chandler Givens, is a fact witness regarding the content of this text.

1    relationship with Givens (and her inaccurate testimony regarding the extent of their

2    communications) undermines her ability to provide meaningful oversight as the class

3    representative, particularly given the temptation to agree to a resolution of this action that benefits

4    her friend and his law firm at the expense of the class.  *See Serna*, 2007 U.S. Dist. LEXIS 82023,

5    at *5-9 (finding conflict of interest with other class members due to plaintiff's employment

6    relationship with class counsel and where attorneys' fees far exceeded the award that

7    representative could receive).[8]

8         Plaintiff's inability to show that she can serve as an adequate and typical class

9    representative alone justifies the denial of her motion for class certification.

10        **C.    Plaintiff Has Not Established Numerosity.**

11        Plaintiff cannot establish numerosity.  Rule 23(a) requires her to demonstrate that "the

12   class is so numerous that joinder of all members is inequitable and impracticable.  *Celano v.*

13   *Marriott Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).  "Courts may not rely on conclusory

14   allegations as to the size of a class or the impracticability of joinder, and may require that a

15   plaintiff prove class size through affidavits or other evidence."  *CE Design Ltd. v. Cy's*

16   *Crabhouse N., Inc.*, 259 F.R.D. 135, 140 (N.D. Ill. 2009) (internal citation omitted).[9]

17        Plaintiff argues that "the 'relevant' text messages were transmitted to 59,568 potential

18   class members." (Mot. at 9.)  This argument, however, relies on the false assumptions that a class

19

20   _____

21        [8] Plaintiff has not embraced her responsibilities as a class representative.  Although
     Magistrate Judge Spero's standing orders required plaintiff to attend the scheduled settlement
22   conference in person and she had four months' notice of this conference, she requested to be
     excused from personal attendance 12 days before the conference for reasons she should have known
23   about many months earlier, and only appeared in person after Magistrate Judge Spero denied her
     request to appear telephonically.  (Dkt. No. 56.)

24        [9] Numerosity cannot be presumed.  *Falcon*, 457 U.S. at 160.  Plaintiff "must be prepared to
     prove that there are *in fact* sufficiently numerous parties . . . ."  *Dukes*, 131 S. Ct. at 2551.  Evidence
25   that 59,568 text messages were sent from the same phone number is not proof that a sufficiently
     tailored class is numerous.  *Siles v. ILGWU Nat'l Ret. Fund*, 783 F.2d 923, 930 (9th Cir. 1986) (in
26   action for denial of pension benefits, numerosity not shown through evidence of total employees
     covered by plan, but of number denied benefits); *Schwartz v. The Upper Deck Co.*, 183 F.R.D. 672,
27   680-83 (S.D. Cal. 1999) (in action on behalf of persons who purchased product for a particular
     purpose, numerosity not shown through evidence of total purchasers, without regard to purpose).

28

1    has been properly defined and that plaintiff is a member of any properly defined class.[10]  As

2    discussed above, plaintiff herself has no claim against Stonebridge.  Moreover, no one in the

3    putative class has a claim against Stonebridge if, among other things, that person (1) did not

4    receive a text message from "650-283-0793" that contained the number "877-711-5429"; (2) did

5    not call 877-711-5429; (3) was not offered the Stonebridge call-back after initially purchasing a

6    product; or (4) consented to receiving the text message from "650-283-0793."  Nor has plaintiff

7    shown that the members of any properly defined class are sufficiently numerous.[11]  Here, any

8    properly tailored class is not so numerous that joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).

9    **II.    PLAINTIFF HAS NOT MET THE REQUIREMENTS OF RULE 23(B)(3).**

10          Rule 23 permits class treatment of a claim only when its substantive legal elements as to

11   individual class members can be established through common proof.  *Amchem*, 521 U.S. at 620.

12   Rule 23(b)(3)'s predominance requirement is "far more demanding" than the commonality

13   requirement of Rule 23(a).  *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326, 328 (5th Cir.

