IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JESSICA LEE, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br>  v.<br><br>STONEBRIDGE LIFE INSURANCE COMPANY, et al.,<br><br>        Defendants.<br>_____/ | No. C 11-0043 RS<br><br>**ORDER RE MOTION TO CERTIFY CLASS** |

## I. INTRODUCTION

In this putative class action, plaintiff alleges that defendants violated the Telephone Consumer Protection Act, 42 U.S.C. §§ 227 *et seq.* ("TCPA"), by sending unsolicited text messages to consumers' cell phones. Plaintiff seeks certification of a class of "[a]ll individuals that received a text message from telephone number "650-283-0793" from November 28, 2010 through December 2, 2010." Defendant Stonebridge Life Insurance Company opposes class certification on several grounds, but its primary argument is that plaintiff simply cannot show that that Stonebridge faces any liability here. Defendant Trifecta Marketing Group LLC joins in Stonebridge's opposition without offering any arguments of its own, despite the fact that it is situated differently from Stonebridge, and has no tenable basis to disclaim responsibility for the sending of the text messages.

While Stonebridge has pointed to substantive hurdles plaintiff may face in establishing liability, the questions it raises likely can all be answered on a class-wide basis. As plaintiff has otherwise adequately shown the prerequisites to class certification to be satisfied, the motion will be granted.

## II. BACKGROUND

On November 30, 2010, named plaintiff Jessica Lee allegedly received a text message on her cellular telephone from phone number 650-283-0793. The text of the message read:

> Thanks 4 visiting our website please call 877-711-5429 to claim your $100 walmart gift card voucher! reply stop 2 unsub[1]

The complaint herein alleges a single claim for relief under the TCPA, which, among other things, prohibits the sending of text messages, without prior consent, through use of any "automatic telephone dialing machine" ("ATDS"), as defined in the statute. As noted, Lee seeks to certify a class of those who received any text message from the 650-283-0793 phone number during a five day period in late 2010. Lee contends that there was no "Wal-Mart gift card," to be claimed—the offer was just the bait that "prolific text message spamming operation [Trifecta] used to mask the true purpose of these messages: to generate leads for otherwise legitimate companies like [Stonebridge]."

Lee asserts the common questions suitable for class resolution are: (1) whether Defendants are liable under the TCPA for transmission of this text message spam, (2) whether Defendants transmitted these text messages using an ATDS, (3) whether Defendants can prove that they had "prior express consent" to send text messages to Plaintiff and the proposed Class, and (4) whether Plaintiff and the Class members suffered the same injury.

Although there are questions as to how much Stonebridge knew or should have known regarding Trifecta's methods of operation, there is no dispute that there was a marketing agreement

---

[1] Stonebridge complains that Lee's allegations as to the exact text of the message and the date she received it have been inconsistent. Neither variations in capitalization nor any other of the minor discrepancies to which Stonebridge points support denying class certification.

2

1 between the two companies, under which Trifecta generated lists of potential customer phone
2 numbers for Stonebridge. Trifecta contracted out to third parties the task of actually generating the
3 text messages in issue, and those entities are not named as defendants herein. Consumers who
4 called the number in the text message were connected to a call center operated by Trifecta in
5 Florida. They were then "pitched" Stonebridge products and services *or* products and services from
6 *other* entities with whom Trifecta had marketing agreements. If a caller expressed a willingness to
7 learn more about Stonebridge's offerings, his or her number was passed on to Stonebridge for
8 follow up marketing efforts.

### III. LEGAL STANDARD

Plaintiff bears the burden of making a *prima facie* showing class certification is appropriate. *See In re Northern Dist. of Cal. Dalcon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Certification is only appropriate if a rigorous analysis indicates the prerequisites of Rule 23(a) have been satisfied. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). That Rule provides a class action may proceed only where: (1) the class members are so numerous that joinder is impracticable; (2) common questions of law or fact exist; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Additionally, plaintiffs must satisfy Rule 23(b)(1), (2), or (3). Here, Lee contends the proposed class satisfies Rule 23(b)(3), which authorizes certification where "questions of law or fact common to class members predominate" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.'" *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D.365, 376 (N.D. Cal. 2010) (quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999)). "An identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on a prospective member's state of mind." *Schwartz*, 183 F.R.D. at 679-

80. In other words, it must be administratively feasible to determine whether a particular person is a class member. *See id.* (citing *Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995)).

One recent Ninth Circuit decision held that "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements," although that opinion does not proceed to set forth the practical extent to which district courts must make such an inquiry. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2553 (2011)); *see also Dukes*, 131 S. Ct. at 2551-52 (satisfaction of Rule 23 "frequently" entails "some overlap with the merits"), *but cf. Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). That said, it remains relatively clear an ultimate adjudication on the merits of plaintiffs' claims is inappropriate, and any inquiry into the merits must be strictly limited to evaluating plaintiffs' allegations to determine whether they satisfy Rule 23. *See Ellis*, 657 F.3d at 983 n.8.

