Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Ryan D. Andrews (*Admitted Pro Hac Vice*)
randrews@edelson.com
John C. Ochoa (*Admitted Pro Hac Vice*)
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JESSICA LEE, individually and on behalf of a Class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>STONEBRIDGE LIFE INSURANCE COMPANY, a Vermont corporation, and TRIFECTA MARKETING GROUP LLC, a Florida limited liability company,<br><br>Defendants. | No. CV 11-0043-RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**<br><br>Date: July 24, 2014<br>Time: 1:30 p.m.<br><br>Judge: Hon. Richard Seeborg<br>Magistrate: Hon. Jacqueline Corley |

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that on July 24, 2014 at 1:30 p.m., or at such other time as may be set by the Court, Plaintiff will move the Court, in accordance with this Court's April 4, 2014 Order Granting Preliminary Approval of Class Action Settlement Agreement and Approving Notice Plan (dkt. 160), and pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), to grant her Motion for Reasonable Attorneys' Fees, Expenses, and Incentive Award, in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Richard Seeborg.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the exhibits attached thereto, oral argument of counsel, all documents in the record, and any other matter that may be submitted at the hearing.

Dated: June 5, 2014                                 Respectfully Submitted,

JESSICA LEE, individually and on behalf of the Class of similarly situated individuals,


/s/ *Ryan D. Andrews*


Ryan D. Andrews (*Admitted Pro Hac Vice*)
randrews@edelson.com
John C. Ochoa (*Admitted Pro Hac Vice*)
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## Table of Contents

I.  INTRODUCTION ....................................................................................................... 1

II. BACKGROUND ........................................................................................................ 1

  A. The Litigation History ......................................................................................... 1

  B. Settlement Negotiations ...................................................................................... 3

  C. The Settlement .................................................................................................... 5

III. THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES BECAUSE THEY ARE REASONABLE ........................................ 6

  A. Application of the Constructive Common Fund Method Shows the Fee is Reasonable ...................................................................................................... 7

      1.  *Class Counsel Achieved an Excellent Result for the Class*
      2.  *There Were Significant Risks Involved in the Litigation*
      3.  *Class Counsel Skillfully Prosecuted this Action*
      4.  *The Contingent Nature of the Fee Supports its Approval*
      5.  *The Agreed-Upon Fee Is Less the Benchmark and Awards in Similar Cases.*

  B. The Agreed-Upon Fee is Equally Reasonable Under the Lodestar Method ........ 13

IV. THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD OF $10,000 ...................................................................................................... 18

V.  CONCLUSION ....................................................................................................... 21

## Table of Authorities

United States Supreme Court Cases:

*Hall v. Cole*, 412 U.S. 1,
    412 U.S. 1 (1973) ............................................................................... 10

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................................... 6, 9

*Mims v. Arrow Fin. Servs. LLC*,
    132 S. Ct. 740 (2012) ......................................................................... 10

United States Circuit Court of Appeals Cases:

*Florida v. Dunne*,
    915 F.2d 542 (9th Cir. 1990) ................................................................ 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................ 6, 7, 8, 9, 17

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .............................................................. 19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .............................................................. 12

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ................................................................ 18

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ................................................................ 9

*Paul, Johnson, Alston, & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ................................................................ 8

*Radcliffe v. Experian Info. Solutions Inc.*,
    715 F.3d 1157 (9th Cir. 2013) ............................................................ 19

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................................. 18

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) .............................................................. 10

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................. 14

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .......................................................................9, 10, 14, 18

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) ........................................................................................8

<u>United States District Court Cases</u>:

*Adams v. AllianceOne Receivables Management, Inc.*,
   No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012) ................................................................18

*Alberto v. GMRI, Inc.*,
   No. CIV 07-1895 WBS DAD, 2008 WL 4891201 (E.D. Cal. Nov. 12, 2008) .............19

*Arthur v. Sallie Mae, Inc.*,
   No. 10-cv-198 (W.D. Wash. Sept. 17, 2012).............................................................9, 18

*Cohorst v. BRE Props., Inc.*,
   No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) ...............11

*Gutierrez v. Barclays Group*,
   No. 10-cv-1012 (S.D. Cal. Mar. 12, 2012) ...............................................................9, 18

*Hopkins v. Stryker Sales Corp.*,
   No. 11-cv-02786, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .....................................13

*Hopson v. Hanesbrands Inc.*,
   No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009)............................19

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT, 2005 WL 1594389 (C.D. Cal. June 10, 2005)...........................11

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
   No. 11-md-02261 (S.D. Cal. Feb. 15, 2013)  .............................................................9, 18

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d. 1036 (N.D. Cal 2008) .................................................................11, 12

*In re Toys "R" Us – Del., Inc. FACTA Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014).............................................................................14, 15

*Kazemi v. Payless Shoesource, Inc.*,
   No. 09-cv-5142 (N.D. Cal. Apr. 2, 2012) .....................................................................9

*Kramer v. Autobytel Inc.*,
   No. 10-cv-02722-CW (N.D. Cal. Feb. 10, 2012)......................................................13, 20

*Kristensen v. Credit Payment Servs.*,
    No. 12-CV-00528-APG, --- F. Supp. 2d ---, 2014 WL 1256035 (D. Nev. Mar. 26, 2014) ................................................................................................... 11

*Lee v. Stonebridge Life Ins. Co.*,
    No. 11-mc-695 (E.D.N.Y. Oct. 7, 2011) ...................................................... 2

*Martin v. Merrill Lynch*,
    No. 10-CV-04020-CW (N.D. Cal. Nov. 22, 2011) ..................................... 13

*McClintic v. Lithia Motors, Inc.*,
    No. 11-cv-00859 (W.D. Wash. Oct. 23, 2012) ......................................... 18

*Moore v. Verizon Communications, Inc.*,
    No. 09-cv-1823-SBA, 2014 WL 588035 (N.D. Cal. February 14, 2014) ................ 7, 14

*Murillo v. Pac. Gas & Elec. Co.*,
    No. CIV 2:08-1974 WBS GGH, 2010 WL 2889728 (E.D. Cal. July 21, 2010) ........... 19

*Nwabueze v. AT&T Inc.*,
    No. 09-cv-1529-SI, 2013 WL 6199596, (N.D. Cal. Nov. 27, 2013) ........................ 7, 8

*Robles v. Lucky Brand Dungarees, Inc.*,
    No. 10-cv-04846-MMC (N.D. Cal. May 10, 2013) ......................... 13, 16, 20

*Satterfield v. Simon & Schuster, Inc.*,
    No. 06-cv-02893-CW (N.D. Cal. Aug. 8, 2010) ................................ 13, 20

