Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Ryan D. Andrews (*Admitted Pro Hac Vice*)
randrews@edelson.com
John C. Ochoa (*Admitted Pro Hac Vice*)
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JESSICA LEE, individually and on behalf of a Class of similarly situated individuals,<br><br>    Plaintiff,<br><br>    v.<br><br>STONEBRIDGE LIFE INSURANCE COMPANY, a Vermont corporation, and TRIFECTA MARKETING GROUP LLC, a Florida limited liability company,<br><br>    Defendants. | No. CV 11-0043-RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date: July 24, 2014<br>Time: 1:30 p.m.<br><br>Judge: Hon. Richard Seeborg |

1

**NOTICE OF MOTION**

2      NOTICE IS HEREBY GIVEN that, pursuant to this Court's Order (dkt. 161), on July 24,

3  2014 at 1:30 p.m., or at such other time as may be set by the Court, Plaintiff will move the Court,

4  pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of the class action

5  settlement reached by Plaintiff and Defendants Stonebridge Life Insurance Company and Trifecta

6  Marketing Group LLC, and attached hereto as Exhibit 1, in Courtroom 3, 17th Floor, 450 Golden

7  Gate Avenue, San Francisco, CA 94102, before the Honorable Richard Seeborg.

8      The Motion, which complies with the Court's Procedural Guidance for Class Action

9  Settlements, is based on this Notice of Motion, the Memorandum of Points and Authorities, oral

10  argument of counsel, all documents in the record, and any other matter that may be submitted at

11  the hearing.

12  Dated: July 10, 2014                      Respectfully Submitted,

13                                            JESSICA LEE, individually and on behalf of the
14                                            Class of similarly situated individuals,

15

16                                            ___/s/ *Ryan D. Andrews*_____

17

18                                            Ryan D. Andrews (*Admitted Pro Hac Vice*)
                                              randrews@edelson.com
19                                            John C. Ochoa (*Admitted Pro Hac Vice*)
                                              jochoa@edelson.com
20                                            EDELSON PC
                                              350 North LaSalle Street, Suite 1300
21                                            Chicago, Illinois 60654
                                              Tel: 312.589.6370
22                                            Fax: 312.589.6378

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   THE TCPA ............................................................................................................1

III.  THE TERMS OF THE SETTLEMENT .................................................................2

      A.  Class Definition ...........................................................................................2

      B.  Monetary Relief ...........................................................................................3

      C.  Injunctive Relief ..........................................................................................3

      D.  Additional Terms .........................................................................................4

            1. Payment of Settlement Administration Expenses .....................................4

            2. Incentive Award for Class Representative and Payment of Attorneys' Fees
               and Expenses ..........................................................................................4

            3. Release ....................................................................................................4

IV.   THE NOTICE PLAN HAS BEEN EXECUTED SUCCESSFULLY AND
      SATISFIED DUE PROCESS ................................................................................5

V.    THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS
      FUNDAMENTALLY FAIR ..................................................................................7

      A.  The Settlement Is Fair Given the Strengths and Weaknesses of Plaintiff's
          Case .............................................................................................................8

      B.  Settlement Is Preferable to the Risk, Expense, Complexity, and Duration of
          Continuing Litigation, Including the Risk of Decertification ........................10

      C.  The Settlement Provides Excellent Relief to the Class .....................................11

      D.  The Parties Have Obtained More than Enough Information to Make an
          Informed Decision about the Settlement .........................................................13

      E.  Experienced Counsel Recommend the Settlement ..........................................14

      F.  There Is No Governmental Participant in this Case ........................................14

      G.  The Reaction of the Class Has Been Overwhelmingly Positive .......................15

VI.   THE SETTLEMENT IS NOT A PRODUCT OF COLLUSION ..........................15

VII.  CONCLUSION ....................................................................................................17

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001) ................................13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..........................................................5

*Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012) ........................1

**United States Circuit Court of Appeals Cases**

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......................................7

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...............................16

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ...................................11

*Laguna v. Coverall N. Am., Inc.*,

  — F.3d —, No. 12-55479, 2014 WL 2465049 (9th Cir. June 3, 2014) ........7, 8, 10, 11, 16

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .....................................5, 7, 8, 16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998).......................................13

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)...................................2

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ....................................8

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) ......................................................5

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................8, 12, 13, 15, 16

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).......................................2, 14

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ...........................................................5

**United States District Court Cases**

*Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012)...........................................17

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)................................13

*Evans v. Linden Research, Inc.*,

  C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ...............................15

*Freidman v. Massage Envy Franchising, LCC*,

  No. 12-CV-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013) ........................9

*Garner v. State Farm Mut. Auto. Ins. Co.*,

    No. CV 08 1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...............................14, 15

*Gutierrez v. Barclays Grp.*, No. 10-cv-1012 (S.D. Cal.) ......................................................................12

*In re Apple iPhone 4 Prods. Liab. Litig.*,

    No. 10-MD-2188 RMW, 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012) .......................15

*In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal. May 28, 2010)..................................14

*In re Netflix Privacy Litig.*, No. 11-CV-00379,

    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .................................................14, 16

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................14

*Kim v. Space Pencil, Inc.*, No. 11-CV-03796, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012).....10

*Kramer v. Autobytel Inc.*, No. 10-cv-02722-CW (N.D. Cal.).............................................................12