14   2008).  The Court must independently assess the elements of plaintiff's claims and defenses and

15   inquire into how these elements might be established.  *Amchem*, 521 U.S. at 623 n.18; *Falcon*,

16   457 U.S. at 161-62; *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744-45 (5th Cir. 1996) ("[A] court

17   must understand the claims, defenses, relevant facts, and applicable substantive law in order to

18   _____

19   [10] Plaintiff's cited cases are inapposite because, among other things, defendants in those
     cases did not dispute that the proposed class was properly defined.  *See Kavu*, 246 F.R.D. at 645

20   (defendant did not dispute that it sent faxes on its *own behalf* to advertise its *own* products to
     numbers from a public directory and where the class definition was tied to defendant); *In re Rubber

21   Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005) (defendant had pled guilty to
     conspiring to eliminate competition and conceded that Rule 23(a) had been satisfied); *Heastie v.

22   Comty. Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D. Ill. 1989) (defendant did not dispute
     that the class would number in the thousands).

23   [11] Although plaintiff's counsel declared that it had identified 26 matching telephone
     numbers between the T-Mobile List and the phone numbers contained on the list of sales or

24   sweepstakes leads Trifecta provided for Stonebridge, plaintiff conducted this comparison based on
     partial phone numbers.  A comparison with the complete phone numbers reveals that ***only two

25   phone numbers*** (which do *not* include plaintiff's) received a call-back on a date after those
     numbers received a text message from "650-283-0793."  26 doesn't cut it.  (Cheung Decl. ¶ 14.)

26   Thus, more than 99% of the over 1000 leads called Trifecta in response to some other marketing
     campaign — *not* in response to the challenged text message.  Even if there were actually 26

27   matching numbers, the recipients of those texts are not members of any properly tailored class if
     they did not call Trifecta in response to a text message or consented to receiving that message.

28

1   make a meaningful determination of the [class] certification issues. . . . Absent knowledge of how

2   [the individual] cases **would actually be tried** . . . it [is] impossible for the court to know whether

3   the common issues would be a 'significant' portion of the individual trials") (emphasis added).

4       The necessary individualized inquiries regarding the content of each text message, from

5   whom it was sent, whether each person consented, and if any did not, whether each suffered any

6   actual damage and if so, in what amount, would overwhelm any common issues at trial.

**A.    Each Class Member Must Individually Prove the Content of the Text Message She Received.**

7

8       Under plaintiff's theory of liability, each class member must first prove that she received a

9   text message containing the number "877-711-5429."  As discussed above, plaintiff herself

10  cannot even show this as she has no evidence proving the content of the alleged text she received.

11      As to the remaining class members, plaintiff relies solely upon the declaration of Randall

12  Snyder to assert that every text message sent from "650-283-0793" during the period of

13  November 28, 2010, through December 2, 2010, contained the identical text message.  Snyder's

14  opinion should not be given any weight.  As an initial matter, Snyder likewise received no

15  evidence and has no opinion regarding the content of the text message at issue and relied solely

16  upon the Amended Complaint in assuming that the alleged text contained the number "877-711-

17  5429."  (Cheung Decl., Ex. 11 (Snyder Dep. at 138:5-24).)  Snyder also admitted that there is no

18  limit to the number of different text messages that could be programmed to be sent to a group of

19  59,568 phone numbers in a short period of time.  (Cheung Decl., Ex. 11 (Snyder Dep. at 109:3-

20  19; 192:20-193:1).)

21      Snyder is not qualified to render an expert opinion about the facts in this case.  He

22  admitted that he has never been involved with any text message marketing campaign in which the

23  texts originated from a long code, as here.  (*Id*. at 145:8-14; 147:3-11.)  To learn how the process

24  works with long codes, Snyder relied on two websites.  (*Id*. at 65:25-66:7; 67:25-68:20.)