## IV. DISCUSSION

Stonebridge offers a series of partially interrelated and overlapping arguments against class certification, which it contends defeat several different elements of what Lee must show to be entitled to class certification. At the center of several of these arguments is Stonebridge's claim that Lee cannot show any violation of the TCPA in the first instance. As a result, Stonebridge contends, (1) Lee is not typical of the class she seeks to represent, (2) Lee has not established "numerosity," (3) individual issues predominate, and (4) the class definition is defective.

As to Lee herself, Stonebridge insists that purported discrepancies and uncertainties in her testimony, failure to preserve evidence, and a personal relationship with an employee in her counsel's firm all preclude her from proving she has a valid individual claim and/or from serving as a representative plaintiff. None of these contentions are persuasive. Stonebridge's more substantive argument is that it cannot be held liable for violating the TCPA, even assuming text messages of the kind alleged were sent to a large class of individuals.

The shortcoming in Stonebridge's position is that it has pointed to no question of law or fact that is not suitable for disposition on a class-wide basis. First, Stonebridge repeatedly insists that neither it nor Trifecta actually caused the messages to be sent. That third party contractors may have actually carried out the operation is unlikely to be a viable defense for either Trifecta or Stonebridge, but in any event, the availability of such a defense, as a legal or factual matter, does not turn on any issues specific to individual class members. Likewise, to the extent the facts and the law might not support imposing liability for the conduct of Trifecta on Stonebridge, that determination can be made as to the class as a whole.

Stonebridge also attempts to avoid potential liability, either completely or on a class basis, by relying on the fact that Trifecta apparently was working on behalf of several independent customers when it sent the text messages. Stonebridge contends it cannot be liable under the TCPA unless a particular text message was sent on its behalf—as opposed to on behalf of other Trifecta customers. Again, the legal consequences of whatever the precise facts ultimately prove to be can be decided on a class-wide basis.

At this juncture it appears unlikely that if Stonebridge's relationship with Trifecta was such that it could otherwise be held liable for the text messages, it can avoid responsibility merely because Trifecta used the same message to attract callers on behalf of more than one of its clients simultaneously. The issue does not, however, turn on what individual class members did or did not do in response to receiving the messages. The TCPA violations, if any, occurred when the messages were *sent*, not when class members phoned in and were pitched products or services of Stonebridge or any other Trifecta client. It may or may not be possible to hold Stonebridge legally responsible for outgoing messages that did not mention it, and which were also being used by Trifecta to solicit business for clients other than Stonebridge. Deciding that issue, though, will not depend on facts specific to individual class members.[2]

Stonebridge also suggests that Lee cannot even prove that all class members even received the alleged text message, or that an ATDS was used. Stonebridge attacks the validity of the

---

[2] For the same reason Lee's class definition need not contain specific reference to Stonebridge.

conclusions Lee's expert has drawn from his review of the records produced to date. Stonebridge claims that each class member will therefore have to prove he or she received an offending text message. These factual issues can and should be addressed largely through merits-based discovery into defendants' records. If Lee ultimately cannot prove an ATDS was used, or that the text message was sent to class members as alleged, then summary judgment or perhaps decertification may be in order. At this juncture, however, such merits issues do not warrant denial of class certification.

Finally, Stonebridge contends that issues of possible "consent" to receiving the messages will require individualized treatment of each class member's claim. Stonebridge is not suggesting that class treatment is unavailable merely because there is a theoretical possibility that dialing lists selected through automatic processes might sometimes include individuals who, by happenstance, have previously consented to receiving marketing text messages. Rather, Stonebridge is arguing Lee has not eliminated the possibility that the dialing lists used here were generated, at least in part, from websites where individuals had consented to receiving such messages. If that is so, however, merits discovery should reveal it, with whatever consequences that may then have to the size of the class or whether any class action can proceed.

## V. CONCLUSION

By merely joining in the opposition of Stonebridge, and failing to appear at the hearing, Trifecta has failed to address the fact that class certification would be proper as to it, even if Stonebridge's arguments as to its own liability were viable at this stage. As discussed above, however strong Stonebridge's arguments on the merits may be for avoiding liability, there is no reason those issues cannot be properly decided on a class-wide basis, and plaintiff has otherwise satisfied the prerequisites for certification. The motion is granted.[3]

IT IS SO ORDERED.

Dated: 2/12/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[3] Lee's sealing motions (Dkt. Nos. 67 and 84) are adequately supported by Stonebridge's declarations (Dkt. Nos. 76 and 87) and are granted. Stonebridge's sealing motion (Dkt. No. 77) is also adequately supported and is granted. Lee's opposition to Stonebridge's sealing motion is premised on a mistaken understanding that Stonebridge is "relying" on information that has been redacted from the materials it is filing under seal. As that information has been redacted, it is has not been viewed by the Court and is not part of the record. Contrary to Lee's argument, there is nothing in the letter or spirit of the rules that precludes a document filed under seal from including redactions—the result is only that anything so redacted cannot be relied on by the party offering the document. To the extent Lee may contend she is otherwise entitled to the information that has been redacted, that presents a discovery issue, not a basis for denying the sealing motion.