*Thieriot v. Celtic Ins. Co.*,
    No. C-10-04462-LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ........................ 14

*Thomas v. Taco Bell Corp.*,
    879 F. Supp. 2d 1079 (C.D. Cal. 2012) ...................................................... 11

*Weinstein, v. The Timberland Co.*,
    No. 06-cv-00484 (N.D. Ill. Dec. 18, 2008) .................................................. 9

*Wren v. RGIS Inventory Specialists*,
    No. 06-cv-05778-JCS, 2011 WL 1230826 (N.D. Cal. April 1, 2011) .................. 14, 18

*Young v. Polo Retail, LLC*,
    No. C-02-4546-VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................ 14

Statutes:

Fed. R. Civ. P. 23 ........................................................................................ 6

47 U.S.C. § 227 ........................................................................................... 1

Miscellaneous:

Alba Conte & Herbert B. Newberg,
    Newberg on Class Actions (3d ed. 1992) ...........................................................8

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force*,
    108 F.R.D. 237, 262 (1986) .............................................................................7

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    27 FCC Rcd. 1830 (2012) ...............................................................................6

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am.,*
    *& the States of Cal., Ill., N.C., & Ohio for Declaratory Ruling Concerning*
    *the Tel. Consumer Prot. Act (TCPA) Rules,*
    28 FCC Rcd. 6574 (2013) .............................................................................11

Manual for Complex Litigation (Fourth) (2004) ........................................................7

## I.      INTRODUCTION

This Court having preliminarily approved a settlement of this class action lawsuit with defendants Stonebridge Life Insurance Company ("Stonebridge") and Trifecta Marketing Group LLC ("Trifecta") (collectively, "Defendants"), plaintiff Jessica Lee ("Plaintiff") now moves for attorneys' fees and an incentive award. The settlement, which resolved claims arising out of Defendants' alleged transmission of nearly 60,000 unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), was reached after three years of hard-fought litigation and mediated settlement negotiations, and provides significant monetary and prospective relief to the Class. Specifically, each Class Member who submits a valid claim will receive a $155 payment (no matter how many other Class Members submit claims), and Defendants have agreed to take steps (beyond what the TCPA already requires) to prevent any future transmission of allegedly unsolicited text messages.

In consideration for the extensive time and effort she and her counsel expended to obtain these substantial benefits for the class, Plaintiff seeks $1,440,000 in attorneys' fees (inclusive of costs) and a $10,000 incentive award. These amounts have been agreed to by Defendants, are paid in addition to the relief to the Class, and are entirely reasonable under Ninth Circuit precedent. For example, the requested attorneys' fee amount represents just 13.4% of the "constructive common fund" obtained for the class—well below the Ninth Circuit's 25% benchmark—and is *less* than Class Counsel's lodestar. Likewise, the agreed-upon amount of the incentive award is consistent with awards made in similar cases in this district, and entirely appropriate given the extraordinary lengths to which Plaintiff went in securing the beneficial result for the class. For these reasons, and as explained more fully below, this Court should approve Plaintiff's requested attorneys' fees and incentive award.

## II.     BACKGROUND

### A.      The Litigation History

After receiving an unsolicited promotional text message from an unknown number in California, Plaintiff contacted class counsel to help her investigate the source of the message.

1    (Declaration of Ryan D. Andrews ("Andrews Decl.") ¶ 3, attached hereto as Exhibit 1; Declaration

2    of Jessica Lee ("Lee Decl.") ¶ 2, attached hero as Exhibit 2;) Upon determining that the text

3    message was designed to encourage recipients to agree to listen to pitches for Stonebridge

4    insurance products, Plaintiff filed this TCPA suit against Stonebridge. (Andrews Decl. ¶ 4; dkt. 1.)

5    When Stonebridge subsequently produced an agreement showing that Trifecta agreed to generate

6    customers for Stonebridge, Plaintiff amended her complaint to add Trifecta as a defendant as well.

7    (Andrews Decl. ¶¶ 5-6; dkt. 34.)

8          Through discovery, Plaintiff and her counsel sought to determine exactly who sent the text

9    message to Plaintiff, how it was sent, and to whom else it was sent. Finding these answers was

10   more difficult than one might at first imagine, and Plaintiff's investigation followed many leads to

11   dead ends. (*Id.* ¶¶ 8-10.) One major obstacle was the fact that the text message received by

12   Plaintiff was sent from a so-called "longcode," *i.e.*, a ten-digit phone number. In contrast to

13   "shortcodes," which are issued by a common shortcode administrator and transmitted through a

14   limited number of text message aggregators, information about the sender and recipients of

15   messages from a longcode is difficult to obtain. (*Id.* ¶ 23.)

16         Plaintiff's discovery attempts against Stonebridge and Trifecta also initially came up

17   empty. (*Id.* ¶¶ 11-12.) Stonebridge denied having any knowledge of Trifecta's text messaging, and

18   Trifecta asserted that its text messaging was all performed by two other companies.[1] (*Id.* ¶¶ 7, 11-

19   12.) Plaintiff pursued discovery against the two companies identified by Trifecta, ultimately

20   ending up back at square one when it became clear that neither of those two companies had sent

21   the text message at issue here. (*Id.* ¶¶ 8-9.)

22         While these leads failed to pan out, Plaintiff's and her counsel's persistence resulted in two

23   other occurrences that allowed them to make significant headway in the investigation. First, a

24   subpoena response from T-Mobile USA revealed the call data for the long code phone number

25   _____

26        [1]   Even getting this initial information from Trifecta proved difficult, and required Plaintiff to
     initiate a miscellaneous proceeding in the Eastern District of New York and file a motion to
27   compel Trifecta's principal to respond to a subpoena. *See Lee v. Stonebridge Life Ins. Co.*, No. 11-
     mc-695, Dkt. 1 (E.D.N.Y. Oct. 7, 2011). (Andrews Decl. ¶ 7.)

28

1  from which the text message to Plaintiff had been sent, showing that almost 60,000 text messages

2  had been sent from that number over the course of four days. (*Id.* ¶ 14.) Plaintiff's expert was able

3  to use this information to determine what kind of equipment was likely used to send that volume

4  of messages in that amount of time. (*See* Dkt. 69-2.)

5      Second, documents produced by a former Trifecta employee in response to a subpoena

6  painted a radically different picture than the one being painted by Trifecta at the time. (Andrews

7  Decl. ¶¶ 16-17.) Those documents, along with testimony from the former employee, suggested

8  that rather than having other companies perform its text messaging, Trifecta had in fact built its

9  own equipment and software (an "SMS platform") to send the text messages at issue. (*Id.* ¶ 17.)