*Kristensen v. Credit Payment Servs.*, — F. Supp. 2d —, No. 12-CV-00528-APG,

    2014 WL 1256035 (D. Nev. Mar. 26, 2014) ...................................................................10

*Lazarin v. Pro Unlimited, Inc.*,

    No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) ...............................8

*Lemus v. H & R Block Enters. LLC.*,

    No. C 09-3179 SI, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012)...................................16

*Lo v. Oxnard European Motors, LLC*,

    No. 11CV1009 JLS MDD, 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ......................12

*Moore v. Verizon Commc'ns Inc.*,

    No. C 09–1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013)..............................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).......13, 14, 15

*Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846-MMC......................................................12

*Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ...............16

*Wren v. RGIS Inventory Specialists*,

    No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) *supplemented*, No. C-

    06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011)...................................10, 11

**Statutes, Rules, and Other Authority**

28 U.S.C. § 1715 ......................................................................................................7

47 U.S.C. § 227 ...............................................................................................1, 2, 12

Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the BMW*
    *Guideposts Should Not be Used to Review Statutory Penalty Awards,*
    63 Rutgers L. Rev. 327 (2010) ......................................................................12

Fed. R. Civ. P. 23 ...................................................................................................5, 7

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain*
    *Language Guide* (2010) ...................................................................................5

*Frequently Asked Questions*, U.S. Court of Appeals for the Ninth Circuit,
    http://www.ca9.uscourts.gov/content/faq.php (last visited July 2, 2014) ........11

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the*
    *States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the*
    *Tel. Consumer Prot. Act (TCPA) Rules,* 28 F.C.C. Rcd. 6574 (2013) ...........................2, 9

## I.      INTRODUCTION

After successful implementation of the Court-approved notice plan and a favorable response from the class, Plaintiff Jessica Lee now moves for final approval of a settlement reached with Defendants Stonebridge Life Insurance Company ("Stonebridge") and Trifecta Marketing Group LLC ("Trifecta") resolving claims that Stonebridge and Trifecta allegedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by sending unauthorized text messages to a class of cell phone owners. The settlement—reached after extensive discovery, adversarial class certification, and multiple settlement conferences—provides substantial monetary, injunctive, and prospective relief for the class, and is greatly preferable to proceeding to trial. Not only is each class member who allegedly received an unauthorized text message eligible to receive a $155 payout, but Defendants have agreed to provisions beyond what the TCPA already requires that will help ensure that no further allegedly unsolicited text messages are sent.

Since the Court granted preliminary approval on April 4, 2014 (dkt. 166), the parties and the settlement administrator diligently implemented a notice plan successfully delivering direct notice to the majority of class members. Given the favorable relief afforded under the settlement, it is not surprising that there have been no objections and no class members have chosen to be excluded. In contrast to this absence of opposition, claims amounting to over 22% of the class have already been submitted and class members will continue to do so until the August 23, 2014 claims deadline. Because this Settlement is eminently fair and reasonable, provides an excellent value to the class, and is superior to continuing litigation, Plaintiff respectfully requests that the Court grant final approval.

## II.     THE TCPA[1]

Plaintiff brought this class action under the TCPA, (dkt. 38.), which Congress passed to stem the "proliferation of intrusive, nuisance [telemarketing] calls to [consumers'] homes." *Mims*

---

[1] In accordance with the Northern District of California's Procedural Guidance for Class Action Settlements, the history of the litigation is described in detail in Plaintiff's Motion for Reasonable Attorneys Fees, Expenses, and Incentive Award (dkt. 162) and is not repeated here.

*v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012). The law prohibits calls made by an "automatic telephone dialing system"[2] ("ATDS") to any cellular telephone without the prior express consent of the called party. 47 U.S.C. § 227(b)(1). In addition to voice calls, the TCPA applies to unauthorized text messages sent to consumers' cellular telephones. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). Violators of the TCPA are strictly liable to the recipients of illegal calls or texts for statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). Congress also specifically authorized injunctive relief. *Id.* The TCPA provides for both direct liability for those that transmit violative text messages, as well as vicarious liability against those benefiting from illegal texts under the full range of agency principals. *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6592 (2013) [hereinafter *In re Dish Network*].

## III.     THE TERMS OF THE SETTLEMENT

The terms of the settlement, which the Court preliminarily approved, are set forth in full in the settlement agreement attached hereto as Exhibit 1 (the "Settlement Agreement") and summarized below.

### A.  Class Definition

On February 12, 2013, this Court certified a class of "[a]ll individuals that received a text message from telephone number '650-283-0793' from November 28, 2010 through December 2, 2010." (Dkt. 97; *see also* Settlement § 1.5.) The Settlement Agreement applies to exactly the same class as the Court certified. (*Compare* dkt. 97 *with* Settlement § 1.5.)

---

[2] A device qualifies as an ATDS if it "has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). This definition includes equipment that dials numbers from a database without human intervention. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091–93 (July 3, 2003)).

**B.  Monetary Relief**

Each class member who submits a valid claim form by August 23, 2014 will receive a $155 payment from Stonebridge. (Settlement § 2.1.) Claimants will receive the full amount regardless of attorneys' fees, settlement expenses, or the number of other claims submitted as those amounts will be paid by Stonebridge in addition to the payments made to class members. (*Id.*)

**C.  Injunctive Relief**

In addition to the monetary payments, both Defendants have agreed to stringent conditions designed to ensure that they do not send text messages to class members—or anyone else—without obtaining consent.