25  Snyder's experience does not qualify him to render "expert" opinions regarding marketing

26  messages originating from long codes, and his recent Internet research fails to cure that

27  deficiency.  *See In re Live Concert Antitrust Litig*., 2012 U.S. Dist. LEXIS 47768, at *78-80

28

(C.D. Cal. Mar. 23, 2012) (excluding expert testimony because expert lacked expertise in analyzing relevant product market); *Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722, 729 (E.D.N.C. 2007) (excluding expert testimony when subject was in overlapping, but distinct, telecommunications area); Weinstein's Federal Evidence § 702.04[6] (Matthew Bender 2d ed. 2012) ("[E]ven though a proposed witness might possess credentials to render some expert opinions, the trial court may, and perhaps must, exclude on grounds of disqualification any testimony that extends beyond the witness's demonstrated expertise.").

Beyond his inexperience with the relevant process, Snyder's declaration relies on a demonstrably inaccurate analysis of the T-Mobile List.  Contrary to Snyder's declaration, at deposition, he acknowledged that over a third of the numbers on the T-Mobile List are *not* in ascending order and are in no discernible order at all.  (*Id*. at 151:5-152:13.)  These and other flaws are detailed in the accompanying Evidentiary Objections to the Snyder Declaration.

Proof regarding the content of the text message sent to every putative class member will require individual analysis class member-by-class member.  No class member can even begin to establish a TCPA claim under plaintiff's theory unless he or she can first prove that she received a text message that had some connection to Trifecta.

### 1. Each Class Member Must Individually Prove That She Received an Unsolicited Text Message for the Benefit of Stonebridge.

Plaintiff argues that she can show that Stonebridge is liable for the text messages at issue because they were sent "for the benefit of Stonebridge."  (Mot. at 2-3.)  Even if plaintiff's liability theory had any merit (and it does not), each class member would need to prove that she called the number appearing on that text message and was offered the Stonebridge call-back.

Plaintiff suggests that all 59,568 text messages were sent for Stonebridge's benefit because "Trifecta was contractually obligated to create leads for Stonebridge" on calls to the number "877-711-5429."  (Mot. at 12.)  Not so.  No evidence connects Stonebridge to that toll-free number.  Further, plaintiff ignores the undisputed evidence that Trifecta offered numerous products on behalf of various clients other than Stonebridge and did *not* offer the Stonebridge call-back to every caller.  (Cheung Decl., Ex. 20 (Rubenbauer Dep. at 107:9-12; 114:25-115:9).)

1   Even plaintiff's expert concedes that an identical text message can be sent on behalf of multiple

2   clients.  (*Id.*, Ex. 11 (Snyder Dep. at 203:17-24).)  Under the Agreement,

3

4                                                                        (*Id.*, Ex. 19, ¶ 1.3.)

5          Moreover, because the call-back program ended on December 2, 2012, no calls to Trifecta

6   after that date could have possibly benefited Stonebridge.  (Cheung Decl., Ex. 12) (list of leads

7   show "12/2/2010" as the latest call-back date).)  If a class member received a text message for the

8   benefit of one of Trifecta's many other clients, she has no claim against Stonebridge.

9          *Wenner Media* underscores this point.  The plaintiffs there fall within the definition of the

10  class proposed here but are alleged to have received a text message on behalf of *another company*

11  — not Stonebridge.  Individual examinations of each putative class member would be necessary

12  to identify which, if any, received a text message "for the benefit of Stonebridge."

**2.      Individual Issues Regarding Each Plaintiff's Consent Would Predominate in Any Trial.**

15         In assessing predominance, the Court must assess not just the plaintiff's claims, but

16  defenses thereto.  *Amchem*, 521 U.S. at 623 n.18.  "When the defendant's 'affirmative

17  defenses . . . may depend on facts peculiar to each plaintiff's case,' class certification is

18  erroneous."  *Broussard v. Meinecke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998)

19  (quoting *In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir.