10     After obtaining this information from the former Trifecta employee, Plaintiff's counsel

11  held multiple telephonic conferences with each Defendant to discuss their prior responses to

12  Plaintiff's discovery requests, and several discovery disputes ensued. (*Id.* ¶¶ 18-19.) Some were

13  resolved by agreement of the parties (dkts. 108, 109, 133, 135, 136) and others required the

14  intervention of the Court (dkts. 114, 122, 126, 132). In one dispute, Magistrate Judge Corley

15  granted Plaintiff's motion to compel resulting in the production of several thousand additional

16  documents. (Dkt. 126.) In another, Stonebridge agreed to turn over thousands of audio recordings

17  provided to it by Trifecta of customers (including several members of the Class) who had called

18  toll-free numbers in response to text messages they had received. (Dkts. 135-136.)

19     Subsequently, Plaintiff and Trifecta entered into a Memorandum of Understanding

20  ("MOU") contemplating a settlement agreement providing for Trifecta's production of further

21  documents and testimony to Plaintiff for use in her continuing action against Stonebridge. (Dkt.

22  118.) The additional information provided by Trifecta allowed Plaintiff's counsel to contact the

23  engineer that built Trifecta's SMS platform as well as several other former Trifecta employees.

24  (Andrews Decl. ¶ 20.)

25      **B.    Settlement Negotiations**

26      Throughout the course of the litigation, the parties were exploring settlement. Oftentimes,

27  TCPA text-messaging cases are amenable to early resolution as the scope of the class, the parties

28  involved, and the equipment used—and consequently the defendants' exposure—can be quickly

determined. (*Id.* ¶ 22.) Initially believing this could be such a case, Stonebridge and Plaintiff agreed to participate in an early settlement conference with Magistrate Judge Spero. (*Id.*) In light of the difficulties described above in obtaining information necessary to facilitate settlement, however, the settlement conference scheduled with Magistrate Judge Spero was continued several times while discovery proceeded. (Dkts. 25, 26, 29, 36, 41, 45, 50). On June 6, 2012, Plaintiff, representatives of the Defendants, and all parties' counsel attended a settlement conference with Judge Spero. (Dkt. 58; Andrews Decl. ¶ 24.) Suspecting that the state of discovery was still not sufficient to allow substantive discussion of a resolution, Plaintiff had requested that the settlement conference be further continued or that she be allowed to appear by telephone. Judge Spero denied both requests. (Dkt. 51, 58; Lee Decl. ¶ 3(c).)) As anticipated, however, the parties' respective views of the case in light of the facts unearthed through discovery up to that point were too far apart, resulting in little progress being made toward a resolution. (Andrews Decl. ¶ 24; Lee Decl. ¶ 3(c).) However, during a discovery meet-and-confer between Plaintiff's counsel and counsel for Trifecta after the settlement conference, the possibility of discussing alternative settlement options due to Trifecta's dismal financial condition was raised. (Andrews Decl. ¶ 25.) Nevertheless, Plaintiff moved forward with discovery into class certification issues and tabled all settlement discussions. (*Id.*)

Following the Court's certification of the Class and order approving notice, the parties agreed to attempt to reach resolution through private mediation with Judge Westerfield at JAMS in San Francisco. (*Id.* ¶ 26.) Although Plaintiff had yet to uncover the facts regarding Trifecta's construction of its own SMS platform, having a defined certified class allowed the parties to engage in substantive negotiations and come much closer to reaching an agreement than their prior attempt with Judge Spero. (*Id.* ¶ 26.) During this mediation—and in subsequent settlement discussions—Class Counsel refused to discuss the issue of attorneys' fees and made clear that their position was that they would simply petition the Court for fees, and that Defendants could take whatever position they wanted. (*Id.* ¶ 27.) However, immediately following the mediation, Class Counsel and counsel for Trifecta began discussing the possibility of a settlement with just Trifecta. (Dkt. 142-1; Andrews Decl. ¶ 28.) It was at this time, after several rounds of negotiations between Class Counsel and Trifecta's counsel, that Plaintiff and Trifecta entered into the MOU

1  calling for Trifecta's production of documents and testimony to Plaintiff for use in her continuing

2  litigation against Stonebridge. (Dkt. 118-1.)

3       At around the same time, Class Counsel and Stonebridge's counsel were appearing in

4  person at discovery meet-and-confers as ordered by Judge Corley, and at expert depositions.

5  (Andrews Decl. ¶ 29.) During those encounters, Plaintiff's counsel and Stonebridge's counsel

6  agreed to attempt a final mediation, as it became clear that, absent a settlement, the case was likely

7  go to trial because Stonebridge strongly disputed the proof Plaintiff intended to offer to show that

8  Trifecta's SMS platform had sent the text message at issue and to establish Stonebridge's

9  vicarious liability. (*Id.*) On November 7, 2013, Plaintiff and Stonebridge again mediated before

10  Judge Westerfield at JAMS, where they were ultimately able to agree on the relief to the Class.

11  (*Id.* ¶ 30.) Discussion subsequently turned to the issue of fees, where Class Counsel again

12  expressed their preference that the Court decide the fee award, with both parties submitting their

13  respective views without limitation. (*Id.*) At the end of the mediation, however, Judge Westerfield

14  made a proposal on fees, which the parties agreed to consider over the weekend. (*Id.*) Even though

15  the proposal was less than Class Counsel's lodestar and lower than the 25% benchmark under a

16  constructive common fund approach, they agreed to accept the proposal in light of the strong relief

17  being afforded the class through the Settlement and the risk of a complete defense verdict after a

18  full class action trial. (*Id.*) Thereafter, Plaintiff and Stonebridge reached the principal terms of this

19  Agreement, and together with Trifecta, negotiated and drafted the final terms of the settlement

20  agreement. (*Id.*)

21      **C.    The Settlement**

22       Ultimately, all of the litigation, discovery, and negotiating paid dividends to the Class in

23  the form of significant monetary and prospective relief. First, each Class Member who submits a

24  valid claim will receive a $155 payment. (Dkt. 158-1 § 2.1.) The $155 payments—the equivalent

25  of over $9,200,000 if all class members file claims—will not be diminished by the payment of the

26  costs of notice, attorneys' fees, or the requested incentive award, which will all be paid by

27  Stonebridge on top of the payments it will make to the Class should the Court grant final approval

28  to the Settlement. (*Id.*)