For the next four years, if Trifecta enters into a contract where it receives cell phone numbers for text message marketing, that contract must include a provision requiring both parties to keep a record of the consumers' consent. (Settlement § 2.2.) Further, that consent cannot be obtained by including a "fine print" disclaimer; rather for any consumer consent gathered on a website there must be displayed a legible disclosure near where the consumers input their telephone numbers, and consumers must be required to take an affirmative action (like checking a box) to give consent. (*Id.* § 2.2(c).)

Stonebridge has already made changes in its standard contracts with telemarketers as a result of this litigation, and modifications to its contracts will continue for at least the next two years. (*Id.* § 2.3.) All of Stonebridge's contracts with telemarketers will now include one of two provisions designed to protect class members and other consumers from receiving messages to which they have not consented. The first option is for Stonebridge and the telemarketer to agree that Stonebridge will not approve any program where its products are sold to consumers who have called back in response to a text message. (*Id.* § 2.3(b).) The second option is a provision stating that if the telemarketer does send text messages on Stonebridge's behalf, then the telemarketer must abide by the same notice, consent, and record-keeping requirements to which Trifecta has agreed as discussed above. (*Id.*)

While the TCPA already requires "prior express consent," that phrase is undefined by the

statute. The measures Defendants have agreed to take go beyond what is required by the TCPA by (1) detailing specifically *how* that prior express consent is to be obtained, preventing the common practice of burying "consent" language deep in the terms and conditions; (2) mandating a four year retention period of all records of consent; and (3) extending these protections to activities performed by Defendants' marketing partners.

### D. Additional Terms

In addition to the monetary, injunctive, and prospective relief described above, the parties have agreed to the following terms:

#### 1. Payment of Settlement Administration Expenses

Stonebridge has agreed to cover all administrative expenses and costs for implementing the Court-approved notice plan. (Settlement § 4.1.) These costs do not affect the monetary relief afforded to the class. (*Id.* § 2.1(d).)

#### 2. Incentive Award for Class Representative and Payment of Attorneys' Fees and Expenses

The Settlement Agreement provides that in addition to the $155 payments to class members and notice costs, Stonebridge will pay class counsel attorneys' fees and costs and expenses as determined by the Court (but not to exceed $1,440,000), as well as an incentive award to the class representative, Ms. Lee, in the amount determined by the Court (but not to exceed $10,000). (*Id.* §§ 8.2-8.3.) Class counsel has petitioned the Court separately for approval of these awards. (Dkt. 166).

#### 3. Release

In exchange for the relief described above, Defendants will be released from any claims arising out of the alleged sending of text messages to the class from 650-283-0793 *from November 28, 2010 through December 2, 2010*. (*Id.* § 3.) The highlighted language limiting the temporal scope of the release to only calls from that number for that five-day period represents a modification from the Settlement that was previously agreed to by the parties, made to address an inadvertent drafting error spotted by the Court during the preliminary approval hearing. The modified language appears in the release language of the proposed order being submitted to the

1  Court.

2  **IV.  THE NOTICE PLAN HAS BEEN EXECUTED SUCCESSFULLY AND SATISFIED DUE PROCESS**

3

4          As part of granting final approval to the Settlement Agreement, the Court must determine

5  whether the notice provided to the class was "the best notice that is practicable under the

6  circumstances, including individual notice to all members who can be identified through

7  reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S.

   156, 173 (1974); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Rule 23 requires that
8
   reasonable efforts be made to reach all class members, but it does not require that each individual
9
   actually receive notice. *Silber*, 18 F.3d at 1454; *see also Rannis v. Recchia*, 380 F. App'x 646, 650
10
   (9th Cir. 2010). The Federal Judicial Center has suggested that a notice plan that reaches at least
11
   70% of the class is reasonable. Federal Judicial Center, *Judges' Class Action Notice and Claims*
12
   *Process Checklist and Plain Language Guide* 3 (2010).
13
          In addition, the notice itself must be in easily understood language and must state the class
14
   definition, set out the claims at issue, explain that a judgment will be binding on class members
15
   unless they opt out, and inform class members that they may enter an appearance through an
16
   attorney if they wish. Fed R. Civ. P. 23(c)(2)(B). The notice does not need detailed legal analysis,
17
   but it does need to "generally describe[ ] the terms of the settlement in sufficient detail to alert
18
   those with adverse viewpoints to investigate and to come forward and be heard." *Lane v.*
19
   *Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).
20
          Here, this Court approved the notice plan set forth in the Settlement Agreement, which
21
   called for direct notice to be provided by email and mail, a press release, and the creation of a
22
   detailed settlement website.[3] (Dkt. 161 ¶¶ 5-8.) The Court-approved notice plan also specified the
23
   content of the notices, which use simple, plain language to encourage readership and
24
   comprehension. (*Id.* ¶ 6.) In approving the notice plan, this Court expressly found that it "is the
25

26  _____

27          [3] As noted in the Preliminary Approval Order, the Court previously approved a similar plan to
   notify the class of its order granting certification after briefing from the parties. (Dkt. 110.)
28

best notice practicable under the circumstances, … complies fully with the requirements of the Federal Rules of Civil Procedure … and meets the requirements of Due Process." (*Id.*) This Court further found that the notice plan "is reasonably calculated to, under all circumstances, reasonably apprise the members of the Class of the pendency of this action, the certification of the Class, the terms of the Settlement Agreement, and the right of members to object to the settlement or to exclude themselves from the Class." (Dkt. 161 ¶ 6.) This Court then appointed Kurtzman Carson Consultants LLC ("KCC") as the settlement administrator and ordered it to assist the parties in their effectuation of the notice plan. (*Id.* ¶ 5.)