20  1982)).  A "class cannot be certified on the premise that [defendant] will not be entitled to litigate

21  its statutory defenses to individual claims."  *Dukes*, 131 S. Ct. at 2546; *see also Mendoza v. Home*

22  *Depot, U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 13025, at *24-28 (C.D. Cal. Jan. 21, 2010) (finding

23  no predominance because the court would have to evaluate defendant's affirmative defenses as to

24  some class members but not others).  Plaintiff has failed to show that Stonebridge's affirmative

25  defenses can be resolved on a class-wide basis.

26         Plaintiff attempts improperly to shift her burden to Stonebridge to show that individuals

27  within the class have consented.  Plaintiff misstates the law.  Although consent is an affirmative

28  defense, "[t]he party seeking class certification [,] bears the burden of demonstrating that the

1   requirements of Rules 23(a) and (b) are met." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942,

2   947 (9th Cir. 2011).  In *Marlo*, the Ninth Circuit affirmed an order decertifying the putative class

3   because plaintiff failed to demonstrate that class members whose claims would not be precluded

4   by an affirmative defense "was the rule rather than the exception."  *Id.* at 947-48.  Applying

5   *Marlo* here, plaintiff must show that absence of consent is "the rule rather than the exception."

6   Plaintiff cannot avoid her burden merely by asserting that consent is a common issue (Mot. at 15);

7   rather she must first show that consent can be commonly resolved on a class-wide basis.  Until

8   each class member first establishes that she received an unsolicited text message that Stonebridge

9   sent or controlled, Stonebridge cannot and has no obligation to present evidence in support of its

10  affirmative defenses.

11          In any event, the only evidence in this case is precisely the opposite of what plaintiff

12  claims because here, consent is the rule rather than the exception.  Plaintiff's own description of

13  the alleged text message shows that anyone who received that text had first visited a website and

14  expressly consented to receive it.  The opening phrase of all three versions of the alleged text

15  thanks the recipient for visiting a website.  (*See supra* at p. 3.)  The two entities hired by Trifecta

16  to send text messages sent messages only to consumers who had first opted in through various

17  websites.  (*Id.*, Ex. 17 (Modist Dep. at 21:2-12; 74:23-75:5; 78:13-16); *id.*, Ex. 18 (Rustin Dep. at

18  134:5-135:7); *id.*, ¶ 19; *id.*, Ex. 20 (Rubenbauer Dep. at 106:21-107:5).)  In the contract between

19  Trifecta and ModernAd, ████████████████████████████████████

    ████████████    (*Id.*, Ex. 16.)  Plaintiff's expert himself has sent text messages to consumers who

20

21  had first consented through their visits to Internet websites.  (*Id.*, Ex. 11 (Snyder Dep. at 92:12-

22  93:25).)

23          Despite the fact that Snyder has not opined about whether the putative class members

24  consented, plaintiff argues that Snyder's observations regarding the "ascending sequence" of the

25  phone numbers demonstrate that the consent issue can be determined on a class-wide basis. [12]

26

27          [12] Snyder concedes that the isolated conclusory statement in his declaration regarding the
28  absence of consent is based solely on his assumption that the facts alleged in plaintiff's complaint
            *[Footnote continued on following page.]*

1    (Mot. at 15.)  Plaintiff's factual premise is wrong, and her conclusory argument is flawed.  As

2    Snyder conceded, he realized after he submitted his declaration that there is a significant group of

3    phone numbers that do *not* appear in ascending order at all.  (Cheung Decl., Ex. 11 (Snyder Dep.

4    at 151:5-152:3; 156:4-11).)  According to Snyder, the shifting patterns could be caused by the

5    compilation of different lists of numbers.  (*Id.* at 152:4-13; 154:13-16.)  Moreover, the numbers

6    contain numerous large gaps in the supposed "ascending sequence" that are not explained by

7    Snyder.  He testified that he would expect gaps of 10 or 20 (and then later revised this number to

8    30, 40, or 50) in the T-Mobile List if valid cell phone numbers were dialed in sequential order.