Second, in addition to the monetary payments, the Settlement calls for the entry of a stipulated injunction against Trifecta and the continuation of changes to Stonebridge's business practices regarding the use of text message marketing that it made in response to this lawsuit. (*Id.* §§ 2.2–2.3.) Both Defendants—to the extent Stonebridge uses text message marketing again at all—will require written consent to be obtained in a manner that calls attention to the fact that the consumer is agreeing to receive autodialed text message ads by placing a disclosure near where the cellular phone number is required along with an affirmative act like clicking "I Accept." (*Id.* §§ 2.2(b-c), 2.3(b).) Records of this consent must be retained for four years. (*Id.*) Defendants are also required to change their contracts with their business partners so that these standards are followed. (*Id.*) As such, the Settlement not only ensures the prior express written consent required by the TCPA and Federal Communications Orders is provided, *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1838-44, 1856-57 (2012), but goes further by (1) detailing specifically *how* that written consent is to be obtained, preventing the common practice of burying "consent" language deep in the terms and conditions, (2) mandating a four year retention period of all records of consent, and (3) extending these protections to Defendants' marketing partners.

## III.   THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES BECAUSE THEY ARE REASONABLE

Under Federal Rule of Civil Procedure 23(h), the Court may award reasonable attorneys' fees as authorized by law or by agreement of the parties. Courts strongly encourage negotiated fee awards in class action settlements. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."). Nevertheless, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Because Stonebridge has agreed to pay Class Counsel attorneys' fees, as determined by the Court, not to exceed $1,440,000, but the settlement does not create a true common fund from

which to draw,[2] this Court has the discretion to analyze the reasonableness of attorneys' fees based on either the lodestar or constructive common fund methods. *Id*. at 945. Nevertheless, criticisms and inefficiency of the lodestar method favor the application of the constructive common fund method here. *See Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 262 (1986) (finding that the lodestar method results in judicial inefficiency by forcing courts to engage in the analysis and calculation of attorneys' timesheets, while at the same time discouraging settlement and incentivizing attorneys to pursue litigation to "run up" legal costs); *Dunne*, 915 F.2d at 545 (recognizing a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases…."); *Manual for Complex Litigation* 4th Ed. § 14.121 (2004) ("in practice, the lodestar method is difficult to apply, time consuming to administer, inconsistent in result, ... capable of manipulation, ... [and] creates inherent incentive to prolong the litigation"). In any event, regardless of the primary method used to determine the amount of fees, however, the reasonableness of that award should be "cross-checked" against the other method. *See Moore v. Verizon Communications, Inc.*, No. 09-cv-1823-SBA, 2014 WL 588035, at *16 (N.D. Cal. February 14, 2014) (citing *In re Bluetooth*, 654 F.3d at 944).

Here, as explained more fully below, the requested attorneys' fee is eminently reasonable under the constructive common fund approach, as it constitutes just 13.4% of the constructive common fund. Further, this amount is reasonable through application of the lodestar method, either as a cross-check or as the primary method of calculation, as it is actually *lower* than Class Counsel's lodestar of $1,575,857.23.

### A. Application of the Constructive Common Fund Method Shows the Fee is Reasonable.

Use of the constructive common fund method is proper when the maximum amount of potential claims, notice costs, and fees are fixed, as opposed to merely speculative or that vary in amount per class member. *In re Bluetooth*, 654 F.3d at 945; *see also Nwabueze v. AT&T Inc.*, No.

---

[2] A true common fund is created when a defendant sets aside a specific amount of money for the benefit of the entire class. *Florida v. Dunne*, 915 F.2d 542, 544-45 (9th Cir. 1990).

09-cv-1529-SI, 2013 WL 6199596, at *11 (N.D. Cal. Nov. 27, 2013) ("Where, as here, a settlement does not create a common fund from which to draw, the Ninth Circuit may analyze the case as a 'constructive common fund' for fee-setting purposes."). The value of the constructive common fund is determined by adding together all potential costs of the settlement to determine "the total amount defendants were willing to spend to settle the case." *See In re Bluetooth*, 654 F.3d at 945; *Nwabueze*, 2013 WL 6199596, at *11 ("To calculate appropriate attorneys' fees under the constructive common fund method, the Court should look to the maximum settlement amount that could be claimed.") The Ninth Circuit has established a "benchmark" fee of 25% of the common fund when the percentage method is used, *In re Bluetooth*, 654 F.3d. at 942 (citing *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990)), which should be adjusted upward or downward only in "unusual circumstances." *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage is measured against the total amount of the constructive fund established by the settlement and not the amount claimed by class members. *See Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

Here the constructive common fund totals $10,743,040. To calculate this amount, we start with the maximum amount Stonebridge could pay to the Class Members in claims. If all 59,568 class members claim the $155 to which they are each entitled, the total claims amount would be $9,233,040. To this we add the cost of class notice and administration ($60,000) (Andrews Decl. ¶ 42), the requested fee award ($1,440,000), and the requested incentive award ($10,000) for a grand total of $10,743,040. The requested attorneys' fee award of $1,440,000 represents 13.4% of that amount, which is far less than the $3,101,013 in fees that would be awarded if the Ninth Circuit's 25% benchmark were applied.[3]

Whether the agreed-upon fee award here is reasonable under the constructive common fund approach is determined with reference to the following factors: (1) the results achieved; (2)

---

[3]   If the 25% benchmark were applied, the constructive common fund would be the sum of $9,233,040 in total claims, $60,000 in notice and administration costs, the $10,000 incentive award, and X amount of fees, where X = 25% of the total. Thus, $9,233,040 + $60,000 + $10,000 + X = 4X. Solving this equation for X produces an attorneys' fee award of $3,101,013.

the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Applying these factors, it is evident that the requested $1,440,000 constituting 13.4% of the constructive common fund is reasonable and should be approved.