KCC and the parties have diligently followed the Court-approved notice plan. Using a list of 58,591 unique cell phone numbers obtained from T-Mobile USA through discovery and identifying those who received the covered text messages, KCC was able to determine U.S. Mail and/or email addresses for 95% of the class. (Declaration of Jeffrey Gyomber ¶¶ 4–5, attached as Exhibit 2.) Direct notice was then sent by email to 101,767 email addresses of class members and by post-card notice with an accompanying claim form to 34,221 class members. (Gyomber Decl. ¶¶ 5–7, 10; *see also* Declaration of Jon Finley, attached as Exhibit 3.) After receiving email bounce-backs and returned mailed notices, KCC either obtained forwarding address information from the U.S. Postal Service or obtained alternative addresses from credit and consumer databases and re-sent the notice. (Gyomber Decl. ¶¶ 12–15.) Ultimately, direct notice was delivered to 41,842 class members, or over 71% of the class. (Gyomber Decl. ¶ 16.) Further, this direct notice was supported through KCC's issuance of a press release—circulated to over 6500 news outlets through PR Newswire—explaining the settlement and providing further notice to the class. (Gyomber Decl. ¶ 11.) News of the Settlement Agreement was subsequently covered on by several news organizations such as Reuters and appeared on numerous consumer websites. (Declaration of Ryan Andrews ¶ 4, attached as Exhibit 4.)

The email and U.S. mailed notices, as well as the press release, all provided the settlement website at http://www.LeeTextMsgCase.net, which went live on April 18, 2014. (Gyomber Decl. ¶¶ 3, 8.) At this website class members can view information about the case, obtain a copy of the Settlement Agreement and other Court documents, read the Court-approved notice, and file an

1   online claim. (*Id.*) The website also includes clearly worded answers to frequently asked questions

2   as well as contact information for KCC and for counsel. (*Id.* ¶¶ 8-9.) Finally, on February 27,

3   2013, in accordance with the Settlement Agreement and the Class Action Fairness Act, 28 U.S.C.

4   § 1715, Defendants sent notice of the settlement to the United States Attorney General and the

5   Attorneys General of the fifty states. (*See* Declaration of Mickala Anderson, attached as Exhibit

6   5.) None of the noticed governmental entities have appeared or contacted counsel for any party

7   with any concerns. (Andrews Decl. ¶ 5.)

8        With the expert help of KCC, the parties were able to carry out a successful notice plan

9   that directly reached over 71% of the class, and provided reasonable media coverage of the

10  Settlement to the rest. The notice was accurate, contained all required information, and has

11  resulted in a strong and positive response from the class. It therefore satisfies the requirements for

12  notice of a class action settlement.

13  **V.    THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS
    FUNDAMENTALLY FAIR**

14

15       Before approving a class action settlement, the Court must hold a hearing and find the

16  settlement "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Lane*, 696 F.3d at 820. The

17  Ninth Circuit has a "strong judicial policy that favors settlements" in class action lawsuits such as

18  this one. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Even so, the

19  authority "to approve or reject a settlement proposal is committed to the sound discretion of the

20  trial judge." *Laguna v. Coverall N. Am., Inc.*, — F.3d —, No. 12-55479, 2014 WL 2465049, at *2

21  (9th Cir. June 3, 2014).

22       When deciding whether to approve a settlement, courts consider whether the entire

23  settlement, taken as a whole, is fair. *Lane*, 696 F.3d at 818–19. This determination is made by

24  evaluating a number of factors, including:

25      (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
        duration of further litigation; (3) the risk of maintaining class action status
        throughout the trial; (4) the amount offered in settlement; (5) the extent of

26      discovery completed and the stage of the proceedings; (6) the experience and
        views of counsel; (7) the presence of a governmental participant; and (8) the

27      reaction of the class members to the proposed settlement.

28  *Laguna*, — F.3d, 2014 WL 2465049, at *3. This list is not exhaustive, and courts determine the

relative importance of the factors on a case-by-case basis. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As explained below, each factor here weighs heavily in favor of approval.

**A. The Settlement Is Fair Given the Strengths and Weaknesses of Plaintiff's Case.**

A class action settlement agreement should "reasonably account[] for the strengths and weakness" of the case. *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *6 (N.D. Cal. July 11, 2013). When evaluating the strength of the plaintiffs' case, the Court does not need to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009). Rather, it considers the strength of the case in its entirety, "relative to the risks of continued litigation." *Lane*, 696 F.3d at 823.