9    (*Id.* at 166:20-167:17; 171:13-20; 173:5-7.)  The T-Mobile records, however, show that there are

10   frequently gaps of 100 or more, and some area codes were dialed very infrequently, including as

11   few as two calls within an entire area code.  (Cheung Decl., Ex. 10.)  Plaintiff's reliance on this

12   supposed "ascending sequence" of valid cell phone numbers is entirely misplaced.

13       The evidence shows that any text messages authorized by Trifecta were collected from

14   various websites through which consumers had first opted-in to receive text messages.  Plaintiff,

15   though, claims she did not consent to receive the text message at issue.  To the extent that the

16   members of the class contend they did not consent to receive the alleged text message when they

17   visited a website through which consumers could opt-in, the issue of consent cannot be resolved

18   without individual inquiries into the circumstances of each website visited by each class member

19   and when, and each class member's state of mind when they indicated their consent.

20       Plaintiff has not met her burden of showing that the absence of consent is a common issue.

21   Numerous courts, citing lack of commonality, typicality, and predominance of common issues,

22   have held that TCPA cases like this one cannot be brought as a class action.  *See, e.g.*, *Vigus v. S.*

23   *Ill. Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229, 237 (S.D. Ill. 2011) (class certification

24   denied in part because "determining who has consented or not consented" to the calls will depend

25   on individual examinations); *Levitt v. Fax.com*, 2007 U.S. Dist. LEXIS 83143, at *9-10 (D. Md.

26   _____

*[Footnote continued from previous page.]*

27   are true. (Cheung Decl., Ex. 11 (Snyder Dep. at 46:10-24; 126:2-24).)  Thus, his statement
     regarding consent cannot be afforded any weight.

28

1    May 25, 2007) ( "the essential question of fact . . . is whether a specific transmission . . . was

2    without express invitation or permission"); *Kondos v. Lincoln Prop. Co.*, 110 S.W.3d 716, 721-22

3    (Tex. Ct. App. 2003) (reversing grant of class certification because the issue of express

4    permission was "'an individualized question'" which would "not likely . . . be a 'relatively easy'

5    task for a single jury or . . . trial court to resolve" (citation omitted)); *Kenro, Inc. v. Fax Daily,*

6    *Inc.*, 962 F. Supp. 1162, 1169-70 (S.D. Ind. 1997) (court required "to conduct individual inquiries

7    with regard to each potential class member in order to determine whether each potential class

8    member had invited or given permission for transmission of the challenged fax advertisements").

9          Plaintiff relies on *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, 2010 WL

10   4931001, at *3 (N.D. Ill. Nov 29, 2010) and *Kavu,* 246 F.R.D. 642, to argue that common legal

11   and factual issues predominate in TCPA cases that focus on the defendant's advertising

12   campaign.  But those defendants did not dispute that they directly sent faxes advertising their own

13   products to potential customers using phone numbers gathered from public directories without

14   any effort first to obtain consent from the recipients.  Here, there is no evidence showing that

15   Stonebridge directly sent any text messages; which, if any, of the texts at issue were sent "for the

16   benefit of Stonebridge"; or that the phone numbers texted were all gathered from a common

17   source using a common method whereby no consent could have been obtained from any recipient.

18         The facts in *Levitt* are actually aligned with this case.  Levitt could not establish how a

19   database of phone numbers used in a campaign had been compiled because the entity that

20   transmitted the faxes had not produced this information.  2007 U.S. Dist. LEXIS 83143, at *12.