### 1.    *Class Counsel Achieved an Excellent Result for the Class.*

The benefit obtained for the class is foremost among the factors in determining a proper fee, which, given the significant monetary and prospective benefits achieved here, weighs heavily towards the reasonableness of the amount of fees requested. *In re Bluetooth*, 654 F.3d at 942 (citing *Hensley*, 461 U.S. at 434–36). By submitting a short and simple claim form, each class member that received the allegedly unauthorized text message will receive a $155 payment that will not be diluted based on either the number of claims filed or the amount of attorneys' fees awarded. This $155 settlement payment and the constructive fund of $10,743,040 is an excellent result given that it likely exceeds any actual damages sustained, and in considering the maximum amount of statutory damages available under the TCPA. *See Lane v. Facebook, Inc.,* 696 F.3d 811, 824 (9th Cir. 2012) (finding that where the monetary recovery is comprised purely of statutory damages, a settlement fund of $9.5 million would be "substantial under most circumstances.") Moreover, these monetary payments exceed those provided in several similar TCPA settlements that have received final approval from federal district courts throughout the country. *See, e.g., Weinstein, v. The Timberland Co*., No. 06-cv-00484, dkt. 93 (N.D. Ill. Dec. 18, 2008) (providing for a payment of $150 to each class member); *Kramer v. Autobytel Inc*., No. 10-cv-02722-CW, dkt. 148 (N.D. Cal. Feb. 10, 2012) (providing for a payment of $100 to each class member); *Gutierrez, v. Barclays Group*, No. 10-cv-1012, dkt. 58 (S.D. Cal. Mar. 12, 2012) (providing for a payment of $100 to each class member); *Kazemi v. Payless Shoesource, Inc*., No. 09-cv-5142, dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing for a $25 merchandise voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig*., No. 11-md-02261, dkt. 97 (S.D. Cal. Feb. 15, 2013) (providing for a $20 voucher or $15 cash payment to each class member); *Arthur v. Sallie Mae, Inc*., No. 10-cv-198, dkt. 266 (W.D. Wash. Sept. 17, 2012) (providing for a $20-$40 payment to

1    each class member).

2          In addition to this substantial monetary relief, Defendants have agreed to implement

3    significant changes to their practices designed to ensure that unauthorized text messages are not

4    sent in the future, and that proof of prior express consent for authorized text messages is

5    maintained for a period of four years. These changes not only help achieve the injunctive goals of

6    Plaintiff's TCPA class action claim and go beyond what is mandated by the statute, but also

7    promote important public policy concerns related to privacy and nuisance stemming from the

8    same type of cost-shifting promotions that prompted Congress to enact the TCPA in the first

9    place. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Mims v. Arrow*

10   *Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).[4]

11         Because the Settlement provides a substantial monetary benefit to Class Members as well

12   as strong prospective relief, this factor weighs heavily in favor of the reasonableness of the

13   requested fee award.

14              **2.    *There Were Significant Risks Involved in the Litigation*.**

15         The risk that further litigation might result in a lesser or no benefit to the Class is a

16   significant factor in the award of fees. This is particularly true where, like here, the case involves

17   complicated legal and factual issues. *See Vizcaino*, 290 F.3d at 1048. In fact, Class Counsel's

18   agreement to take on this case was fraught with risk from the outset as one of the first lawsuits

19   challenging the *en masse* transmission of allegedly unauthorized text messages via longcode, a

20   risk illustrated by the difficulty Plaintiff had in tracing the source of and equipment used to send

21   the text message at issue. (Andrews Decl. ¶ 23, 35.)

22

23   _____

24        [4]   While a valuable part of the Settlement, Class Counsel is not requesting that the Court
     assign a value to the injunctive relief, which is commonly included as part of determining the

25   common benefit to the class, because the requested fees are eminently reasonable with reference
     solely to the monetary benefit to the Class. *See Hall v. Cole*, 412 U.S. 1, 5 n. 7 (1973) (noting the

26   common fund doctrine "must logically extend, not only to litigation that confers a monetary
     benefit on others, but also to litigation 'which corrects or prevents an abuse which would be

27   prejudicial to the rights and interests' of those others").

28

In addition to the difficulties posed by the fact that the text messages here were sent by longcode, the litigation faced other obstacles creating a significant risk of ultimately not succeeding. First, Stonebridge moved to decertify the Class (dkts. 144–146), a motion that—although Class Counsel do not believe would have succeeded—nevertheless presented a risk that the Class would receive nothing. (Andrews Decl. ¶ 32.)

Second, assuming Plaintiff was successful in maintaining the status as a class action, her ability to hold Stonebridge vicariously liable for Trifecta's conduct could not be taken for granted. Plaintiff and Stonebridge strongly disagreed about the applicable vicarious liability standard, with each side possessing legal support for their respective position. *Compare Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084–86 (C.D. Cal. 2012) *with In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of Cal., Ill., N.C., & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules,* 28 FCC Rcd. 6574 (2013) *and Kristensen v. Credit Payment Servs.*, No. 12-CV-00528-APG, --- F. Supp. 2d ---, 2014 WL 1256035 (D. Nev. Mar. 26, 2014). Further, Plaintiff and Stonebridge strongly disagreed about certain material facts (*see* dkts. 139, 142, 143, 144), virtually ensuring that the matter would need to be resolved at trial. While trial is a risky proposition for any litigant, Stonebridge made the prospect even more risky for Plaintiff by stating an intention to challenge the admissibility of several key pieces of evidence related to Stonebridge's use of Trifecta to send text messages in the relevant time period. (Andrews Decl. ¶¶ 29, 32.)

Accordingly, the significant risk that the Class may have recovered less at a later date, if at all, supports the agreed-upon fee.

### 3. *Class Counsel Skillfully Prosecuted this Action.*

The litigation of a complex, multiparty, nationwide class action "requires unique legal skills and abilities." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d. 1036, 1047 (N.D. Cal 2008). However, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage Bond Litig*., No. 02-ML-1475-DT, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005). The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel. *Cohorst v. BRE Props., Inc.,* No. 3:10-CV-2666-JM-

BGS, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011) *report and recommendation adopted as modified,* 10CV2666 JM BGS, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012). Here, Class Counsel faced an uphill battle not only in their pursuit of the facts in this novel longcode text messaging case, but in the formidable opposition by experienced in class action defense counsel from Morrison & Foerster. (Andrews Decl. ¶¶ 23, 32, 35.) Despite these obstacles, Class Counsel succeeded in certifying the Class (dkt. 97), prevailing in discovery disputes (dkts. 126, 132), and reaching this Settlement to the benefit of the Class Members. The ability of Class Counsel to obtain such a favorable settlement in these circumstances supports the requested fee award.

### 4.    *The Contingent Nature of the Fee Supports its Approval.*

Contingent fees allow competent counsel to accept cases and provide adequate representation in class actions and are a basis for providing a larger fee than if the matter was billed on a flat or hourly basis. *OmniVision*, 559 F. Supp. 2d. at 1047 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299–1300 (9th Cir. 1994)). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . . as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299.