Here, Plaintiff and class counsel were prepared to bring this case to trial (had that been required) and believe they would likely have obtained summary judgment on some issues. First, Plaintiff believes she would have won partial summary judgment on the question of whether the text messages at issue were sent using an ATDS. Plaintiffs would have provided sworn testimony from the former Trifecta employee who wrote the software powering the device that Trifecta used to send text messages as well as from the third-party who physically constructed the equipment from the parts Trifecta ordered. (Dkt. 162-1 ¶ 17.) That testimony would have confirmed that the device sent text messages to a list of numbers without any human intervention, meeting the statutory requirements for an ATDS. (*Id.*) Further, Plaintiff retained a telecommunications expert, who provided a report stating his opinion that Trifecta's device was an ATDS. (*Id.* ¶ 21.) Several other former Trifecta employees would also have testified that the ATDS was operational during the class period and provided further detail as to its use.[4]

Not all of the issues were so clear-cut however. Of particular concern for Plaintiff's case

---

[4] Admittedly, it is possible that a triable issue may have remained, as Plaintiff only possesses circumstantial evidence that the SIM card assigned to 650-283-0793 was inserted into one of the modems connected to Trifecta's device. (*See* dkt. 162-1 ¶ 20.)

1   on the merits is the question of whether Stonebridge would be held vicariously liable for text

2   messages that Trifecta sent. There are two major issues, one legal and one factual, that would have

3   to be resolved in Plaintiff's favor to obtain a judgment against Stonebridge.

4          The legal issue revolves around the standard for determining vicarious liability in a TCPA

5   case. There is authority to support Plaintiff's position that Stonebridge is vicariously liable under

6   the TCPA because it knew (or should have known) that Trifecta was transmitting highly suspect

7   text messages that would result in the pitch of Stonebridge insurance and did nothing to stop it.

8   (*See* dkt. 126 at 2; *In re Dish Network*, 28 F.C.C. Rcd. at 6592.) However, Plaintiff also recognizes

9   that there is some authority supporting the position that more evidence of Stonebridge's direct

10  involvement in the messaging campaign and control over the ATDS would be required to show

11  vicarious liability. *See, e.g.*, *Freidman v. Massage Envy Franchising, LCC*, No. 12-CV-02962-L-

12  RBB, 2013 WL 3026641, at *3–4 (S.D. Cal. June 13, 2013) (dismissing a TCPA claim for failure

13  to plead traditional requirements of agency). Regardless of how this Court were to decide, an

14  appeal would be nearly inevitable.

15         The factual issue revolves around the level of Stonebridge's knowledge and involvement

16  with the marketing campaign run by Trifecta. As part of its previous settlement agreement with

17  Plaintiff in this case, Trifecta had agreed to provide sworn testimony and documents detailing

18  Stonebridge's intimate involvement with the text message aspect of the marketing campaign. (Dkt.

19  142-1 § 2.3.) Even in the face of this evidence—which Plaintiff believes corroborates documents

20  showing such knowledge by certain material Stonebridge employees—Stonebridge maintains that

21  it did not know about or authorize the use of text messages to market its services. (Dkt. 143 at 5.)

22  Ultimately, a jury would have to decide which facts to believe and who is more credible—an

23  inherently risky situation for both sides.

24         Having already agreed to settle Trifecta's claims, Plaintiff would only have proceeded to

25  dispositive motions and trial on her claims against Stonebridge. If Stonebridge were to succeed in

26  convincing the Court that it should not be held liable for Trifecta's actions, the class would have

27  walked away with no monetary relief. By agreeing to settle the case, Plaintiff and class counsel

28  were able to secure meaningful relief for the Class while avoiding that risk.

1

**B.  Settlement Is Preferable to the Risk, Expense, Complexity, and Duration of Continuing Litigation, Including the Risk of Decertification.**

2

3

The second and third factors, "the risk, expense, complexity, and likely duration of further litigation" as well as the risk of the decertification of the Class, *Laguna*, — F.3d, 2014 WL 2465049, at *3, weigh in favor of settlement. When considering whether it is more beneficial for the class to accept a fair settlement than to continue litigation, "it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Kim v. Space Pencil, Inc.*, No. 11-CV-03796, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)). Even at a relatively late stage in the case, it can still be a reasonable decision for the class to accept a good faith settlement instead of waiting for an award from a jury. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *7 (N.D. Cal. Apr. 1, 2011) *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

4

5

6

7

8

9

10

11

12

13

Although Plaintiff and class counsel believe that they would have ultimately prevailed at trial, they also understand that proceeding with this litigation would have been time-consuming and expensive, as well as exceptionally risky. In addition to risk presented by the legal and factual issues detailed above, Stonebridge has already moved to decertify the class, with its primary argument being that individual issues of consent will predominate. Plaintiff and class counsel do not believe that decertification is likely, because the evidence Stonebridge cites—hearsay stating that some class members accessed an entirely unrelated website where they allegedly provided consent under terms buried in a privacy policy dated more than three years after the text messages were sent—is highly speculative at best. (Dkt. 144.) Such conjectures are not enough to defeat class certification. *See Kristensen v. Credit Payment Servs.*, — F. Supp. 2d —, No. 12-CV-00528-APG, 2014 WL 1256035, at *9 (D. Nev. Mar. 26, 2014) (rejecting a nearly identical consent argument in certifying a TCPA text message class). Nevertheless, if the case were to proceed, Plaintiff would have to spend time and money to oppose the motion, and even though the risk of losing is low, a loss would mean no relief for the class.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Assuming the class remained certified, Plaintiff would file a motion for partial summary

28

judgment on the claims described above, which would have to be briefed and argued. Following dispositive motions, there would be extensive briefing and motion practice on evidentiary matters. These would potentially include *Daubert* hearings on both Plaintiff and Stonebridge's proposed expert testimony. A jury trial would follow, which would likely last several days. Each of these proceedings would add time, expense, and risk for both the class and Stonebridge.