21   The sender of the advertisements, Fax.com, was hired by a marketing company hired by the

22   defendant, JD&T, to market its vacation packages.  Fax.com had ceased participating in the

23   lawsuit, and there was no evidence regarding "the content or construction of the databases used

24   by Fax.com." *Id.*  Even though JD&T could not identify even one recipient who had consented

25   because JD&T did not actually send the faxes, the court found that the "absence of available

26   information about the database" made it impossible to resolve consent issues globally.  *Id.* at *9,

27   *12, *20.  The "need to make a determination for each class member as to whether the facsimile

28   transmission was unsolicited" made class treatment "inappropriate and unmanageable." *Id.* at *9.

1  The Court should reach the same result here.

2  **B.    A Class Action Is Not a Superior Method for Adjudicating This Controversy.**

3  Plaintiff must demonstrate that a class action is "superior to other available methods for

4  fairly and efficiently adjudicating the controversy." *Marlo*, 639 F.3d at 946.  When individual

5  issues predominate in a case, a class action is not the superior method for efficiently adjudicating

6  the controversy. *Id; see also Maddock v. KB Homes, Inc*., 248 F.R.D. 229, 248 (C.D. Cal. 2007).

7  The proposed class action achieves no economies for the Court or the parties where (1) the

8  proposed class representative cannot prove the *prima facie* elements of her claim against

9  Stonebridge; (2) each individual class member would be required to prove that she received a text

10  message that Stonebridge sent or controlled; and (3) Stonebridge is entitled to individualized

11  discovery and evaluation of each class member's consent to receive the alleged text.  Plaintiff

12  cannot show that a class trial would be a superior and manageable method of resolving the

13  numerous individual issues necessary to determine whether Stonebridge is liable under the TCPA.

14  **III.    PLAINTIFF'S CLASS DEFINITION IS DEFECTIVE.**

15  Finally, plaintiff's motion must be denied for the additional reason that the proposed class

16  definition is overbroad, and any appropriately tailored class definition is not ascertainable.

17  **A.    The Class Is Not Narrowly Defined to Be Limited to Individuals Injured by Conduct of Stonebridge.**

18  
19  "[W]hile Plaintiffs need not prove that class members have been injured for purposes of

20  defining the Class, Plaintiffs' class definition must have some relation to the Defendants'

21  activities." *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 368 (C.D. Cal. 1997); *Kohen v.*

22  *Pac. Inv. Mgmt. Co*., 571 F.3d 672, 677 (7th Cir. 2009) (a class "should not be certified if it is

23  apparent that it contains a great many persons who have suffered no injury at the hands of the

24  defendant."); *Kemblesville HHMO Ctr., LLC v. Landhope Realty Co*., 2011 U.S. Dist. LEXIS

25  83324, at *16 (E.D. Pa. July 27, 2011) ("to determine if this class is ill-defined and/or overbroad,

26  [courts] look to see if there is a reasonable relationship between Plaintiff's proposed geographical

27  boundary and the Defendant's allegedly harmful activities").

28

1   The proposed class definition is overbroad because it includes a substantial number of

2   people who have no claim under the theory advanced by plaintiff.  *See Oshana v. Coca-Cola Co.*,

3   472 F.3d 506, 514 (7th Cir. 2006).  The TCPA imposes liability only on those who directly

4   "made" or controlled the calls.  *Taco Bell*, 2012 U.S. Dist. LEXIS 107097, at *10-12.  Indeed, the

5   TCPA cases on which plaintiff relies contain class definitions that explicitly tie the challenged

6   calls to the defendant.  *Silbaugh*, 278 F.R.D. 389, 391 (defining class to include "all persons sent

7   Viking texts"); *Kavu*, 246 F.R.D. at 651 (defining class as "all persons . . . who received an

8   unsolicited advertisement . . . from Defendant").  *See also Anderson v. Domino's Pizza, Inc*.,

9   2012 U.S. Dist. LEXIS 98482, at *7 (W.D. Wash. May 16, 2012) (all persons "who received a

10  pre-recorded telephone message . . . from Defendants"); *Vigus*, 274 F.R.D. 229, 232 (all persons

11  "who were called . . . by or on behalf of Defendant").