Here, Class Counsel agreed to undertake Plaintiffs' case on a contingent fee basis, and they knew from the outset that they would be required to spend hundreds of hours investigating and litigating Plaintiff's claims with absolutely no guarantee of success, while simultaneously foregoing other opportunities. (Andrews Decl. ¶ 34-35.) This case, in fact, turned out to be even more factually and legally complicated than was anticipated. (*Id.* ¶ 23.) Class Counsel has logged over 3,300 hours representing the Plaintiff and the Class without compensation, which does not take into account the work that must still be performed before the final fairness hearing, communicating with Class Members, and in supervising the administration of the Settlement. (*Id.* ¶¶ 33–41.) Further, Class Counsel have advanced over $140,044.80 in litigation expenses prosecuting this case with considerable risk of non-return. (*Id.* ¶ 43.) So while Class Counsel

would be justified in requesting a premium on their attorneys' fee given the contingent nature of the fee arrangement and risk presented, they are not, and this factor supports the award of the agreed-upon fee.

**5.** ***The Agreed-Upon Fee Is Less than the Benchmark and Awards in Similar Cases.***

The award of attorneys' fees in TCPA class actions is consistently between 20-33% of the total fund available to the class, as indicated by the chart attached as Exhibit 3. Although the Ninth Circuit has established a benchmark fee of 25%, it is not uncommon for courts in this Circuit to award fees even higher than 25% in common fund cases. *See Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013). Nonetheless, the Court need not consider the unique circumstances that would warrant a higher fee—Class Counsel's fee request of $1,440,000 falls significantly below the benchmark, representing approximately 13.4% of the $10.7 million constructive fund. Besides being well below the Ninth Circuit's benchmark and most TCPA cases generally, the agreed-upon amount is also less than numerous awards in similar TCPA text messaging cases, some with practically identical facts and settlement terms. *Satterfield v. Simon & Schuster, Inc.*, No. 06-cv-02893-CW, dkt. No. 132 (N.D. Cal. Aug. 8, 2010) (awarding 25% of common fund to class counsel); *see also Martin v. Merrill Lynch*, No. 10-CV-04020-CW, dkt. No. 95 (N.D. Cal. Nov. 22, 2011) (granting requested attorneys' fees of 22.9% of overall settlement fund); *Kramer v. Autobytel, Inc.*, No. 10-cv-2722 CW, dkt. No. 148) (N.D. Cal. Jan. 27, 2012) (awarding 25% of common fund to class counsel); *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846-MMC, dkt. 105 (N.D. Cal. May 10, 2013) (awarding 24% of common fund to class counsel).

Ultimately, the substantial results achieved by Class Counsel in this case, along with the contingent nature of its fees, high degree of risk in prosecuting Plaintiff's claims, requisite level of skill, and similarity to awards in similar cases, justifies the agreed-upon fee and it should be approved.

**B.** **The Agreed-Upon Fee is Equally Reasonable Under the Lodestar Method**

The requested fee of $1,440,000 is also reasonable when applying the lodestar method,

1   either as the primary method of calculation or as a "cross-check" to the constructive fund

2   approach. Given the preference for the percentage method, lodestar is generally used as the

3   primary method only where a constructive common fund approach is too speculative given the

4   open-ended and variable amounts class members could claim. *See Moore v. Verizon Commc'ns,*

5   *Inc.*, No. 09-cv-1823-SBA, 2014 WL 588035, at *9–10 (N.D. Cal. February 14, 2014) (applying

6   lodestar where the amount of class members claims varied greatly and it was disputed as to how

7   much of the $670 million in charges at issue was recoverable). Whether used as the primary

8   method of calculation or as a cross-check, the lodestar amount is calculated by multiplying the

9   number of hours Class Counsel reasonably expended on the litigation by a reasonable hourly rate

10  that takes into consideration the region and the experience of the lawyer. *Staton v. Boeing Co.*, 327

11  F.3d 938, 965 (9th Cir. 2003).

12      The reasonableness of the hours expended is generally determined by a review of Class

13  Counsel's detailed time records. *Moore*, 2014 WL 588035, at *12 (citing *Chalmers v. City of Los*

14  *Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("In determining reasonable hours, counsel bears the

15  burden of submitting detailed time records justifying the hours claimed to have been expended.")).

16  However, when performing a lodestar cross-check, mathematical exactitude is not required and

17  review of summaries of the attorneys' hours is sufficient. *Thieriot v. Celtic Ins. Co.*, No. C-10-

18  04462-LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011); *Young v. Polo Retail, LLC*, No. C-

19  02-4546-VRW, 2007 WL 951821, at *6 (N.D. Cal. Mar. 28, 2007) ("In contrast to the use of the

20  lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be

21  performed with a less exhaustive cataloging and review of counsel's hours").

22      The reasonableness of the rates is judged in comparison to the prevailing rates in the

23  community for similar work performed by attorneys with similar skills and experience. *See Wren*

24  *v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *18 (N.D. Cal. April

25  1, 2011) (approving as reasonable 2011 rates for Bay Area counsel ranging from $725 to $200 per

26  hour); *Vizcaino*, 290 F.3d at 1051 (finding the use of prevailing rates for calculating attorneys'

27  fees is appropriate in that it compensates for delay in the receipt of payment); *see also In re Toys*

28  *"R" Us – Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 462–64 (approving as reasonable 2011 rates

for Los Angeles counsel ranging from $600 to $220 per hour) (C.D. Cal 2014).

The itemized billing records submitted herewith are summarized below:

| ATTORNEY (Position) | YEARS OF EXPERIENCE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Jay Edelson (Managing Partner) | 18 | 89 | $685 | $60,965.00 |
| Ryan D. Andrews (Partner) | 9 | 1,142.13 | $570 | $651,129.98 |
| John C. Ochoa (Associate) | 4 | 1,129.20 | $390 | $440,388.00 |
| David Dale (Former Associate) | 2 | 517.60 | $335 | $173,409.40 |
| Eve-Lynn Rapp (Associate) | 5 | 88.01 | $425 | $37,404.25 |
| Roger Perlstadt (Associate) | 11 | 30.60 | $515 | $15,759.00 |
| Steven Teppler (Former Of Counsel) | 32 | 27.30 | $600 | $16,380.00 |
| Evan Meyers (Former Senior Counsel) | 11 | 150 | $470 | $70,500.00 |
| Sean P. Reis (Former Of Counsel) | 17 | 27 | $460 | $12,420.00 |
| William Gray (Former Associate) | 5 | 27.70 | $395 | $10,941.50 |
| David Mindell (Associate) | 2 | .31 | $335 | $103.85 |
| Courtney Booth (Associate) | 1 | 15.75 | $295 | $4,646.25 |
| Amir Missaghi (Associate) | 1 | 28.9 | $295 | $8,525.50 |
| Law Clerks | n/a | 108.3 | $215 | $23,284.50 |
| Estimated Time Remaining | n/a | ≈ 125 | ≈ $400 | $50,000.00 |
| **TOTAL** | | 3,507.04 | | **$1,575,857.23** |

1   (Andrews Decl. ¶¶ 37–38.)[5]

2          Each attorney's hourly rate correlates to their respective experience, and as noted above,

3   are reasonable in Bay Area legal market and have been approved by state and federal courts in

4   similar settlements. (Andrews Decl. ¶¶ 34, 36 citing *Gross v. Symantec Corp.*, No. 3:12-cv-00154-

5   CRB, dkt. 88 (N.D. Cal. March 21, 2014) (finding Edelson PC's current "hourly rates are

6   reasonable and have previously been approved by other courts throughout the country" in

7   awarding fees based on the lodestar method); *Robles v. Lucky Brand Dungarees, Inc.*, No. 3:10-

8   cv-04846-MMC, dkt. 105 (N.D. Cal. May 10, 2013).)