Finally, even if the Plaintiff and the class were to prevail on the merits against Stonebridge, an appeal would be nearly certain, leading to even more delay and more legal expenses. Civil appeals to the Ninth Circuit can take up to three years from the notice of appeal until a decision is rendered. *Frequently Asked Questions*, U.S. Court of Appeals for the Ninth Circuit, http://www.ca9.uscourts.gov/content/faq.php (last visited July 2, 2014). As such, even if Plaintiff were to prevail on appeal, class members could end up waiting more than seven years from when they received the text messages to obtain relief.

The Settlement Agreement, on the other hand, provides immediate relief with little additional expense, which maximizes relief to the class today. It avoids the possibility of decertification, which, while unlikely, is still possible. It also avoids the inherent uncertainty of a jury trial followed by a lengthy appeal. Instead of having to wait for a judgment, class members will receive checks within months. Thus, both the second and third factors favor approval.

**C.  The Settlement Provides Excellent Relief to the Class.**

The Court must also consider the amount of the settlement offer. *Laguna*, — F.3d, 2014 WL 2465049, at *3. Courts consider the difficulty and expense involved in proving a case when determining whether the amount of the settlement is reasonable. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Even where recovery of many times the settlement amount is theoretically possible, the benefits of a faster, guaranteed payment can still be fair and reasonable. *See id.* (holding that even if a recovery of six times the settlement offer were possible, the amount of the settlement was still reasonable). Injunctive and prospective relief, while more difficult to quantify, is also relevant to determining the value of a settlement. *See Wren*, 2011 WL 1230826, at *28. Where the settlement is the result of "an arm's-length, non-collusive, negotiated resolution," courts "put a good deal of stock" in the agreement reached by the parties. *Rodriguez*,

1   563 F.3d at 965 (citing *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1027 (9th Cir. 1998)). This is

2   because courts recognize that "[i]n reality, parties, counsel, mediators, and district judges naturally

3   arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense

4   verdict, the potential recovery, and the chances of obtaining it, discounted to present value."

5   *Rodriguez*, 563 F.3d at 965.

6           This settlement is an outstanding result for the class. First, the Settlement will put a check

7   for $155—or about a third of the $500 statutory damages available under the TCPA, *see* 47 U.S.C.

8   § 227(b)(3)(B)—directly into the hands of every class member who makes a valid claim. That

9   amount of money is guaranteed to be paid out for each valid claim submitted, and it cannot be

10  reduced based on fees, administrative costs, notice costs, or number of claims submitted. It is also

11  well within the range of settlements approved in similar cases. *See Lo v. Oxnard European*

12  *Motors, LLC*, No. 11CV1009 JLS MDD, 2011 WL 6300050, at *6 (S.D. Cal. Dec. 15, 2011)

13  (approving settlement in a TCPA case where average payout would be $130 per class member);

14  *Kramer v. Autobytel Inc.*, No. 10-cv-02722-CW (Dkts. 121-1, 148) (N.D. Cal.) (approving settlement

15  providing for a cash payment of $100 to each class member); *Gutierrez v. Barclays Grp.*, No. 10-cv-

16  1012 (dkts. 49-3, 58) (S.D. Cal.) (approving settlement providing for a cash payment of $100 to each

17  class member); *Robles v. Lucky Brand Dungarees, Inc.,* No. 10-cv-04846-MMC (Dkts. 95-1; 105)

18  (same). On top of the monetary relief, the class will also receive significant injunctive and

19  prospective relief; as noted above, both Stonebridge and Trifecta have agreed to provisions that

20  will help keep future unsolicited text messages off of class members' phones.

21          Securing victory on the merits in this case, while possible, is far from certain. Even if

22  Plaintiff did win at summary judgment or trial, many factors could prevent them from receiving

23  the full amount of statutory damages. The jury could award less, for example, or the award could

24  be subject to remittitur.[5] Courts therefore recognize that a settlement in a TCPA case that provides

25  _____

26      [5]   Though Plaintiff maintains that the sheer size of a statutory damages award cannot render
    it unconstitutional—*see generally* Daniel R. LeCours, Note, *Steering Clear of the "Road to*
27  *Nowhere": Why the BMW Guideposts Should Not be Used to Review Statutory Penalty Awards*,
    63 Rutgers L. Rev. 327 (2010); *see also Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532
28          (footnote continued)

1  for "somewhat less than the statutorily mandated $500 per violation is an equitable tradeoff for the

2  certainty of payment rather than having to proceed with costly and uncertain litigation." *Lo*, 2011

3  WL 6300050, at *6. Here, that tradeoff is a win for the class, and this factor therefore favors

4  approval.