12  The proposed class here is not limited to individuals who received a text message from or

13  controlled by Stonebridge.  Plaintiff instead seeks to certify a class of "*[a]ll* individuals that

14  received a text message from telephone number '650-283-0793' from November 28, 2010

15  through December 2, 2010." (Mot. at 2 (emphasis added).)  This overly broad definition

16  encompasses individuals who received a text message from a phone number for which the factual

17  record shows absolutely no connection to Stonebridge.

18  To establish vicarious liability through an agent, plaintiff must prove that Stonebridge

19  "controlled or had the right to control [the entities that sent the texts] and, more specifically, the

20  manner and means of the text message campaign they conducted." *Taco Bell*, 2012 U.S. Dist.

21  LEXIS 107097, at *13.  Beyond any doubt, plaintiff cannot prove this.  Stonebridge had no right

22  to control the manner or means of any text messages sent for Trifecta. (Cheung Decl., Ex. 20

23  (Rubenbauer Dep. at 104:22-24; 107:20-108:15).)  Plaintiff therefore suggests a different theory

24  of liability — that Stonebridge is liable if plaintiff shows that text messages were sent "for the

25  benefit of Stonebridge." (Mot. at 2-3.)  Even if this theory had any legal support (and it does not),

26  plaintiff's new class definition is not limited to just those text messages sent for the benefit of

27  Stonebridge. (Cheung Decl., Ex. 19 ¶ 1.3 (██████████████████████████████████

28  ██████████████████████).)

Any class that includes members who consented to the alleged text cannot be certified. *See Vigus*, 274 F.R.D. 229 (S.D. Ill. 2011) (proposed class was overbroad because it included individuals who had voluntarily given their phone number knowing that they would receive telephone advertisements); *Anderson*, 2012 U.S. Dist. LEXIS 98482 at *9 ("[T]he question of liability hinges on whether each proposed class member consented to receiving the calls . . . .").

**B.    Plaintiff Has Not Shown That Any Appropriate Class Could Be Ascertained.**

It is the class proponent's burden to show that any proposed class is readily identifiable by reference to objective criteria. *Rader v. Teva Parenteral Meds., Inc.*, 276 F.R.D. 524, 529 (D. Nev. 2011). This requirement permits the parties and the courts later to readily determine who is and who is not bound by the judgment. The ascertainability requirement also protects the due process rights of absent class members. If a class were certified, plaintiff would be required to give notice to all class members, and would be required to afford such class members the right to opt out. Fed. R. Civ. P. 23(b)(3), (c). For notice to be *meaningful*, absent class members must be able to assess whether they are in the proposed class. *O'Connor*, 184 F.R.D. at 319 (noting heightened concern for ascertainability in 23(b)(3) classes due to notice requirements).

Any appropriately tailored class here cannot be objectively defined. As discussed above, individualized inquiries will be necessary to determine which website each class member visited to provide her consent and each member's knowledge of whether her activities on that website would result in the transmission of text messages to her cell phone.

Moreover, plaintiff has proposed no method for identifying which of the recipients of the alleged text messages called Trifecta and, thereafter, to whom Trifecta decided to offer the call-back, short of examining each of these recipients at trial. Those recipients who never called any toll-free number appearing in the alleged text message they received were not offered the Stonebridge call-back. Plaintiff has not — and cannot — formulate an ascertainable class that is tailored to the claim against Stonebridge.

## CONCLUSION

For the foregoing reasons, defendant respectfully submits that plaintiff's motion for class certification should be denied.

1

2    Dated: October 4, 2012                    MORRISON & FOERSTER LLP

3

4                                              By:  /s/ Tiffany Cheung
                                                    Tiffany Cheung
5                                                   Attorneys for Defendant Stonebridge
                                                    Life Insurance Company
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28