9          Further, the over 3,500 hours included in the lodestar represent the work attorneys at

10  Edelson PC have performed (and continue to perform) in this matter.[6] Class Counsel engaged in

11  over three year of contentious and hard-fought litigation before reaching a Settlement after the

12  official close of discovery and with trial appearing to be a near certainty. The tasks Class Counsel

13  were required to perform in order to achieve the beneficial results of the Settlement included:

14  • extensive pre-suit investigation of Plaintiff's claims and the claims of the Class;

15  • issuing thirty-two third-party subpoenas (17 as part of discovery on class certification
16  issues and 15 regarding merits issues);

17  • propounding substantial written discovery on both Defendants including three sets of
    interrogatories to Stonebridge and two sets to Trifecta, five sets of document production
18  requests on Stonebridge and three on Trifecta, and the issuing of 178 requests to admit
    facts to Trifecta and 119 to Stonebridge;
19

20  • reviewing answers and thousands of documents produced in response to the above-

21  ─────────────────────

22  [5]   The $1,575,857.23 lodestar amount does not include significant expenses that Class
    Counsel has incurred (and continues to incur) in the course of this litigation, and which are
23  awardable under Federal Rule 23(h). "Expenses such as reimbursement for travel, meals, lodging,
    photocopying, long-distance telephone calls, computer legal research, postage, courier service,
24  mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *In re
    Toys "R" Us*, 295 F.R.D. at 469. The Court may also reimburse consulting and expert witness
25  fees. *Id.* To date, Class Counsel have expended $140,044.80 in out-of-pocket reimbursable
    expenses, with more yet to come. (Andrews Decl. ¶ 43)
26
    [6]   In truth, Class Counsel have expended many more hours on this matter than the 3,500
27  included in the chart. Using their billing discretion, Class Counsel have not included time for
    certain attorneys and tasks. (Andrews Decl. ¶ 39.)
28

Plaintiff's Motion for Reasonable Attorneys' Fees,                          Case No. CV 11-0043-RS
Expenses, and Incentive Award                    16

referenced written discovery;

- taking or attending nine depositions (five fact witness depositions and four expert depositions)

- drafting or responding to twenty-six substantive discovery-focused letters with Defendants' counsel;

- exchanging over 880 emails with Defendants' counsel;

- preparing and serving four motions to compel discovery on Defendants, one of which was filed and granted by the Court in a published opinion;

- preparing responses to two motions to compel discovery served by Stonebridge, one of which was filed and denied by the Court in a published opinion;

- reaching two stipulations on discovery issues with Stonebridge to avoid the filing of further motions to compel;

- briefing Plaintiff's motion for class certification, which was granted in a published opinion;

- retaining three expert witnesses who submitted expert or rebuttal expert reports;

- preparing answers and responsive documents to two sets of requests to produce documents, two sets of interrogatories, and one set of request to admit facts,

- preparing for and attending seven appearances before the Court;

- drafting three substantive settlement / mediation statements and attending a settlement conference with Judge Spero and two mediations with Judge Westerfield; and

- extensive arm's-length settlement negotiations that culminated in a comprehensive settlement agreement.

(Andrews Decl. ¶ 40.) In addition, Class Counsel must still prepare briefing for the final fairness hearing, communicate with Class Members about the Settlement, and otherwise supervise the administration of the Settlement. (*Id.* ¶ 41.)

As indicated in the chart above, multiplying the hours expended by each attorney's billing rate provides a lodestar amount of $1,575,857.23. While a lodestar amount is presumptively reasonable, it may be adjusted by a multiplier based on a number of different factors. *In re*

1    *Bluetooth*, 654 F.3d at 941–42.[7] A historical review of class action settlements shows that the

2    Ninth Circuit has approved multipliers in the range of 0.6 to 19.6, with most (83%) falling

3    between 1 and 4. *See Vizcaino*, 290 F.3d at 1051 n.6 and Appendix; *see also* Alba Conte &

4    Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d Ed. 1992) (recognizing that

5    multipliers of one to four are frequently awarded).[8] Applying a multiplier between 1 and 4 to the

6    lodestar here would result in a fee award somewhere between $1,575,857.23 and $6,303,428.92.

7    Instead, however, Class Counsel seeks only $1,440,000, an amount well below the 1–4 multiplier

8    range, and representing a *downward* multiplier of 0.9.[9] As such, application of the lodestar

9    analysis, as the method of calculation or as cross-check to the reasonableness of 13.4% of the

10   constructive common fund, confirms that Court should approve the attorneys' fee award requested

11   here.

12   **IV.    THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD**
13   **        OF $10,000.**

14        To compensate class representatives for the work they do on behalf of class members,

15   courts typically grant requests for incentive awards. *Rodriguez v. West Publ'g Corp.*, 563 F.3d

16   _____

17        [7]    The Ninth Circuit, in *Kerr v. Screen Extras Guild, Inc.* 526 F.2d 67, 70 (9th Cir. 1975),
18   identified twelve relevant factors to take into consideration: (1) the time and labor required; (2) the
     novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service
19   properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5)
     the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the
20   client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,
     reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and
21   length of the professional relationship with the client; and (12) awards in similar cases.
          [8]    District courts in this Circuit have recently approved similar TCPA settlements with
22   multipliers falling between 2.6 and 5. *See, e.g., Kramer*, No.10-cv-02722-CW, Dkt. 148
     (approving a fee award with a multiplier of 2.69); *In re Jiffy Lube,* No. 11-md-2261-JM-JMA,
23   Dkt. 97 (approving a fee award with a multiplier of 3.58); *Gutierrez v. Barclays Group*, No. 10-
     cv-01012 (S.D. Cal. May 12, 2010) (approving a fee award with a multiplier of 4.55); *Adams v.*
24   *AllianceOne Receivables Management, Inc.*, No. 08-cv-00248, Dkt. 137 (S.D. Cal. Sept. 28, 2012)
     (approving a fee award with a multiplier of 3.81); *Arthur v. Sallie Mae, Inc.,* No. C10-0198 JLR,
25   Dkt. 265 (W.D. Wash. Sept. 17, 2012) (approving a fee award with a multiplier of 2.58);
     *McClintic v. Lithia Motors, Inc.*, No. 11-cv-00859, Dkt. 51 (W.D. Wash. Oct. 23, 2012)
26   (approving a fee award with a multiplier of 3.1).
          [9]    For comparison, a fee award of $3,101,103 under the Ninth Circuit's 25% of common fund
27   benchmark, *see supra* note 8, would represent a multiplier of almost 2.