5      **D.  The Parties Have Obtained More than Enough Information to Make an Informed
        Decision about the Settlement.**

6      Courts look to the extent of discovery completed to make sure that "the parties have

7  sufficient information to make an informed decision" before approving a settlement. *Linney v.*

8  *Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). When a case has been litigated for

9  several years and parties have engaged in extensive discovery, this factor weighs in favor of

10  settlement. *See, e.g.*, *Rodriguez*, 563 F.3d at 967; *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp.

11  2d 848, 851–52 (N.D. Cal. 2010); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

12  523, 527 (C.D. Cal. 2004) ("If all discovery has been completed and the case is ready to go to trial,

13  the court obviously has sufficient evidence to determine the adequacy of settlement.") (quoting 4

14  A. Conte & H. Newberg, Newberg on Class Actions, § 11:45 at 129 (4th ed. 2002).

15      This case has been litigated for three years and its scheduled trial date has now passed. In

16  those three years, the parties have completed class discovery, merits-based fact discovery, and

17  expert discovery. (Dkt 162-1 ¶¶ 7–21.) As detailed in Plaintiff's Motion for Reasonable Fees, (dkt.

18  162), discovery was an uphill battle for Plaintiff, due to the technology used to send the text

19  messages, and destruction of documents by Trifecta. Nevertheless, through extensive party and

20  third-party discovery, success in discovery motion practice, and the provision of information from

21  Trifecta, Plaintiff had enough information to make an informed decision whether or not to settle.

22  (*Id.* ¶ 29.) Therefore this factor weighs in favor of approving the settlement.

23

24  _____

25  U.S. 424, 443 (2001) ("I continue to believe that the Constitution does not constrain the size of
    punitive damages awards.") (Thomas, J., concurring) (citing *BMW of N. Am., Inc. v. Gore*, 517

26  U.S. 559, 599 (1996) (Scalia, J., joined by Thomas, J., dissenting))—she acknowledges the
    likelihood that if she obtained a judgment on the merits and a statutory damage award of nearly

27  $30 million, in all reality, the Court could reduce the award using remittitur or find the award
    unconstitutionally excessive.

28

1

### E.  Experienced Counsel Recommend the Settlement.

2      The next factor is the experience and views of counsel, whose views are generally

3  accorded "[g]reat weight" because they have the most familiarity with the facts of the case. *Nat'l*

4  *Rural Telecomms. Coop.*, 221 F.R.D. at 528. The recommendation of plaintiff's counsel in

5  particular should be presumed reasonable, especially when they have experience in the type of

6  litigation at hand. *See In re Netflix Privacy Litig.*, No. 11-CV-00379, 2013 WL 1120801, at *7

7  (N.D. Cal. Mar. 18, 2013); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal.

8  2008).

9      Class counsel's practice focuses on complex consumer class actions and they were counsel

10  in the case that pioneered the application of the TCPA to text-messaging technology. *See*

11  *Satterfield*, 569 F.3d. at 952. Attorneys from Edelson have "litigated some of the largest consumer

12  class actions in the country" on electronic privacy issues. *See In re Facebook Privacy Litig.*, No. C

13  10-02389 (dkt. 69) (N.D. Cal. May 28, 2010). They are frequently named as lead counsel in

14  consumer class actions, and Mr. Andrews specifically has been appointed class counsel in

15  numerous TCPA text-messaging cases. (Dkt 162-1; Andrews Decl. ¶ 3.) On the other side of this

16  action were highly qualified counsel from Morrison & Foerster who strongly advocated for their

17  client, were prepared to defend this case through trial, but nevertheless agreed to settle this matter

18  on the terms provided as being superior to continued litigation. (Dkt. 158-1, Rec. J.) Based on

19  their experience, class counsel believe that this settlement represents a fair deal for the class and is

20  preferable to continuing litigation for all parties involved. As such, this factor, too, favors

21  approval.

22

### F.  There Is No Governmental Participant in this Case.

23      The factor considering the presence of a government participant is not relevant here

24  because there is no government participant. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV

25  08 1365, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010); *Nat'l Rural Telecomms. Coop.*,

26  221 F.R.D. at 528. Notice to federal and state governments has been sent pursuant to CAFA, and

27  no responses have been received. (Anderson Decl. ¶ 2; Andrews Decl. ¶ 5.) If any government

28  agency had a concern with the settlement, it would have raised that concern with the Court. *See*

1  *Garner*, 2010 WL 1687832, at *14.

2  **G. The Reaction of the Class Has Been Overwhelmingly Positive.**

3  The last enumerated factor considers how class members responded to the settlement

4  proposal. The absence of a large number of objections strongly suggests that a settlement is

5  reasonable, *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529, as does a low opt-out rate. *Garner*,

6  2010 WL 1687832, at *15. In addition, the claims rate can help gauge whether class members are

7  supportive of the settlement. *See Rodriguez*, 563 F.3d at 967.

8  The response from class members has been nothing but positive. Not a single objection has

9  been filed with the Court, and no class member has opted out of the Settlement. (Gyomber Decl.

10  ¶¶ 19–20; Andrews Decl. ¶ 6.) To the contrary, class counsel's office has fielded calls from dozens

11  of class members that expressed a positive reaction toward the Settlement (Andrews Decl. ¶ 7.)