28

948, 958–59 (9th Cir. 2009). The Court has discretion to approve any incentive award and should

consider relevant factors, including:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the
> degree to which the class has benefitted from those actions; (3) the duration of the
> litigation and the amount of time and effort the plaintiff expended in pursing it; and
> (4) the risks to the plaintiff in commencing the litigation, including reasonable fears
> of workplace retaliation, personal difficulties, and financial risks.

*Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS,, 2011 WL 1230826, at *32 (N.D. Cal.

Apr. 1, 2011) (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)), *supplemented by* C-

06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

      In addition to the above factors, courts also consider whether an incentive award is

proportionate to the relief offered to individual class members, or to the total settlement amount.

*Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (rejecting award

where disparity between incentive award and relief to class members exacerbated a conflict of

interest caused by the underlying conditional nature of the award). Yet even awards that are

significantly greater than the individual relief offered to class members will be upheld where a

plaintiff's efforts have been significant. *See Alberto v. GMRI, Inc.*, No. CIV 07-1895 WBS DAD,

2008 WL 4891201, at *12 (E.D. Cal. Nov. 12, 2008) (awarding $5,000 incentive award in

$706,525 settlement, constituting .71% of fund where class members received $24, but class

representative dedicated more than 50 hours to prosecuting the case); *In re Mego Fin. Corp. Sec.

Litig.,* 213 F.3d 454, 463 (9th Cir. 2000) (approving two incentive awards of $5,000 each in

$1,725,000 settlement, constituting 0.56% of fund); *Hopson v. Hanesbrands Inc.*, No. CV-08-

0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving incentive award of

$5,000 in $408,420 settlement, constituting 1.25% of fund). Finally, an incentive award will likely

be approved when it does not diminish the relief available to class members. *See Alberto*, 2008

WL 4891201, at *12; *Murillo v. Pac. Gas & Elec. Co.*, No. CIV 2:08-1974 WBS GGH, 2010 WL

2889728, at *12 (E.D. Cal. July 21, 2010).

      Here, Plaintiff Lee is deserving of the agreed-upon $10,000 incentive award given the truly

extraordinary lengths she was forced to go in order to benefit the Class through litigation of this

case. As occasionally happens in class action litigation, one of Stonebridge's primary strategies

was to put pressure on the named plaintiff through discovery and other means with the hope she abandon her case. That strategy did not work here, and Plaintiff devoted a substantial amount of time and effort to ensure the case was successful. (Andrews Decl. ¶ 44.) To this end, Plaintiff's efforts over the last three years included the typical functions of bringing the alleged violation to the attention of Class Counsel and assisting in their investigation, appearing for her deposition, reviewing the pleadings, class certification motion, and two settlement agreements. (Lee Decl. ¶ 3.) But beyond the ordinary, Plaintiff was required to (1) answer five sets of written discovery that included invasive requests about her personal checks and tax returns, as well as her side-business billing invoices; (2) fly to San Francisco for a brief settlement conference after Stonebridge opposed her request to appear telephonically; (3) turn over her MacBook for complete forensic inspection; (4) disclose the content of her private internet browsing records; and (5) have her phone records and the content of all text messages she sent from the back-up of her iPhone scrutinized. (Lee Decl. ¶ 3; Andrews Decl. ¶ 44.) Plaintiff has also taken financial risks in pursuing the case, which caused her to miss a week of work to sit for her deposition and attend a settlement conference on the opposite side of the country. (Lee Decl. ¶ 3.)

Because of Plaintiff's efforts, class members will enjoy significant monetary, injunctive, and prospective relief. In addition, the requested $10,000 award comprises less than 0.1% of the $10,743,040 constructive common fund, which is significantly less than the percentages of funds recently approved in similar settlements. Further, the requested incentive award is at or below awards approved in similar class action settlements, but has the additional benefit of not being deducted from the relief afforded the class. *Satterfield*, No. 06-cv-2893 (N.D. Cal. 2010) (awarding incentive awards of $20,000, $5,000, and $5,000 to three plaintiffs); *Lozano*, No. 09-cv-6344 (N.D. Ill. 2011) (awarding incentive award of $15,000); *Kramer*, No. 10-cv-2722 (N.D. Cal. 2012) (awarding incentive award of $10,000); *Robles v. Lucky Brand Dungarees, Inc.*, No 10-cv-04846-MMC, dkt. 105 (same); No. 11-cv-05935, dkt. 73 (same). Accordingly, the requested award is reasonable in light of the significant time and energy Plaintiff has expended, and should therefore be approved.

**V.      CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court find that the requested attorneys' fees of $1,440,000 (inclusive of costs) and incentive award of $10,000 are reasonable, and award such further relief the Court deems reasonable and just.

Dated: June 5, 2014                       Respectfully Submitted,

JESSICA LEE, individually and on behalf of the Class of similarly situated individuals,


/s/    *Ryan D. Andrews*
One of Plaintiff's Attorneys

Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Ryan D. Andrews (*Admitted Pro Hac Vice*)
randrews@edelson.com
John C. Ochoa (*Admitted Pro Hac Vice*)
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Class*

1

## CERTIFICATE OF SERVICE

2       The undersigned certifies that on June 5, 2014, he caused this document to be

3 electronically filed with the Clerk of the Court using the CM/ECF system, which will send

4 notification of filing to counsel of record for each party. The undersigned also certifies that upon

5 filing copies of this document will be sent to the settlement administrator for posting on

6 www.LeeTextMsgCase.net.

7

8 Dated: June 5, 2014                EDELSON PC

9                         By:     */s/ Ryan D. Andrews*
                                  Ryan D. Andrews

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28