12  Further, although class members continue to submit claims at a steady rate in advance of the

13  August 23 claim deadline, the current claims rate indicates that class members feel very positively

14  about the Settlement. As of July 10, KCC had received 13,199 claims, which represents over 22%

15  of class members. (Gyomber Decl. ¶ 21.). The Ninth Circuit and several courts in this district have

16  found that lower—and in some cases significantly lower—claims rates indicate class members

17  approve of the settlement. *Rodriguez*, 563 F.3d at 967 (finding that district court had discretion to

18  find a "favorable reaction" where the claims rate was just under 14%); *In re Apple iPhone 4

19  Prods. Liab. Litig.*, No. 10-MD-2188 RMW, 2012 WL 3283432, *1 (N.D. Cal. Aug. 10, 2012)

20  (granting final approval to class settlement with a claims rate of 0.28%); *Evans v. Linden

21  Research, Inc.*, C-11-01078 DMR, 2014 WL 1724891, *4 (N.D. Cal. Apr. 29, 2014) (granting

22  final approval to class settlement with a claims rate of 4.3%); *Moore v. Verizon Commc'ns Inc.*,

23  No. C 09–1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval

24  of class settlement with 3% claims rate). Given the response here, this factor also weighs in favor

25  of settlement.

26  **VI.   THE SETTLEMENT IS NOT A PRODUCT OF COLLUSION**

27  In addition to the factors analyzed above, courts also ensure that class action settlements

28  are not a result of collusion between class counsel and defendants. *Laguna*, — F.3d, 2014 WL

2465049, at *5. Collusion is mainly a concern when a case is settled before class certification, since "there are typically more opportunities for attorney collusion" when there is no certified class. *Id.* The Ninth Circuit has identified several warning signs that, at least in cases settle before a class is certified, have the potential to render a settlement unfair. *Laguna*, — F.3d, 2014 WL 2465049, at *4 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011)). Those signs include: 1) disproportionate attorneys' fees for class counsel or the absence of monetary benefit to the class, 2) arrangements where separating fees from class relief results in excessive benefit to class counsel, and 3) deals that allow reverter of a portion of a common fund if the Court decides not to award it to class counsel. *Id.* These factors are generally applied in the precertification context, and it is not clear if they are even relevant after adversarial certification. *See Lane*, 696 F.3d at 831 ("*Bluetooth* emphasizes the need for greater scrutiny of precertification settlement on behalf of a class."). What is clear, however, is that courts look favorably upon settlements that come from "serious, informed, non-collusive negotiations" between the parties. *Lemus v. H & R Block Enters. LLC.*, No. C 09-3179 SI, 2012 WL 3638550, at *6 (N.D. Cal. Aug. 22, 2012); *see also Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution. . . .").

In this settlement, collusion is not a concern. First, the parties reached agreement after adversarial class certification. Because pre-certification deals may be far more susceptible to collusion than deals reached after certification, this settlement does not raise the concerns that the Ninth Circuit had in *Bluetooth*. Further, the Settlement Agreement here arose out of arm's length settlement negotiations with a neutral third-party mediator, which is also a strong sign that the agreement is fair. *Bluetooth*, 654 F.3d at 948; *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4; *Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013).

Evaluating the *Bluetooth* factors also does not uncover any evidence of collusion. As far as the first factor, the class will receive an actual monetary benefit as a result of the settlement, and given the length and complexity of the litigation, attorneys' fees are reasonable. (*See* dkt. 162 at 9–12). While fees are being paid separately from the class's relief, the settlement was not

1  structured this way to provide excessive benefit to class counsel, meaning that the second

2  *Bluetooth* factor is not a sign of collusion here. *See Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d

3  964, 984 (E.D. Cal. 2012). In fact, class counsel agreed to accept fees below their lodestar amount

4  and far below the 25% of a common fund that the Ninth Circuit considers reasonable. (Dkt. 162 at

5  7.) Separating the fees from the class's relief was also a way to ensure that relief would not be

6  capped, and that every class member who submits a valid claim will receive the full benefit of the

7  Settlement Agreement. Finally, because fees are being paid separately from class relief (and in any

8  case there is not a true common fund), the third factor does not apply. (*Id.* at 6–7.)

9      Far from showing signs of collusion to benefit class counsel, this settlement provides fair

10  monetary payments to class members without the risk of trial. The parties arrived at the settlement

11  after adversarial class certification and multiple rounds of mediated settlement talks. No collusion

12  occurred here.

13  **VII.   CONCLUSION**

14      For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval

15  to the Settlement Agreement. A Proposed Order will be separately submitted by email for the

16  Court's consideration before the final fairness hearing.

17

18  Dated: July 10, 2014                    Respectfully Submitted,

19                                          JESSICA LEE, individually and on behalf of the
                                            Class of similarly situated individuals,

20

21                                           /s/ *Ryan D. Andrews*
                                            One of Plaintiff's Attorneys

22

23  Mark Eisen (SBN – 289009)
    meisen@edelson.com
24  EDELSON PC
    555 West Fifth Street, 31st Floor
25  Los Angeles, California 90013
    Tel: 213.533.4100
26  Fax: 213.947.4251

27  Ryan D. Andrews (*Admitted Pro Hac Vice*)
    randrews@edelson.com
28  John C. Ochoa (*Admitted Pro Hac Vice*)
    jochoa@edelson.com

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 10, 2014, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: July 10, 2014                                        EDELSON PC

                                                By:    /s/ *Ryan D. Andrews*
                                                        Ryan D. Andrews